**TRANSOUT, CLOSED**

# U.S. Bankruptcy Court
## Southern District of Florida (West Palm Beach)
## Adversary Proceeding #: 09-01355-PGH

*Assigned to:* Paul G. Hyman, Jr.                                    *Date Filed:* 04/14/09
*Lead BK Case:* 09-16751                                            *Date Terminated:* 07/29/09
*Lead BK Title:* Madoff Securities International Limited
*Lead BK Chapter:* 15
*Demand:* $235000

*Nature[s] of Suit:* 13 Recovery of money/property - 548 fraudulent transfer


### *Plaintiff*
----------------------
**Stephen John Akers**                                  represented by **Tina M. Talarchyk**
c/o Tina M. Talarchyk, Esq.                                          777 S. Flagler Dr. #1900
Squire, Sanders & Dempsey LLP                                        West Palm Beach, FL 33401
1900 Phillips Point West                                             561.472.2121
777 South Flagler Drive                                              Fax : 561.472.2122
West Palm Beach, FL 33401
561.650.7122


### *Plaintiff*
----------------------
**Mark Richard Byers**                                  represented by **Tina M. Talarchyk**
c/o Tina M. Talarchyk, Esq.                                          (See above for address)
Squire, Sanders & Dempsey LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401
561.650.7122


### *Plaintiff*
----------------------
**Andrew Laurence Hosking**                             represented by **Tina M. Talarchyk**
c/o Tina M. Talarchyk, Esq.                                          (See above for address)
Squire, Sanders & Dempsey LLP
1900 Philips Point West
777 South Flagler Drive
West Palm Beach, FL 33401
561.650.7261


V.


### *Defendant*
----------------------
**Peter Madoff**                                        represented by **Peter Madoff**
                                                                     PRO SE

| Filing Date | # | Docket Text |
|---|---|---|
| 04/14/2009 | 1<br>(7 pgs) | Adversary case 09-01355. Complaint by Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking against Peter B. Madoff. Nature of Suit:,(13 (Recovery of money/property - 548 fraudulent transfer)) (Talarchyk, Tina) (Entered: 04/14/2009) |
| 04/14/2009 | | Receipt of Complaint(09-01355-PGH) [cmp,cmp] ( 250.00) Filing Fee. Receipt number 5342255. Fee amount 250.00. (U.S. Treasury) (Entered: 04/14/2009) |
| 04/14/2009 | 2<br>(8 pgs) | Ex Parte Motion *For TRO and Order To Show Cause* Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking (Talarchyk, Tina) (Entered: 04/14/2009) |
| 04/14/2009 | 3<br>(1 pg) | Notice of Hearing (Re: 2 Ex Parte Motion For TRO and Order To Show Cause Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking) Hearing scheduled for 4/14/2009 at 04:00 PM at 1515 N Flagler Dr Room 801 Courtroom A, West Palm Beach. (Corrales, Vivian) (Entered: 04/14/2009) |
| 04/14/2009 | 4<br>(2 pgs) | Certificate of Service by Attorney Tina M. Talarchyk (Re: 3 Notice of Hearing). (Talarchyk, Tina) Modified on 4/15/2009 to correct link. (Adam, Lorraine) (Entered: 04/14/2009) |
| 04/14/2009 | 5<br>(139 pgs; 9 docs) | Notice of Filing *Exhibits To Chapter 15 Petition In Support of Adversary Complaint*, Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking (Re: 1 Adversary case 09-01355. Complaint by Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking against Peter B. Madoff. Nature of Suit:, filed by Plaintiff Stephen John Akers, Plaintiff Mark Richard Byers, Plaintiff Andrew Laurence Hosking). (Attachments: 1 Exhibit A 2 Exhibit B 3 Exhibit C 4 Exhibit D 5 Exhibit E 6 Exhibit F 7 Exhibit G 8 Exhibit H)(Talarchyk, Tina) (Entered: 04/14/2009) |
| 04/14/2009 | 6<br>(4 pgs) | Order Granting Ex Parte Motion for Temporary Restraining Order, Issuing Order to Show Cause and Related Relief (Re: 2 Motion filed by Plaintiff Stephen John Akers, Plaintiff Mark Richard Byers, Plaintiff Andrew Laurence Hosking). Hearing set for 4/21/09 at 1:00 pm, 1515 N Flagler Dr., 8th Floor, Courtroom A, West Palm Beach, FL 33401 (Cradic, Cameron). (Entered: 04/14/2009) |
| 04/15/2009 | 7<br>(3 pgs) | Summons Issued on Peter Madoff Answer Due 5/11/2009 [Trial Date Shall be Set at Pre-Trial Conference] (Re: 1 Complaint filed by Plaintiff Stephen John Akers, Plaintiff Mark Richard Byers, Plaintiff Andrew Laurence Hosking) Pre-Trial Conference set for 07/14/2009 at 09:30:00 AM at 1515 N Flagler Dr Room 801 Courtroom A, West Palm Beach. (Adam, Lorraine) (Entered: 04/15/2009) |
| 04/15/2009 | 8<br>(4 pgs) | Order Setting Filing and Disclosure Requirements for Pretrial and Trial. Initial Disclosure of Witnesses and Documents Shall Be Made at Least 30 Days Before Pretrial Date . (Adam, Lorraine) (Entered: |

| | | 04/15/2009 |
|---|---|---|
| 04/15/2009 | 10 | Notice to Filer of Apparent Filing Deficiency: Document Filed was Incorrectly Linked. THE COURT HAS CORRECTED THIS ENTRY - NO FURTHER ACTION IS REQUIRED. (Re: 4 Certificate of Service) (Adam, Lorraine) (Entered: 04/15/2009) |
| 04/15/2009 | 11<br>(4 pgs) | Certificate of Service by Attorney Tina M. Talarchyk (Re: 1 Complaint filed by Plaintiff Stephen John Akers, Plaintiff Mark Richard Byers, Plaintiff Andrew Laurence Hosking, 7 Summons Issued). (Talarchyk, Tina) (Entered: 04/15/2009) |
| 04/16/2009 | 12<br>(5 pgs) | BNC Certificate of Mailing - PDF Document (Re: 6 Order Granting Ex Parte Motion for Temporary Restraining Order, Issuing Order to Show Cause and Related Relief .) Service Date 04/16/2009. (Admin.) (Entered: 04/17/2009) |
| 04/20/2009 | 13<br>(7 pgs; 2 docs) | Agreed Motion *for Continuance of TRO Order* Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking (Attachments: 1 Proposed Order) (Talarchyk, Tina) (Entered: 04/20/2009) |
| 04/20/2009 | 14<br>(2 pgs) | Order Continuing Hearing (Re: 13 Motion for Continuance of Temporary Restraining Order filed by Plaintiff Stephen John Akers, Plaintiff Mark Richard Byers, Plaintiff Andrew Laurence Hosking). Hearing scheduled for 05/04/2009 at 12:30:00 PM at 1515 N Flagler Dr Room 801 Courtroom A, West Palm Beach. (Adam, Lorraine) (Entered: 04/21/2009) |
| 04/21/2009 | 15<br>(2 pgs) | Certificate of Service by Attorney Tina M. Talarchyk (Re: 14 Order Continuing Hearing). (Talarchyk, Tina) (Entered: 04/21/2009) |
| 04/23/2009 | 16<br>(3 pgs) | BNC Certificate of Mailing - PDF Document (Re: 14 Order Continuing Hearing) Service Date 04/23/2009. (Admin.) (Entered: 04/24/2009) |
| 04/30/2009 | 17<br>(6 pgs; 2 docs) | Agreed *Ex Parte* Motion to Extend Time to File Responsive Pleading to Adversary Complaint Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking (Attachments: 1 Proposed Order) (Talarchyk, Tina) (Entered: 04/30/2009) |
| 04/30/2009 | 18<br>(6 pgs; 2 docs) | Agreed Motion for Preliminary Injunction *(Ex Parte)* Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking (Attachments: 1 Proposed Order) (Talarchyk, Tina) (Entered: 04/30/2009) |
| 05/01/2009 | 19<br>(2 pgs) | Order Granting Agreed Ex Parte Motion to Extend Time to File Responsive Pleading (Re: # 17) (Adam, Lorraine) (Entered: 05/01/2009) |
| 05/01/2009 | 20<br>(2 pgs) | Order Granting Ex Parte Agreed Motion For Preliminary Injunction (Re: # 18) (Adam, Lorraine) (Entered: 05/01/2009) |

| | | |
|---|---|---|
| 05/01/2009 | 21 (3 pgs) | Certificate of Service by Attorney Tina M. Talarchyk (Re: 19 Order on Motion to Extend Time, 20 Order on Motion For Preliminary Injunction). (Talarchyk, Tina) (Entered: 05/01/2009) |
| 05/03/2009 | 22 (3 pgs) | BNC Certificate of Mailing - PDF Document (Re: 19 Order Granting Agreed Ex Parte Motion to Extend Time to File Responsive Pleading) Service Date 05/03/2009. (Admin.) (Entered: 05/04/2009) |
| 05/03/2009 | 23 (3 pgs) | BNC Certificate of Mailing - PDF Document (Re: 20 Order Granting Ex Parte Agreed Motion For Preliminary Injunction) Service Date 05/03/2009. (Admin.) (Entered: 05/04/2009) |
| 05/07/2009 | 24 (5 pgs; 2 docs) | Notice of Filing *Order*, Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking. (Attachments: 1 Exhibit "A" Judge Lifland's Order Transferring Case)(Talarchyk, Tina) (Entered: 05/07/2009) |
| 05/08/2009 | 25 (1 pg) | Notice of Transfer of Case To Southern District of New York (Cradic, Cameron) (Entered: 05/08/2009) |
| 05/10/2009 | 26 (2 pgs) | BNC Certificate of Mailing (Re: 25 Notice of Transfer of Case To Southern District of New York) Service Date 05/10/2009. (Admin.) (Entered: 05/11/2009) |
| 05/22/2009 | 27 (1 pg) | Acknowledgment by USBC/SDNY (Re: 25 Notice of Transfer). (Adam, Lorraine) (Entered: 05/22/2009) |
| 07/29/2009 | 28 | Adversary Case 9:09-ap-1355 Closed. (Corrales, Vivian) (Entered: 07/29/2009) |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and   ANDREW**
**LAURENCE HOSKING,**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

          **Plaintiffs,**

vs.

**PETER B. MADOFF**

          **Defendant.**
_____/

<u>**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, CONVERSION UNJUST**</u>
<u>**ENRICHMENT, TEMPORARY AND PERMANENT INJUNCTION**</u>

          Plaintiffs sue Peter B. Madoff, ("Defendant" or "Madoff") and in support states as follows:

          1.      This is an action to recover an asset which the Plaintiffs, as the Joint Provisional Liquidators of Madoff Securities International Limited ("MSIL"), contend was purchased through the improper and unauthorized diversion of funds from MSIL's accounts.  It is an adversary proceeding in accordance with Fed. R. Bankr. P. 7001(g).

          2.      Jurisdiction is vested in this Court by reason of 11 U.S.C. § 1501, *et seq.* and 28 U.S.C. § 1334, together with 28 U.S.C. § 157(b)(2)(E), (H), and (O).

          3.      This is a core proceeding.

          4.      Venue is appropriate in this Court, as the underlying Chapter 15 Ancillary Case is being filed in this Court and the property that is the subject of this adversary proceeding is found in this District.  28 U.S.C. § 1410(b).

5.     Plaintiffs Stephen John Akers, Mark Richard Byers, and Andrew Laurence Hosking are citizens of the United Kingdom who were duly appointed by the High Court of Justice, Chancery Division, Companies Court in London, England (hereinafter "High Court") as the Joint Provisional Liquidators (collectively, "Plaintiffs" or "Liquidators") of MSIL on December 19, 2008, and are duly qualified and so acting.

6.     The Liquidators are empowered under English law to bring this action on behalf of MSIL.

7.     Plaintiffs are filing simultaneously with this Complaint an application pursuant to 11 U.S.C. ch. 15 for recognition of the Liquidators as foreign representatives and for an *ex parte* Temporary Restraining Order and Order to Show Cause.

8.     MSIL is an English company that was engaged in the business of securities trading and operated from an office in the Mayfair District of London with approximately 28 employees, 14 of whom were traders.  MSIL traded for the personal accounts of Bernard L. Madoff (hereinafter "Mr. Madoff") and members of his immediate family.  In addition, the assets and bank accounts of MSIL were used by Mr. Madoff for a variety of purposes, including the purchase of valuable personal assets such as luxury yachts, automobiles, and furnishings for himself and members of the Madoff family.

9.     Defendant Peter B. Madoff (hereinafter, the "Defendant") is a citizen of the United States, and, on information and belief, at most times relevant hereto was a resident of Palm Beach, Florida.  The Defendant is the brother of Mr. Madoff and was a director, manager, and shareholder of MSIL.

10.     In March and May 2008, wire transfers were made from an MSIL account to the Aston Martin company in the amounts of £35,000 and £100,000, respectively, for a total of £135,000 (hereinafter, collectively, the "Wire Transfers"), in order to enable the purchase of a vintage Aston Martin automobile, model number DB2/4 1964 (hereinafter, the "Vehicle"), for the Defendant.

11.     The Wire Transfers were not legitimately reimbursed by the Defendant to MSIL.

12.     Upon information and belief, the Vehicle was delivered to the Defendant at his residence at 200 Algoma Road, Palm Beach, Florida 33480, has been within the possession and control of the Defendant since then, and remains within this District.

13.     As a result of the Wire Transfers, MSIL has suffered losses in an amount to be proven at trial and in excess of $235,000 and is entitled to recovery of the Vehicle which represents the proceeds of property wrongfully diverted from MSIL.

14.     The Vehicle is a rare vintage automobile and may not be readily capable of replacement or market valuation.

## COUNT I
## BREACH OF FIDUCIARY DUTY

15.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 14 of this Complaint as set forth herein.

16.     At all relevant times, the Defendant was a director, manager, and employee of MSIL and as such owed the company fiduciary duties.

17.     MSIL placed trust in the Defendant as a director of the company, and the defendant accepted that trust and responsibility, thus giving rise to fiduciary duties.

18.     As a director the Defendant managed and directed, with his fellow directors, the affairs of the company, thus giving rise to fiduciary duties.

19.     The fiduciary duties identified in the previous three paragraphs included duties of loyalty, honesty, and honest accounting to MSIL and required the Defendant to refrain from depriving MSIL of any property, advantage, or opportunity or receiving for himself any property, advantage, or opportunity not enjoyed by MSIL.

20.     By receiving the benefit of the Wire Transfers and the Vehicle without legitimate reimbursement to MSIL, the Defendant breached his fiduciary duties to MSIL.

21.     The breach of fiduciary duty identified in the previous paragraph resulted in a direct and proximate loss to MSIL in the amount of the Wire Transfers as well as the use and opportunity costs associated with the deprivation of those funds.

## COUNT II
## CONVERSION

22.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 21 of this Complaint as set forth herein.

23.     By means of the Wire Transfers and the purchase and receipt of the Vehicle, the Defendant deprived MSIL of personal property.

24.     The deprivation of personal property by means of the Wire Transfers and the purchase and receipt of the Vehicle was permanent or for an indefinite time.

25.     MSIL had a present and immediate right to possess the property in question, namely the funds used for the Wire Transfers and the purchase of the Vehicle.

26.     The deprivation of personal property was contrary to fiduciary and other duties owed by the Defendant to MSIL and was without proper and effective authorization and consent by MSIL.

3

27. The Wire Transfers are clearly identified transactions that were segregated and kept separate from other transactions and can be readily traced from their origin at MSIL to the purchase of the Vehicle as described herein.

## COUNT III
## UNJUST ENRICHMENT

28. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 27 of this Complaint as set forth herein.

29. By means of the Wire Transfers and the purchase and receipt of the Vehicle, the Defendant caused MSIL to confer a benefit upon him.

30. The Defendant clearly had knowledge of and accepted and retained the benefit conferred upon him in that he received, used, and exercised ownership and control over the Vehicle.

31. The circumstances of the transactions are such that it would be inequitable and unjust for the Defendant to retain the benefit of the Wire Transfers and the purchase and receipt of the Vehicle without providing adequate consideration, which he has not done.

## COUNT IV
## ACCOUNTING

32. The Plaintiffs repeat and reallege the allegations in paragraphs 1 through 31 of this Complaint as set forth herein.

33. The Defendant while owing fiduciary duties to MSIL received the benefit of the Wire Transfers and the purchase of the Vehicle without legitimate reimbursement to MSIL and is therefore liable to account to MSIL for that property and any other property diverted from MSIL.

## COUNT V
## DECLARATORY JUDGMENT
## 28 U.S.C. § 2201

34. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 33 of this Complaint as set forth herein.

35. This matter presents an actual controversy in which Plaintiffs are interested parties, in that the Defendant is the beneficiary of purported fraudulent transfers of assets from MSIL accounts.

## Count VI
## Request for Temporary and/or Permanent Injunctive Relief

36.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 33 of this Complaint as set forth herein.

37.     The property at issue in this proceeding – a vintage Aston Martin autombile – is inherently mobile and subject to being removed from the jurisdiction of this Court without notice.

38.     Removal of the Vehicle is likely to cause plaintiffs' irreparable injury.

39.     Plaintiffs are likely to succeed on the merits of this complaint.

40.     Accordingly, plaintiffs hereby request that a temporary restraining order be issued and that, if necessary, the order be converted to a preliminary and/or permanent injunction barring Peter Madoff or any other person from removing the Vehicle from the jurisdiction of this Court and, ultimately, from exercising any rights or privileges of ownership in respect of the Vehicle.


WHEREFORE Plaintiffs request that this Court render judgment against Defendant Peter B. Madoff:

(i)     conveying and/or recognizing legal title to the Vehicle as vesting in the Liquidators;
(ii)    (alternatively) awarding damages in an amount to be determined at trial but in excess of $235,000;
(iii)   declaring that ownership and title of the Vehicle is properly vested with MSIL;
(iv)    requiring restitution of the Vehicle;
(iv)    recognizing and/or imposing a constructive trust over the Vehicle;
(v)     requiring the Defendant to account to the Plaintiffs for the Wire Transfers and purchase of the Vehicle, as well as any other funds or property diverted or obtained from MSIL for the use of the Defendant or others;
(vi)    enjoining Defendant from maintaining control and possession of the vehicle and requiring him to deliver the vehicle to the Plaintiffs and to take all actions necessary to convey and/or recognize clear title in favor of the Plaintiffs;
(vii)   awarding punitive damages in an amount equal to the compensatory damages or market value of the Vehicle;
(viii)  awarding reasonable legal expenses associated with this action and recovery of the Vehicle including without limitation reasonable attorney fees and costs; and/or

(ix)    awarding such further relief as the Court may consider just.

## CERTIFICATIONS

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true copy of this Petition has been furnished by electronic notice and/or U.S. Mail to all interested persons provided for on the Master Service Matrix on this 14th day of April, 2009.

Respectfully submitted,

**Squire, Sanders & Dempsey LLP**

By: /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Liquidators

Of Counsel:

Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:   (202) 466-5738

## SERVICE MATRIX

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

**Madoff Securities International Limited**                    **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**                            **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and**
**ANDREW LAURENCE HOSKING,**                                  **ADV. CASE NO.**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

      **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

      **Defendant.**

_____/

## _EX PARTE_ EXPEDITED MOTION FOR ORDER TO SHOW CAUSE, TEMPORARY RESTRAINING ORDER AND RELATED RELIEF
### (Expedited Hearing Requested)
### Basis for Expedited Relief

> The above-captioned Petitioners/Liquidators request an expedited hearing in this matter on or before April 14, 2009, in order to obtain relief before certain assets are removed or dissipated. The Petitioners respectfully request that the Court waive the provisions of Rule 9075-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida ("Local Rules"), which requires an affirmative statement that a _bona fide_ effort was made to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution. _**A true copy of the Application and any and all Exhibits have been served on all interested parties the date of this filing**_

Pursuant to Section 105(a) and 1519 of title 11 of the United States Code and

Bankruptcy Rule 7065, Petitioners, **Stephen John Akers, Mark Richard Byers, and**

**Andrew Laurence Hosking,** appointed by the High Court of Justice in England as the

Joint Provisional Liquidators (collectively, "Petitioners" or "Liquidators") of Madoff Securities International Limited ("MSIL"), a company incorporated under the laws of the United Kingdom, by their attorneys Baach Robinson & Lewis PLLC and Squire Sanders & Dempsey LLP, respectfully make this application for entry of an Order to Show Cause with Temporary Restraining Order ("TRO").  The Liquidators have filed, concurrently, a Petition for Recognition of a Foreign Proceeding and for Commencement of Chapter 15 Ancillary Case In Aid of Foreign Main Proceeding and a Complaint initiating an adversary proceeding concurrently with this motion.  Stephen John Akers has provided a declaration in support of the Petition and this Application and in support state as follows:

## **REASON FOR EXIGENCY**

1.    The relief sought herein is intended to preserve the *status quo* with respect to a movable asset identified by the Liquidators as likely to have been removed from MSIL improperly, *i.e.*, a vintage Aston Martin automobile, model number DB2/4 1964 (hereinafter the "Vehicle") within this District.  The Liquidators seek a TRO and injunctive relief thereafter prohibiting any sale, disposition, or removal of the vehicle from the jurisdiction of this Court.  This relief is necessary *pendente lite* to preserve the asset and is sought on an *ex parte* basis to avoid the possibility of its dissipation in advance of the entry of the TRO.  The Liquidators are not at this time seeking full restraint of the Vehicle, but rather merely to prohibit disposition and removal, and hence any prejudice to the Defendant should be minimal.

## **BACKGROUND**

2.      The Liquidators are Licensed Insolvency Practitioners and partners in the accountancy firm of Grant Thornton UK LLP ("Grant Thornton") located at 30 Finsbury Square, London EC2A 1AG.  They were appointed as Joint Provisional Liquidators of MSIL by order of the High Court of Justice, Chancery Division, Companies Court in London, England on December 19, 2008, in the matter styled *In re Madoff Securities Int'l Ltd.*, No. 11527 of 2008 (EWHC) (hereinafter, the "Provisional Liquidation").   Akers Decl. at ¶ 1.

3.      MSIL is an English company which had its statutory registered office at 12 Berkeley Street, Mayfair, London W1X 5AD.  MSIL was engaged in the business of securities trading and operated from an office in the Mayfair District of London with approximately 28 employees, 14 of whom were traders.  Essentially, MSIL traded for the personal accounts of Bernard L. Madoff and members of his immediate family.  In addition, the assets and bank accounts of MSIL were used by Bernard L. Madoff for a variety of purposes, including the purchase of valuable personal assets such as luxury yachts, automobiles, and furnishings for Mr. Madoff and members of his family.  Akers Decl. at ¶ 4.

4.      On March 12, 2009, Mr. Madoff, a former chairman of NASDAQ and prominent Wall Street businessman, pleaded guilty to eleven felony counts before the United States District Court for the Southern District of New York for carrying out the largest financial fraud in history, totaling approximately $65 billion.  Mr. Madoff, who is 70 years old, is incarcerated and will remain so until he is sentenced in June.  He faces up to 150 years in prison.  Akers Decl. at ¶ 6.

5.      Bernard L. Madoff is MSIL's majority shareholder.  Members of his immediate family and other associates own the remainder of the shares.  Akers Decl. at ¶ 5.

6.      Peter Madoff is the brother of Bernard Madoff and a director and shareholder in MSIL.  Akers Decl. at ¶ 17.

7.      The Information to which Mr. Madoff pleaded guilty states that "MADOFF . . . directed the transfer of funds from the MSIL Accounts to purchase and maintain property and services for the personal use and benefit of MADOFF, his family members and associates."  Akers Decl. at ¶ 18.

8.      In March and May 2008, Mr. Madoff caused wire transfers to be made to the Aston Martin company in the amounts of £35,000 and £100,000, respectively, for a total of  £135,000, in order to enable the purchase of the Vehicle, for Peter Madoff.[1] Although the investigation of these transactions is ongoing, these transfers appear to have been gratuitous and not for equivalent value.  Akers Decl. at ¶ 19.

9.      Upon information and belief, the Vehicle was delivered to Peter Madoff at his residence at 200 Algoma Road, Palm Beach, Florida 33480, has been within his possession and control since that time, is titled in his name and at that address, and remains within this District.  Akers Decl. at ¶ 20.

**RELIEF REQUESTED**

Section 1521 (and Section 1519 which is operative prior to recognition) provides a broad grant of power to the Court, upon the request of a foreign representative, to "grant any appropriate relief" including suspension of the right to transfer, encumber, or

---

[1] In dollars based on the applicable, contemporaneous exchange rates, these amounts are approximately $69,300 and $198,000, for a total of $237,600.

otherwise dispose of estate assets." 11 U.S.C. § 1519, 1521 ("Section 1521 is a broad reservoir of equitable power, providing as it does the authorization for the court to grant "any appropriate relief.")*; see also* B.R. 7065. The Liquidators request that this Court enjoin Peter B. Madoff and all other persons and entities on notice of its Order from undertaking any sale, disposition, or removal of the Vehicle from the jurisdiction of this Court *pendente lite* and while the Liquidators continue to investigate the circumstances of the financing of the Vehicle. Granting this relief would extend comity to the High Court of Justice, Chancery Division, Companies Court of England, which has charged the Liquidators with carrying out these responsibilities.

Injunctive relief is appropriate where (1) there is a probability of success on the merits; (2) irreparable harm will result in the absence of the requested relief; (3) the irreparable harm outweighs any damage the injunction would cause parties; and (4) the injunction would not be adverse to the public interest. *See In re Saleh,* 175 B.R. 422, 426 (S.D. Fla. 1994). These factors weigh heavily in favor of granting the relief requested herein, particularly in view of the limited and prophylactic nature of the injunctive relief sought.

The Liquidators are likely to succeed on the merits of the adversary Complaint. As noted above, Bernard Madoff has acknowledged using MSIL funds to provide automobiles, yachts, and the like to his family members, and it is clear from the transactions relating to the Vehicle that the funds emanated from MSIL accounts and that the purchase was not for the benefit of MSIL but rather for the benefit of Peter Madoff. Although the Liquidators' investigation of these transactions is continuing, it

appears that these transfers were gratuitous and/or not for equivalent value, and hence the Vehicle is the property of MSIL and properly recoverable to the company.

The injunctive relief requested is necessary to foreclose the risk of dissipation of the Vehicle. For this reason, the relief serves the interests of both comity with the English High Court and preservation of the assets of MSIL for the benefit of MSIL's creditors and/or others ultimately determined to be entitled to the company's assets. Particularly in view of the limited nature of the restraint sought, there should be little or no prejudice to the Defendant. The requested relief is also in the public interest. The injunctive relief requested subserves the core aims under Chapter 15 of promoting cooperation between the U.S. courts and the "competent authorities of foreign countries involved in cross-border insolvency cases" and facilitating the "fair and efficient administration of cross-border insolvencies." See, 11 U.S.C. § 1501(a)(1), (3). Although the Vehicle is a relatively small asset in the overall scheme of the Madoff fraud, it is important that all available assets be preserved for the benefit of victims and creditors.

For the foregoing reasons, the Liquidators respectfully request an order of this Court pursuant to 11 U.S.C. §§ 105, 1519, 1521 and B.R. 7065:

a. Enjoining and restraining all persons and entities including, but not limited to Peter Madoff from transferring, encumbering, selling, concealing, pledging, hypothecating, assigning, conveying, transferring, gifting, dissipating, removing from the jurisdiction, or otherwise disposing of the Vehicle or the proceeds, if any, of the Vehicle.

6

b.     Requiring all persons and entities in possession or control of records or information relating to the Vehicle to preserve and submit such records or information to Petitioners upon demand.

Wherefore, Liquidators respectfully request that this relief be granted.

## **CERTIFICATIONS**

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true copy of this Application has been furnished by electronic notice and/or U.S. Mail to all interested persons provided for on the Master Service Matrix on this 14th day of April, 2009.

Dated: April 14, 2009                    Respectfully submitted,

**Squire, Sanders & Dempsey LLP**

By:  /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Liquidators

Of Counsel:

Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.

BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:   (202) 466-5738

## **SERVICE MATRIX**

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

Form CGFCRD5A   (9/19/08)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number:**  09–16751–PGH                    **Adversary Number:**  09–01355–PGH

In re:
**Name of Debtor(s):**  Madoff Securities International Limited

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬/

**Stephen John Akers, Mark Richard Byers and Andrew Laurence Hosking**
Plaintiff(s)

**VS.**

**Peter B. Madoff**
Defendant(s)

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬/

## NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN**  that a hearing will be held on **April 14, 2009** at **04:00 PM,** at the following location:

**Flagler Waterview Building
1515 N Flagler Dr Room 801 Courtroom A
West Palm Beach FL 33401**

to consider the following:

**Ex Parte Motion For TRO and Order To Show Cause Filed by Plaintiffs Stephen John Akers, Mark Richard Byers, Andrew Laurence Hosking (2)**

**THIS MATTER HAS BEEN SCHEDULED FOR A TEN MINUTE HEARING. IF YOU REQUIRE MORE TIME YOU MUST CONTACT THE COURTROOM DEPUTY IMMEDIATELY FOR A SPECIAL SETTING.
This matter has <u>not</u> been scheduled as an evidentiary hearing.** If you require an evidentiary hearing, the currently scheduled hearing will be treated as a preliminary hearing. Contact the courtroom deputy, <u>Vivian Corrales at (561) 514–4109</u> to schedule a final evidentiary hearing.

**THE MOVANT, (OR MOVANT'S COUNSEL if represented by an attorney) SHALL SERVE A COPY OF THIS NOTICE OF HEARING** and, unless previously served, the above–described pleading on all required parties within the time frames required by the Bankruptcy Rules, Local Rules, or orders of the Court, and shall file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B). Any party who fails to properly serve any pleadings or other paper may be denied the opportunity to be heard thereon. All moving or objecting parties shall bring to the hearing proposed orders, sustaining their respective positions.

**PLEASE NOTE:** Photo identification is required to gain entrance to all federal courthouse facilities. Electronic devices, including but not limited to cameras, cellular phones (including those with cameras), pagers, personal data assistants (PDA), laptop computers, radios, tape–recorders, etc., **are not permitted** in the courtroom, chambers or other environs of this court. These restrictions **(except for cameras not integrated into a cell phone device)** do not apply to attorneys with a valid Florida Bar identification card, attorneys who have been authorized to appear by pro hac vice order and witnesses subpoenaed to appear in a specific case. An attorney seeking entry to the Ft. Lauderdale courthouse facilities must also be admitted to practice in the Southern District of Florida or be authorized to appear by pro hac vice order. **No one is permitted to bring a camera or other prohibited electronic device into a federal courthouse facility except with a written order signed by a judge and verified by the United States Marshal's Service. See Local Rule 5072–2.**

**Dated: <u>4/14/09</u>**                    **CLERK OF COURT**
                                        By: <u>Vivian Corrales</u>
                                        Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re:                                      Case No.:09-16751-BKC-PGH

**MADOFF SECURITIES** ,             **Chapter 15 Proceeding**
**INTERNATIONAL LIMITED**
                                            **Adv. Pro. No. 09-01355-BKC-PGh**
**Debtor in a Foreign Proceeding**

_____/

**STEPHEN JOHN AKERS, MARK**
**RICHARD BYERS and ANDREW**
**LAURENCE HOSKING, Joint Provisional**
**Liquidators of Madoff Securities**
**International Limited,**

                    **Plaintiffs**

vs.

**PETER B. MADOFF,**

                    **Defendant.**

_____/

**CERIFICATE OF SERVICE**

        **I HEREBY CERTIFY** that true and correct copies of the Notice of Hearing (D. E. # 3 ) on the Plaintiffs' *Ex Parte Motion for TRO and Order to Show Cause* were furnished as of the 14th day of April, 2009 to all persons listed on the attached Service List via electronic notice or U.S. Mail.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

/s/ Tina M. Talarchyk, Esquire
Tina M. Talarchyk, Esquire
Florida Bar No.: 794872
ttalarchyk@ssd.com
Squire, Sanders & Dempsey L.L.P.
*Counsel for Joint Provisional Liquidators Stephen John*
*Akers, Mark Richard Byers and Andrew Laurence Hosking*
777 South Flagler Drive
1900 Phillips Point West
West Palm Beach, Fla. 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509

## <u>SERVICE LIST</u>

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

Heidi Fienman, Esq.
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

<u>Notice will be electronically mailed to</u>

Office of the US Trustee        USTPRegion21.MM.ECF@usdoj.gov

2

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### www.flsb.uscourts.gov

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**                  **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and**
**ANDREW LAURENCE HOSKING,**                        **Adv. Case No. 09-01355-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

        **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

        **Defendant.**
_____/

### <ins>NOTICE OF FILING EXHIBITS TO CHAPTER 15 PETITION IN SUPPORT OF ADVERSARY COMPLAINT</ins>

**PLEASE TAKE NOTICE** that Pursuant to Section 105(a) and 1519 of title 11 of the United States Code and Bankruptcy Rule 7065, Petitioners, **Stephen John Akers, Mark Richard Byers, and Andrew Laurence Hosking,** appointed by the High Court of Justice in England as the Joint Provisional Liquidators (collectively, "Petitioners" or "Liquidators") of Madoff Securities International Limited ("MSIL"), a company incorporated under the laws of the United Kingdom, by their attorneys Baach Robinson & Lewis PLLC and Squire Sanders & Dempsey LLP, file this Notice of Filing Exhibits "A" - "H" to the Chapter 15 Petition in support of the Adversary Complaint.

Dated: April 14, 2009

Respectfully submitted,

## CERTIFICATIONS

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true copy of this Motion has been furnished by electronic notice and/or U.S. Mail to all interested persons provided for on the Master Service List on this 14th day of April, 2009.

Respectfully submitted,

Squire, Sanders & Dempsey LLP

By:  /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Liquidators

Of Counsel:
Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:  (202) 466-5738

## SERVICE MATRIX

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

# EXHIBIT  A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.glsb.uscourts.gov**

In re

**Madoff Securities International Limited**

Case No. _____ BKC_____

**Debtor in a Foreign Proceeding**

_____/

## DECLARATION OF STEPHEN JOHN AKERS

I, Stephen John Akers, hereby declare as follows:

1.  I am a Joint Provisional Liquidator of Madoff Securities International Limited. I, and my fellow Joint Provisional Liquidators, Andrew Laurence Hosking and Mark Richard Byers, are Licensed Insolvency Practitioners and Partners in the accounting firm of Grant Thornton UK LLP, 30 Finsbury Square, London, England EC2A 1AG.  We were appointed as Joint Provisional Liquidators (hereinafter, "Liquidators") of Madoff Securities International Limited ("MSIL") by order of the High Court of Justice, Chancery Division, Companies Court in London, England on December 19, 2008 in the matter styled *In re Madoff Securities Int'l Ltd.,* No. 11527 of 2008 (EWHC) (hereinafter, the "Provisional Liquidation").  Ex. B to Petition.  I am duly authorized to make this Declaration on behalf of the Liquidators.

2.      The facts and matters set out in this Declaration are within my own knowledge,
unless otherwise stated, and I believe them to be true.  Where I refer to
information supplied by others, the sources of information are identified and the
facts and matters as derived from other sources are true to the best of my
knowledge and belief.

3.      I make this Declaration in support of the Liquidators' Petition for Recognition of
Foreign Proceeding and for Commencement of Chapter 15 Ancillary Case In Aid
of Foreign Main Proceeding.

<u>**Background**</u>

4.      MSIL is an English company which had its statutory registered office at 12
Berkeley Street, Mayfair, London W1X 5AD.  MSIL's "centre of main interest" as
that term is used in Chapter 15, is in England.  MSIL was engaged in the
business of securities trading and operated from an office in the Mayfair District
of London with approximately 28 employees, 14 of whom were traders.
Essentially, MSIL traded for the personal accounts of Bernard L. Madoff and
members of his immediate family.  In addition, the assets and bank accounts of
MSIL were used by Bernard L. Madoff for a variety of purposes, including the
purchase of valuable personal assets such as luxury yachts, automobiles, and
furnishings for members of the Madoff family.

5.      Bernard L. Madoff is MSIL's majority shareholder.  Members of his immediate
family and other associates own the remainder of the shares.

6.      On March 12, 2009, Mr. Madoff, a former chairman of NASDAQ and prominent
Wall Street businessman, pleaded guilty to eleven felony counts before the

2

United States District Court for the Southern District of New York for carrying out what is believed to be the largest financial fraud in history, totaling approximately $65 billion. Mr. Madoff, who is 70 years old, is currently incarcerated pending sentencing in June. He faces up to 150 years in prison. Ex. C to Petition.

7.   The principal instrumentality of Mr. Madoff's fraud was Bernard L. Madoff Investment SecuritiesMIS. Mr. Madoff has admitted that BMIS, which purported to manage tens of billions of dollars of investment funds, was in fact a giant "Ponzi Scheme."

8.   Judge Louis L. Stanton of the United States District Court for the Southern District of New York has restrained, and appointed officials to manage, both Mr. Madoff's personal assets and the assets of BMIS.

9.   On December 12, 2008, in an action styled *Securities and Exchange Commission ("SEC") v. Madoff,* No. 08 Civ. 10791 (LIS) (S.D.N.Y.), the court entered a Temporary Restraining Order ("TRO") on the application of the SEC, which had the effect of freezing the personal assets of Mr. Madoff, including the majority shares in MSIL.[1] The court appointed Mr. Lee Richards as the Receiver (hereinafter, the "Receiver" or Mr. Richards) of Mr. Madoff's personal assets, and Mr. Richards received a power of attorney from Mr. Madoff in relation to Mr. Madoff's shareholding in MSIL. Ex. D to Petition.

10.   On December 15, 2008, Mr. Irving H. Picard was appointed as the Trustee of BMIS (hereinafter, the "Trustee" or Mr. Picard) pursuant to the Securities Investor Protection Act ("SIPA"). Ex. F to Petition.

---

[1] On December 18, 2008 the TRO was ordered to be continued until trial. Ex. E to Petition.

11. In an Order issued on March 23, 2009 (the "Substitution Order"), the court directed that Mr. Richards appoint Mr. Picard as the substitute attorney in fact in respect of the MSIL shares and discharged and terminated the receivership at Mr. Richards' request. Ex. G to Petition.

**Proceedings in England**

12. The practical effect of the TRO and the appointment of the Receiver and the SIPA Trustee as attorneys in fact for MSIL by the United States District Court was that MSIL ceased to be able to carry on its business. Barclays Capital, which acted as prime broker for MSIL in England, refused to transact any further business for the company. The Receiver requested that the directors of MSIL freeze its bank accounts, which they did. At the same time, because his interest in MSIL was through Mr. Madoff's shareholding, the Receiver was not positioned to operate the business and gather in its assets. MSIL's directors were reluctant to continue the business in view of the TRO, the freezing of the company's bank and trading accounts, and its involvement in a major fraud investigation.

13. The directors elected to place MSIL in provisional liquidation pending the outcome of the investigations in both the US and the UK. The Liquidators were then appointed by the High Court in London, placing the company's assets in the charge of independent insolvency office holders who can investigate the affairs of MSIL, take possession of MSIL assets and determine whether the company is solvent or insolvent and, if it is solvent, who, ultimately, is entitled to its assets.

14. Pursuant to Section 144 of the Insolvency Act 1986, "where a provisional liquidator has been appointed, [he] shall take into his custody or under his control

4

all the property or things in action to which the company is or appears to be entitled."

15.     The Order of the High Court appointing the Liquidators directs that the "affairs, business and property of the Company be managed by the joint provisional liquidators" and empowers the Liquidators, *inter alia,* to "locate, secure, take possession of, collect and get in all property or assets (of whatever nature) to which the Company is or appears to be entitled."; to "investigate the affairs of the Company"; and to "bring or defend or intervene in any action or other legal proceedings whether in their own names or in the name and on behalf of the Company in the jurisdiction of this Court or any other jurisdiction."  Ex. B of Petition at ¶ 1 & sch. 1, ¶¶ 1, 3, 11.

### MSIL's Assets and Documents in the United States

16.     Since their appointment, the Liquidators have worked with the SIPA Trustee to identify assets located in the US that may have been acquired through fraudulent transfers of assets from MSIL accounts to individuals residing in the US.  The Liquidators are also cooperating with the Serious Fraud Office (SFO), the Financial Services Authority, and other prosecutorial and regulatory agencies in England, as well as cooperating, pursuant to established legal procedures for sharing information internationally, with US agencies such as the Federal Bureau of Investigation (FBI) and the SEC.

17.     The Liquidators believe that persons resident in the District – in particular Mr. Peter Madoff, the brother of Bernard Madoff and a director and shareholder of MSIL – are likely to have important information relating to MSIL's assets and

affairs. The Liquidators also believe that Peter Madoff is personally in receipt of assets that may have been fraudulently transferred to him by MSIL or may otherwise be recoverable to MSIL.

18.    The Information to which Mr. Madoff pleaded guilty states that "MADOFF … directed the transfer of funds from the MSIL accounts to purchase and maintain property and services for the personal use and benefit of MADOFF, his family members, and his associates." Ex. H to Petition at ¶ 11.

19.    In March and May 2008, wire transfers were made from MSIL accounts to the Aston Martin company in the amounts of £35,000 and £100,000, respectively, for a total of £135,000, in order to enable the purchase of a vintage Aston Martin automobile, model number DB2/4 1964 (hereinafter, the "Vehicle"), for Peter Madoff.[2] The liability for the wire transfers was recorded in MSIL's books as a debit to a personal loan account of Mr. Madoff. That loan account was subsequently repaid from internal corporate accounts and not from the personal funds of Bernard or Peter Madoff or members of the Madoff family.

20.    Upon information and belief, the Vehicle was delivered to Peter Madoff at his and his wife Marion Madoff's residence at 200 Algoma Road, Palm Beach, Florida 33480 and remains within this District.

## The Petition

21.    Recognition of the Provisional Liquidation under Chapter 15 will enable the Liquidators to take control of the Vehicle and, potentially, other assets recoverable to MSIL, and to conduct discovery from Peter Madoff and,

---

[2] In dollars based on the applicable, contemporaneous exchange rates, the amounts are, approximately $69,300 and $198,000, for a total of $237,600.

potentially, others concerning MSIL's assets, affairs, rights, obligations, and liabilities in the US, which will enable the Liquidators to carry out the investigative and asset recovery responsibilities with which they have been charged by the English High Court.

### The TRO

22.    Although our investigation is in its preliminary stages, what we have uncovered so far causes me to believe that immediate steps must be taken to protect MSIL's assets from imminent dissipation or conversion by Peter Madoff and, possibly, others formerly associated with him and/or MSIL.  In particular, I am concerned, in view of the inherently mobile nature of the one asset we have identified for potential recovery so far – the Aston Martin automobile – that if Peter Madoff received advance notice of the Petition he might attempt to move the Vehicle and/or other MSIL assets outside of this Court's jurisdiction. Accordingly, the Liquidators are seeking the assistance of the Court on an immediate *ex parte* basis to protect MSIL's US assets.  The Liquidators would seek to take expedited discovery from Peter Madoff regarding both the Vehicle and other assets in this District as well as the affairs of MSIL.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

_____

Stephen John Akers

Executed on April 8, 2009

7

# EXHIBIT  B

IN THE HIGH COURT OF JUSTICE                    No 11527 of 2008
CHANCERY DIVISION
COMPANIES COURT

THE HONOURABLE SIR JOHN LINDSAY (sitting as a Judge of the High Court)
Friday the 19th December 2008

IN THE MATTER OF MADOFF SECURITIES INTERNATIONAL LIMITED
AND IN THE MATTER OF THE INSOLVENCY ACT 1986

BETWEEN:



STEPHEN ERNEST JOHN RAVEN
CHRISTOPHER JAMES DALE
MALCOLM STEVENSON
PHILIP JOHN TOOP
LEON FLAX

**Applicants**

and

MADOFF SECURITIES INTERNATIONAL LIMITED

**Respondent**

---

ORDER

---

**UPON THE APPLICATION** of Stephen Ernest John Raven, Christopher James Dale, Malcolm Stevenson, Philip John Toop, the directors of the above-named company ("the Company")

**AND UPON HEARING** counsel for the Applicant, counsel for the Financial Services Authority, counsel for Lee Richards and counsel for the joint provisional liquidators hereafter appointed.

**AND UPON READING** the petition to wind up the Company and the evidence.

**AND UPON THE COURT** being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings (No 1346/2000)("the EC Regulation") does apply and that these proceedings are main proceedings as defined by Article 3 of the EC Regulation

2

**IT IS ORDERED** that Mark Richard Byers, Andrew Laurence Hosking and Stephen John Akers all of Grant Thornton UK LLP of 30 Finsbury Square, London EC2P 2YU be appointed joint provisional liquidators of the Company.

**AND IT IS ORDERED** that:

1.    During the period for which this Order is in force the affairs, business and property of the Company be managed by the joint provisional liquidators.

2.    During the period for which this Order is in force the joint provisional liquidators shall, subject to any further order of the Court:

        (i)    co-operate as shall be appropriate with Lee Richards appointed as receiver ("the Receiver") by the United States District Court, Southern District of New York in Case No. 08 Civ 10791 (LLS) ECF Case in its Order of 12 December 2008 made by Judge Louis L. Stanton and to the extent that is appropriate also with any trustee appointed by the United States Securities Investor Protection Corporation ("the Trustee");

        (ii)    co-operate as shall be appropriate with the Financial Services Authority ("FSA");

        (iii)    use their best endeavours to provide to the US Department of Justice ("DoJ") and the Securities and Exchange Commission ("SEC") the same information as that provided to the Receiver, the Trustee and the FSA, as early as is practicable;

and in each case the joint provisional liquidators in providing such co-operation may do so to the Receiver, the FSA, the Trustee, the DoJ and the SEC or through their respective representatives and agents.

3.    The powers and functions of the joint provisional liquidators shall be as set out in Schedule 1 to this Order.

4.    The remuneration of the joint provisional liquidators shall be fixed in accordance with Rule 4.30 of the Insolvency Rules 1986 from time to time upon an application of which adequate notice shall be served on the Receiver.

5.    The joint provisional liquidators shall be entitled to be paid their reasonable expenses and remuneration out of any property which upon enquiry by them may appear to be trust property if the Company's assets are found to be insufficient to discharge in full

the remuneration and the expenses of the provisional liquidation provided always that such payment is made with the consent of this Court.

6.  Prior to any such application as is described in paragraphs 4 and 5 above, the joint provisional liquidators shall use their best endeavours to consult with the Receiver.

7.  During the period for which this Order is in force any act required or authorised under any enactment or by this Order to be done by the joint provisional liquidators may be done by all or any one or more of the persons for the time being holding the office of provisional liquidator.

8.  Notice of this Order be given to the Company forthwith.

9.  The costs of and occasioned by this application (including the costs of the joint provisional liquidators so appointed) be paid as an expense of the provisional liquidation.


### NOTICE TO OFFICERS OF COMPANY

You are required by section 235 of the Insolvency Act 1986 to give the joint provisional liquidators all the information as they may reasonably require relating to the Company's property and affairs and to attend upon them at such times as they may reasonably require.

4

## SCHEDULE 1

## POWERS OVER THE COMPANY TO BE GRANTED TO THE JOINT PROVISIONAL LIQUIDATORS

The Joint Provisional Liquidators shall have power to carry out the following functions:

1.  To locate, protect, secure, take possession of, collect and get in all property or assets (of whatever nature) to which the Company is or appears to be entitled including, in particular sums of money currently being held in accounts with Barclays Bank PLC or brokerage accounts at Barclays Capital and, for that purpose, to take such proceedings as may seem to them expedient.

2.  To locate, protect, secure, take possession of, collect and get in the books, papers and records of the Company including the accounting and statutory records.

3.  To investigate the affairs of the Company.

4.  to exercise any and all powers available to provisional liquidators under sections 234, 235 and 236 of the Insolvency Act 1986.

5.  to sell or otherwise dispose of the property of the Company by public auction or private auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the Company by public roup or private bargain.

6.  To raise or borrow money and grant security thereof over the property of the Company.

7.  To incur and pay out of the assets of the Company the normal administrative expenses of the Company and any other payments which they are empowered to make pursuant to this Order.

8.  To terminate, cancel, complete or perfect any contracts or transactions relating to the business of the Company.

9.  To appoint a solicitor or accountant or other professionally qualified person to assist them in the performance of their functions.

10.     To make payments out of the Company's assets of such sums as may be necessary to discharge any professional, legal and accounting advisers' costs, charges and expenses, incurred by them.

11.     To bring or defend or intervene in any action or other legal proceedings whether in their own names or in the name and on behalf of the Company in the jurisdiction of this Court or in any other jurisdiction.

12.     To refer to arbitration any question affecting the Company.

13.     To effect and maintain insurances in respect of the business and property of the Company.

14.     To use the Company's seal.

15.     To do all acts and to execute in the name and on behalf of the Company any deed, receipt or other document.

16.     To draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Company.

17.     To appoint any agent to do any business which they are unable to do themselves or which can more conveniently be done by an agent and to employ and dismiss employees.

18.     To do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the Company.

19.     To make any payment which is necessary or incidental to the performance of their functions.

20.     To pay any class of creditors of the Company in full.

21.     To carry on the business of the Company.

22.     To establish subsidiaries of the Company.

23.     To transfer to subsidiaries of the Company the whole or any part of the business and property of the Company.

24. To grant or accept a surrender of a lease or tenancy of any of the property of the Company, and to take a lease or tenancy of any property required or convenient for the business of the Company.

25. To make any arrangement or compromise on behalf of the Company.

26. To call up any uncalled capital of the Company.

27. To rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the Company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

28. To present or defend a petition for the winding up of the Company

29. To change the location of the Company's registered office.

30. To do all other things incidental to the exercise of the foregoing powers.



No 11527 of 2008

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION
COMPANIES COURT

THE HONOURABLE SIR JOHN LINDSAY
(sitting as a Judge of the High Court)

IN THE MATTER OF MADOFF SECURITIES
INTERNATIONAL LIMITED

AND IN THE MATTER OF THE
INSOLVENCY ACT 1986

BETWEEN:

STEPHEN ERNEST JOHN RAVEN & ORS
**Applicants**

and

MADOFF SECURITIES
INTERNATIONAL LIMITED
**Respondent**

---

**ORDER**

---

SJ Berwin LLP
10 Queen Street Place
London
EC4R 1BE

Tel: 020 711 2222

# EXHIBIT  C

93CMMADP1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        09 CR 213 (DC)

5    BERNARD L. MADOFF,

6              Defendant.

7    ------------------------------x

8                                        New York, N.Y.
                                         March 12, 2009
9                                        10:00 a.m.

10

11   Before:

12                       HON. DENNY CHIN,

13                                       District Judge

14                       APPEARANCES

15   LEV L. DASSIN
          United States Attorney for the
16        Southern District of New York
     MARC O. LITT
17   LISA BARONI
          Assistant United States Attorneys
18

19   DICKSTEIN SHAPIRO LLP
          Attorneys for Defendant
20   BY:  IRA LEE SORKIN
          DANIEL J. HORWITZ
          NICOLE P. DE BELLO
21        MAURO M. WOLFE

22   ALSO PRESENT:  STEVEN GARFINKEL, FBI
                    KEITH KELLY, FBI
23                  JULIA SCHULTE HANISH, USDOJ, FBI
                    THEODORE V. CACIOPPI, FBI

24

25

1        (Case called)

2        MR. LITT:  Marc Litt for the United States.  With me

3    at counsel table are Lisa Baroni, an Assistant U.S. Attorney,

4    and four FBI agents:  Steven Garfinkel, Keith Kelly, Julia

5    Hanish, and Ted Cacioppi.  Good morning, your Honor.

6        MR. SORKIN:  Good morning, your Honor.  On behalf of

7    the defendant Bernard L. Madoff, the law firm of Dickstein

8    Shapiro LLP.  Mr. Madoff is sitting to my left.  To my right is

9    Daniel Horwitz of my firm.  To Mr. Madoff's left is Mauro Wolfe

10   from my firm, and to Mr. Wolfe's left is Nicole De Bello from

11   my firm.  Good morning.

12       THE COURT:  Good morning.

13       Mr. Sorkin, your client is still prepared to plead

14   guilty today as we discussed on Tuesday?

15       MR. SORKIN:  Yes, your Honor.

16       THE COURT:  Mr. Madoff, if you would stand, please,

17   and the deputy clerk will administer the oath.

18       (Defendant sworn)

19       MR. SORKIN:  Your Honor, before you begin the

20   allocution, we have provided the government and the court

21   reporter with a copy of the allocution that Mr. Madoff will

22   read, and we have a copy if the Court wishes to see it as well.

23       THE COURT:  Yes.  Thank you.

24       MR. SORKIN:  May I hand it up?

25       THE COURT:  Yes.

 1                  This statement is intended to cover all 11 counts?

 2                  MR. SORKIN:  Yes, your Honor.  After your Honor goes

 3      through, he will give a statement which we believe will cover

 4      all the elements.  Thank you.

 5                  THE COURT:  Mr. Madoff, do you understand that you are

 6      now under oath and that if you answer my questions falsely,

 7      your untrue answers may later be used against you in another

 8      prosecution for perjury or making false statements?

 9                  THE DEFENDANT:  Yes, I do.

10                  THE COURT:  Try to keep your voice up so that I can

11      hear you, please.

12                  THE DEFENDANT:  Yes, I do, your Honor.

13                  MR. SORKIN:  Can we get some water, your Honor?

14                  THE COURT:  Yes.

15                  MR. LITT:  I would note that the defendant has not yet

16      been arraigned on the information.

17                  THE COURT:  All right.  That's true.  Technically, we

18      did the first part of it.  We never did the final part.  Let me

19      just ask the final question.

20                  Mr. Madoff, the other day you waived indictment and

21      you consented to being charged by an information of the

22      government, correct?

23                  THE DEFENDANT:  Yes.

24                  THE COURT:  And how do you now plead to the

25      information, guilty or not guilty?

93CMMADP1

1            THE DEFENDANT:  Guilty.

2            THE COURT:  Before I accept the plea I will conduct

3       the allocution.

4            Would you state your full name for the record, please.

5            THE DEFENDANT:  Bernard L. Madoff.

6            THE COURT:  On Tuesday you told me your age and

7       educational background.  We talked a little bit about your

8       medical condition.  Has your medical condition changed since

9       Tuesday?

10           THE DEFENDANT:  No, it has not.

11           THE COURT:  In the past 24 hours, have you taken any

12      drugs, medicine, or pills, or have you drunk any alcohol?

13           THE DEFENDANT:  No.

14           THE COURT:  Is your mind clear today?

15           THE DEFENDANT:  Yes, it is.

16           THE COURT:  And are you feeling all right today under

17      the circumstances?

18           THE DEFENDANT:  Yes, I am.

19           THE COURT:  Do either counsel have any doubt as to Mr.

20      Madoff's competence to plead at this time?

21           MR. LITT:  The government does not.

22           MR. SORKIN:  No, your Honor.

23           THE COURT:  Now, Mr. Madoff, as I understand it, you

24      wish to plead guilty today to all 11 counts of the information,

25      is that correct?

93CMMADP1

```
 1              THE DEFENDANT:  Yes, it is correct.
 2              THE COURT:  Have you had a full opportunity to discuss
 3       your case with Mr. Sorkin and to discuss the consequences of
 4       pleading guilty?
 5              THE DEFENDANT:  Yes, I have.
 6              THE COURT:  You told me on Tuesday that you were
 7       satisfied with Mr. Sorkin and his representation of you.  Are
 8       you still satisfied?
 9              THE DEFENDANT:  Yes, I am.
10              THE COURT:  On the basis of Mr. Madoff's responses to
11       my questions and my observations of his demeanor, I find that
12       he is fully competent to enter an informed plea at this time.
13              Now, Mr. Madoff, before I accept any plea from you I
14       am going to ask you some additional questions that are intended
15       to satisfy me that you wish to plead guilty because you are
16       guilty and that you fully understand the consequences of your
17       plea.  If you do not understand any of my questions, please ask
18       me or Mr. Sorkin to explain.
19              I am going to describe to you certain rights that you
20       have under the Constitution and laws of the United States.  You
21       will be giving up these rights if you plead guilty, so please
22       listen carefully.
23              Under the Constitution and laws of the United States,
24       you have a right to a speedy and public trial by a jury on the
25       charges against you which are contained in the information.  If
```

93CMMADP1

```
 1   there were a trial, you would be presumed innocent and the

 2   government would be required to prove your guilt by competent

 3   evidence beyond a reasonable doubt.  You would not have to

 4   prove that you were innocent if you were to go to trial.

 5           If there were a trial, you would have the right to be

 6   represented by an attorney.  And if you could not afford one,

 7   an attorney would be provided for you free of cost.

 8           If there were a trial, you would have a right to see

 9   and hear all the witnesses against you and your attorney could

10   cross-examine them.  You would have a right to have your

11   attorney object to the government's evidence and to offer

12   evidence on your own behalf if you so desired, and you would

13   have the right to have subpoenas issued or other process used

14   to compel witnesses to testify in your defense.

15           If there were a trial, you would have the right to

16   testify if you wanted to, but no one could force you to testify

17   if you did not want to.  Furthermore, no inference or

18   suggestion of guilt could be drawn if you chose not to testify

19   at trial.

20           Mr. Madoff, do you understand each and every one of

21   these rights?

22           THE DEFENDANT:  Yes, I do.

23           THE COURT:  Do you understand that by pleading guilty

24   today you are giving up each and every one of these rights, you

25   are waiving these rights, and you will have no trial?
```

93CMMADP1

```
 1              THE DEFENDANT:  I do.

 2              THE COURT:  Do you understand that you have the right

 3      even now to refuse to plead guilty?

 4              THE DEFENDANT:  Yes, I do.

 5              THE COURT:  You do not have to enter a plea of guilty

 6      if you do not want to, for any reason.

 7              Do you understand that?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Now, did you receive a copy of the

10      information?

11              THE DEFENDANT:  Yes, I have.

12              THE COURT:  And as we discussed on Tuesday and as we

13      discussed a moment ago, do you understand that you have waived

14      your right to be charged by an indictment, which is issued by a

15      grand jury, and you have consented to being charged by the

16      information which is issued by the prosecutor?

17              THE DEFENDANT:  Yes.

18              THE COURT:  And did you waive that right voluntarily

19      and knowingly?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Now, I am going to review the counts with

22      you.  As we said, the information contains 11 counts.

23              Count One charges securities fraud.

24              Count Two charges investment adviser fraud.

25              Count Three charges mail fraud.
```

1              Count Four charges wire fraud.

2              Count Five charges international money laundering to

3      promote fraud in the sale of securities.

4              Count Six charges international money laundering to

5      conceal the proceeds of fraud in the sale of securities.

6              Count Seven charges money laundering.

7              Count Eight charges making false statements.

8              Count Nine charges perjury.

9              Count Ten charges making a false filing with the

10     Securities and Exchange Commission.

11             And Count Eleven charges theft from an employee

12     benefit plan.

13             Do you understand that those are the charges against

14     you?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  I'll ask the government to advise the

17     defendant of the elements of the crimes.

18             MR. LITT:  Yes, your Honor.  With respect to Count

19     One, securities fraud --

20             THE COURT:  Hold on one second.

21             Mr. Madoff, you can be seated.  Pour yourself some

22     water.

23             THE DEFENDANT:  Thank you.

24             MR. LITT:  With respect to Count One, securities

25     fraud, in order to prove the crime of securities fraud, the

93CMMADP1

1   government must establish each of the following three elements

2   beyond a reasonable doubt:

3          First, that in connection with the purchase or sale of

4   a security, the defendant did any one or more of the following:

5   (1) employed a device, scheme, or artifice to defraud or (2)

6   made an untrue statement of a material fact or omitted to state

7   a material fact which made what was said under the

8   circumstances misleading; or (3) engaged in an act, practice,

9   or course of business that operated or would operate as a fraud

10  or deceit upon a purchaser or seller.

11         Second, that the defendant acted knowingly, willfully,

12  and with the intent to defraud;

13         And, third, that the defendant knowingly used or

14  caused to be used any means or instruments of transportation or

15  communication in interstate commerce or the use of the mails in

16  furtherance of the fraudulent conduct.

17         With respect to investment adviser fraud, the

18  government would have to prove beyond a reasonable doubt all

19  four of the following elements:  First, that the defendant was

20  an investment adviser; second, that the defendant either (A)

21  employed a device, scheme, or artifice to defraud clients and

22  prospective clients; (B) engaged in a transaction, practice, or

23  course of business which operated as a fraud or deceit upon

24  those clients and prospective clients; or (C) engaged in an

25  act, practice, and course of business that was fraudulent,

93CMMADP1

1    deceptive, and manipulative.

2            Third, that the defendant devised or participated in

3    such alleged device, scheme, or artifice to defraud or engaged

4    in such alleged transaction, practice, or course of business,

5    knowingly, willfully, and with intent to defraud.

6            And, fourth, that the defendant employed such alleged

7    device, scheme, or artifice to defraud or engaged in such

8    alleged transaction, practice, or course of business by use of

9    the mails or other instrumentality of interstate commerce.

10           In order to prove the crime of mail fraud, the

11   government must establish beyond a reasonable doubt the

12   following four elements:

13           First, that at or about the time alleged in the

14   indictment there was a scheme or artifice to defraud in order

15   to obtain property or money by false and fraudulent pretenses,

16   representations, or promises;

17           Second, that the false or fraudulent statements and

18   representations concerned material facts;

19           Third, that the defendant knowingly and willfully

20   devised or participated in the scheme or artifice to defraud

21   with knowledge of its fraudulent nature and with specific

22   intent to defraud;

23           And, fourth, that the United States Mails were used in

24   furtherance of the scheme as specified in the information.

25           In order to prove the crime of wire fraud the

1    government must establish the following four essential

2    elements:

3               First, that at or about the time alleged in the

4    information there was a scheme or artifice to defraud in order

5    to obtain property or money by false and fraudulent pretenses,

6    representations, or promises;

7               Second, that the false or fraudulent statements and

8    representations concerned material facts;

9               Third, that the defendant knowingly and willfully

10   devised or participated in the scheme or artifice to defraud

11   with knowledge of its fraudulent nature and with specific

12   intent to defraud

13              And, fourth, that interstate or foreign wire

14   facilities were used in furtherance of the scheme to defraud as

15   specified in the information.

16              In order to prove the crime of unlawful transportation

17   of funds or monetary instruments with the intent to promote the

18   carrying on of specified unlawful activity, in violation of

19   Section 1956(a)(2)(A), the government must establish beyond a

20   reasonable doubt each of the following elements:

21              First, that the defendant transported a monetary

22   instrument or funds from a place in the United States to or

23   through a place outside the United States, or to a place in the

24   United States from or through a place outside the United

25   States;

93CMMADP1

1    And, second, that the defendant did so with the intent

2 to promote the carrying on of specified unlawful activity.

3    In order to prove the crime of unlawful transportation

4 of funds or monetary instruments to conceal and disguise the

5 proceeds of specified unlawful activity, the government must

6 establish beyond a reasonable doubt each of the following:

7    First, that the defendant transported a monetary

8 instrument or funds from a place in the United States to or

9 through a place outside the United States, or to a place in the

10 United States from or through a place outside the United

11 States;

12    And, second, that the defendant did so with the

13 knowledge that the monetary instrument or funds involved

14 represent the proceeds of some form of unlawful activity;

15    And, third, that the defendant did so with knowledge

16 that the transportation was designed in whole or in part to

17 conceal or disguise the nature, location, source, ownership, or

18 control of the proceeds of securities fraud, mail fraud, wire

19 fraud, and theft from an employee benefit plan.

20    In order to prove the crime of engaging in monetary

21 transactions in property derived from specified unlawful

22 activity in violation of Section 1957, the government must

23 establish the following beyond a reasonable doubt:

24    First, that the defendant engaged or attempted to

25 engage in a monetary transaction in or affecting interstate

93CMMADP1

1    commerce;

2            Second, that the monetary transaction involved

3    criminally derived property of a value greater than $10,000;

4            Third, that the property was derived from specified

5    unlawful activity; in this case, from securities fraud, mail

6    fraud, wire fraud, or theft from a pension benefit plan;

7            Fourth, that the defendant acted knowingly; that is,

8    with knowledge that the transaction involved proceeds of a

9    criminal offense;

10           And, fifth, that the transaction took place in the

11   United States or that the defendant is a United States person.

12           In order to prove the crime of making false statements

13   to the SEC, in violation of 18 U.S.C. 1001, the government must

14   establish the following elements beyond a reasonable doubt:

15           First, that the defendant made a statement or

16   representation;

17           Second, that the statement or representation was

18   material;

19           Third, that the statement or representation was false,

20   fictitious or fraudulent;

21           Fourth, that the false, fictitious or fraudulent

22   statement was made knowingly or willfully;

23           And, fifth, that the statement or representation was

24   made in a matter within the jurisdiction of the government of

25   the United States.

93CMMADP1

1            To prove the crime of perjury the government must

2      prove beyond a reasonable doubt each of the following:

3            First, that the defendant took an oath to testify

4      truly before the Securities and Exchange Commission, a body

5      authorized by law to administer oaths;

6            Second, that the defendant made false statements as to

7      matters about which the defendant testified under oath as set

8      forth in the information;

9            Third, that the matters as to which it is charged that

10     the defendant made false statements were material to the issues

11     under inquiry by the Securities and Exchange Commission;

12           And, fourth, that such false statements were willfully

13     made.

14           To prove the offense of making a false filing with the

15     SEC the government must prove beyond a reasonable doubt each of

16     the following:

17           First, that the defendant was required to file an

18     application, report, or document with the SEC under the

19     Securities Exchange Act of 1934 and the rules and regulations

20     thereunder;

21           Second, that the application, report, or document

22     filed with the SEC contained false or misleading statements;

23           Third, that the false or misleading statements were

24     material;

25           And, fourth, that the defendant acted knowingly and

93CMMADP1

1    willfully.

2         To prove the offense of theft from an employee pension

3    benefit plan the government must prove beyond a reasonable

4    doubt the following elements:

5         First, that the defendant abstracted or converted to

6    his own use or the use of others the monies, funds, securities,

7    premiums, credits, property, or other assets of an employee

8    welfare benefit plan;

9         Second, that the funds abstracted or converted from --

10   excuse me, that the fund abstracted or converted from was an

11   employee welfare benefit plan within the meaning of the

12   statute;

13        And, third, that the defendant acted knowingly and

14   willfully.

15        THE COURT:  Thank you.

16        Mr. Madoff, would you rise again, please.

17        Mr. Madoff, do you understand that if you were to go

18   to trial the government would have to prove all of those

19   elements beyond a reasonable doubt?

20        THE DEFENDANT:  Yes, I do.

21        THE COURT:  Now I am going to review with you the

22   maximum possible penalties for the crimes in question.

23        Count One charging securities fraud carries a maximum

24   sentence of 20 years' imprisonment, a maximum fine of the

25   greatest of $5 million, or twice the gross gain or twice the

93CMMADP1

1    gross loss, a mandatory special assessment of $100, and a

2    maximum term of supervised release of three years.

3              In fact, each count carries a mandatory special

4    assessment of $100, so I am not going to repeat that for each

5    of the 11 counts.

6              Count Two charges investment adviser fraud.  It

7    carries a maximum sentence of five years' imprisonment, a

8    maximum fine of the greatest of $10,000, or twice the gross

9    gain or twice the gross loss, and a maximum term of supervised

10   release of three years.

11             Count Three, the mail fraud count, charges a maximum

12   sentence of 20 years' imprisonment, a maximum fine of the

13   greatest of $250,000, or twice the gross gain or twice the

14   gross loss, and a maximum term of supervised release of three

15   years.

16             In fact, all 11 counts carry the same maximum term of

17   supervised release of three years, so I won't repeat that

18   either.

19             I'm up to Count Four, the wire fraud count.  That

20   carries a maximum sentence of 20 years' imprisonment, a maximum

21   fine of the greatest of $250,000, or twice the gross gain or

22   twice the gross loss.

23             Count Five, the international money laundering count,

24   the first of those counts, carries a maximum sentence of 20

25   years' imprisonment, a maximum fine of the greatest of

93CMMADP1

1    $500,000, twice the value of the funds involved, or twice the

2    gross gain to any person or twice the pecuniary loss to any

3    person other than yourself.

4              Count Six, the second international money laundering

5    count, carries a maximum sentence of 20 years' imprisonment, a

6    maximum fine of the greatest of $500,000, or twice the value of

7    the funds involved or twice the gross gain or twice the

8    pecuniary loss.

9              Count Seven, a money laundering count, charges a

10   maximum sentence of ten years' imprisonment, a maximum fine of

11   the greatest of $250,000, or twice the gross gain or twice the

12   pecuniary loss.

13             Count Eight, which charges making false statements,

14   carries a maximum sentence of five years' imprisonment, a

15   maximum fine of $250,000, or twice the gross gain or twice the

16   pecuniary loss.

17             Count Nine charges perjury.  It carries a maximum

18   sentence of five years' imprisonment, a maximum fine of the

19   greatest of $250,000, or twice the gross gain or twice the

20   pecuniary loss.

21             Count Ten charges making a false filing with the SEC.

22   It carries a maximum sentence of 20 years' imprisonment, a

23   maximum fine of the greatest of $5 million, or twice the gross

24   gain or twice the pecuniary loss.

25             Finally, Count Eleven, which charges theft from an

93CMMADP1

1   employee benefit plan, carries a maximum sentence of five

2   years' imprisonment, a maximum fine of the greatest of

3   $250,000, or twice the gross gain or twice the pecuniary loss.

4        Do you understand that those are the possible maximum

5   sentences?

6        THE DEFENDANT:  Yes, I do.

7        THE COURT:  Now, taking all the counts together, do

8   you understand that the total maximum sentence of incarceration

9   that you face is 150 years' imprisonment?

10       THE DEFENDANT:  I do.

11       THE COURT:  In addition, do you understand that as

12  part of your sentence I can order restitution to any person or

13  entity injured as a result of your criminal conduct?

14       THE DEFENDANT:  Yes.

15       MR. LITT:  Your Honor, I would just note that

16  restitution is mandatory, not discretionary.

17       THE COURT:  I will order restitution if it's

18  mandatory.

19       You understand that?

20       THE DEFENDANT:  I do.

21       THE COURT:  I mentioned supervised release.  By that I

22  mean that you would be subject to monitoring when you were

23  released from prison under terms and conditions that could lead

24  to reimprisonment without a jury trial if you were to violate

25  them.  And if you were to violate the terms of your supervised

93CMMADP1

1    release you could be sent back to prison for the entire term of

2    your supervised release.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Are you a citizen of the United States?

6              THE DEFENDANT:  Yes, I am.

7              THE COURT:  Do you understand that as a result of your

8    guilty plea you may lose certain valuable civil rights, such as

9    the right to vote, the right to hold public office, the right

10   to serve on a jury, and the right to possess any kind of

11   firearm?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Now, have you talked to Mr. Sorkin about

14   the federal sentencing guidelines?

15             THE DEFENDANT:  Yes, I have.

16             THE COURT:  Do you understand that the guidelines are

17   now advisory only and that they are no longer mandatory?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Nonetheless, before I can sentence you I

20   still have to determine what your sentencing range is under the

21   guidelines.  I can't do that until after the probation

22   department prepares a presentence report and you, your lawyer,

23   and the government have had a chance to review the report and

24   to make any objections.

25             Do you understand that?

93CMMADP1

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  And even after I decide what your

 3    guideline range is, I still have the authority in appropriate

 4    circumstances to impose a sentence that is above or below the

 5    guideline range.

 6              Do you understand that?

 7              THE DEFENDANT:  I do.

 8              THE COURT:  Do you understand that parole has been

 9    abolished in the federal system and, thus, you would not be

10    released from prison any earlier on parole?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Do you understand that if your attorneys

13    or anyone else has attempted to predict what your sentence will

14    be that the prediction could be wrong?

15              THE DEFENDANT:  Yes.

16              THE COURT:  And that is because no one, not your

17    attorney, not the government, can or should make any promises

18    to you as to what your sentence will be as your sentence cannot

19    be decided until after the presentence report is completed, I

20    have ruled on any objections, and I have decided whether there

21    is any basis to go above or below the guideline range.

22              Do you understand that?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Finally, do you understand that even if

25    your sentence turns out to be different from what your attorney
```

93CMMADP1

1   or anyone else has told you it might be, or even if your

2   sentence turns out to be different from what you expect, you

3   will still be bound to your guilty plea and you will not be

4   allowed to withdraw your plea of guilty?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Do you understand that by pleading guilty

7   you may be giving up or waiving certain aspects of your right

8   to appeal?

9           THE DEFENDANT:  Yes.

10          THE COURT:  The government provided your lawyers with

11  a letter, dated March 10, 2009, which we call a Pimentel

12  letter?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did you review that with your lawyers?

15          THE DEFENDANT:  I did.

16          THE COURT:  And that Pimentel letter explains that

17  your guideline sentence is 150 years.

18          Do you understand that?

19          THE DEFENDANT:  I do.

20          THE COURT:  That's the government's calculation.

21  That's the government's position and you and your lawyers will

22  have the opportunity to comment on that.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And do you understand also that this

93CMMADP1

1    calculation that's set forth in the government's letter is not

2    binding on the Court?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Has anyone offered you any inducements or

5    threatened you or forced you to plead guilty?

6              THE DEFENDANT:  No.

7              THE COURT:  Mr. Sorkin, do you know of any valid

8    defense that would prevail at trial, or do you know any reason

9    why your client should not be permitted to plead guilty?

10             THE DEFENDANT:  I do not, your Honor.

11             THE COURT:  Mr. Madoff, tell me what you did.

12             MR. SORKIN:  Your Honor, may I make one,

13   respectfully -- according to the Pimentel letter, we agree that

14   while the maximum statutory penalty in terms of imprisonment is

15   150 years, the guideline range -- and this can be found on page

16   6 of the Pimentel letter -- is life imprisonment.  The criminal

17   history category I yields a sentencing range of life

18   imprisonment.

19             THE COURT:  I understand.  But the government goes on

20   further to take the position that when a count does not permit

21   life, then you look at the statutory maximum.  That's the

22   government's position.

23             MR. SORKIN:  I just want to make sure Mr. Madoff

24   understood that.  Thank you, your Honor.

25             THE COURT:  Mr. Madoff, you understand that?

93CMMADP1

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Technically, the guideline range is life,

3     but none of the counts in question carries a sentence that can

4     go up to life.  The top is 20 years.  According to the

5     government, in that circumstance then the guideline range is

6     the maximum and the government's position is that the guideline

7     range is 150 years.  Again, I don't know whether Mr. Sorkin

8     agrees or disagrees, but we will deal with that before

9     sentencing.

10         MR. SORKIN:  Thank you, your Honor.

11         THE COURT:  Mr. Madoff, would you tell me what you

12    did, please.

13         THE DEFENDANT:  Yes, your Honor.

14         Your Honor, for many years up until my arrest on

15    December 11, 2008, I operated a Ponzi scheme through the

16    investment advisory side of my business, Bernard L. Madoff

17    Securities LLC, which was located here in Manhattan, New York,

18    at 885 Third Avenue.  I am actually grateful for this

19    opportunity to publicly speak about my crimes, for which I am

20    so deeply sorry and ashamed.  As I engaged in my fraud, I knew

21    what I was doing wrong, indeed criminal.  When I began the

22    Ponzi scheme I believed it would end shortly and I would be

23    able to extricate myself and my clients from the scheme.

24    However, this proved difficult, and ultimately impossible, and

25    as the years went by I realized that my arrest and this day

1   would inevitably come.  I am painfully aware that I have deeply

2   hurt many, many people, including the members of my family, my

3   closest friends, business associates, and the thousands of

4   clients who gave me their money.  I cannot adequately express

5   how sorry I am for what I have done.  I am here today to accept

6   responsibility for my crimes by pleading guilty and, with this

7   plea allocution, explain the means by which I carried out and

8   concealed my fraud.

9           The essence of my scheme was that I represented to

10  clients and prospective clients who wished to open investment

11  advisory and individual trading accounts with me that I would

12  invest their money in shares of common stock, options, and

13  other securities of large well-known corporations, and upon

14  request, would return to them their profits and principal.

15  Those representations were false for many years.  Up until I

16  was arrested on December 11, 2008, I never invested these funds

17  in the securities, as I had promised.  Instead, those funds

18  were deposited in a bank account at Chase Manhattan Bank.  When

19  clients wished to receive the profits they believed they had

20  earned with me or to redeem their principal, I used the money

21  in the Chase Manhattan bank account that belonged to them or

22  other clients to pay the requested funds.  The victims of my

23  scheme included individuals, charitable organizations, trusts,

24  pension funds, and hedge funds.  Among other means, I obtained

25  their funds through interstate wire transfers they sent from

93CMMADP1

1  financial institutions located outside New York State to the

2  bank account of my investment advisory business, located in

3  Manhattan, New York, and through mailings delivered by the

4  United States Postal Service and private interstate carriers to

5  my firm here in Manhattan.

6         I want to emphasize today that while my investment

7  advisory business, the vehicle of my wrongdoing, was part of my

8  firm, Bernard L. Madoff Securities, the other businesses my

9  firm engaged in, proprietary trading and market making, were

10 legitimate, profitable, and successful in all respects.  Those

11 businesses were managed by my brother and two sons.

12        To the best of my recollection, my fraud began in the

13 early 1990s.  At that time, the country was in a recession and

14 this posed a problem for investments in the securities markets.

15 Nevertheless, I had received investment commitments from

16 certain institutional clients and understood that those

17 clients, like all professional investors, expected to see their

18 investments out-perform the market.  While I never promised a

19 specific rate of return to my client, I felt compelled to

20 satisfy my clients' expectations, at any cost.  I therefore

21 claimed that I employed an investment strategy I had developed,

22 called the split strike conversion strategy, to falsely give

23 the appearance to clients that I had achieved the results I

24 believed they expected.

25        Through the split strike conversion strategy I

93CMMADP1

1    promised to clients and prospective clients that client funds

2    would be invested in a basket of common stocks within the

3    Standard & Poors 100 index, a collection of the 100 largest

4    publicly-traded companies in terms of their market

5    capitalization.  I promised that I would select a basket of

6    stocks that would closely mimic the price movements of the

7    Standard & Poors 100 index.  I promised that I would

8    opportunistically time those purchases and would be out of the

9    market intermittently, investing client funds during these

10   periods in United States Government-issued securities, such as

11   United States Treasury bills.  In addition, I promised that as

12   part of the split strike conversion strategy, I would hedge the

13   investments I made in the basket of common stocks by using

14   client funds to buy and sell option contracts related to those

15   stocks, thereby limiting potential client losses caused by

16   unpredictable changes in stock prices.  In fact, I never made

17   those investments I promised clients, who believed they were

18   invested with me in the split strike conversion strategy.

19           To conceal my fraud, I misrepresented to clients,

20   employees, and others that I purchased securities for clients

21   in overseas markets.  Indeed, when the United States Securities

22   and Exchange Commission asked me to testify as part of an

23   investigation they were conducting about my investment advisory

24   business, I knowingly gave false testimony under oath to the

25   staff of the SEC on May 19, 2006 that I executed trades of

93CMMADP1

1    common stock on behalf of my investment advisory clients and

2    that I purchased and sold the equities that were part of my

3    investment strategy in European markets.  In that session with

4    the SEC, which took place here in Manhattan, New York, I also

5    knowingly gave false testimony under oath that I had executed

6    options contracts on behalf of my investment advisory clients

7    and that my firm had custody of the assets managed on behalf of

8    my investment advisory clients.

9         To further cover up the fact that I had not executed

10   trades on behalf of my investment advisory clients, I knowingly

11   caused false trading confirmations and client account

12   statements that reflected the bogus transactions and positions

13   to be created and sent to clients purportedly involved in the

14   split strike conversion strategy, as well as other individual

15   clients I defrauded who believed they had invested in

16   securities through me.  The clients receiving trade

17   confirmations and account statements had no way of knowing by

18   reviewing these documents that I had never engaged in

19   transactions represented on the statements and confirmations.

20   I knew those false statements and account statements would be

21   and were sent to clients through the U.S. Mails from my office

22   here in Manhattan.

23        Another way that I concealed my fraud was through the

24   filing of false and misleading certified annual reports and

25   financial statements -- excuse me.  Another way that I

93CMMADP1

```
1    concealed my fraud was through the filing of false and

2    misleading certified audit reports and financial statements

3    with the SEC.  I knew that these audit reports and financial

4    statements were false and that they would also be sent to

5    clients.  These reports, which were prepared here in the

6    Southern District of New York, among other things, falsely

7    reflected my firm's liabilities as a result of my intentional

8    failure to purchase securities on behalf of my advisory

9    clients.

10            Similarly, when I recently caused my firm in 2006 to

11   register as an investment adviser with the SEC, I subsequently

12   filed with the SEC a document called the form ADV uniform

13   application for investment adviser registration.  On this form

14   I intentionally and falsely certified under penalty of perjury

15   that Bernard L. Madoff Investment Securities had custody of my

16   advisory clients' securities.  That was not true, and I knew it

17   when I completed and filed the form with the SEC, which I did

18   from my office on the 17th floor of 885 Third Avenue, here in

19   Manhattan.

20            In more recent years, I used yet another method to

21   conceal my fraud.  I wired money between the United States and

22   the United Kingdom to make it appear as though there were

23   actual securities transactions executed on behalf of my

24   investment advisory clients.  Specifically, I had money

25   transferred from the U.S. bank account of my investment
```

93CMMADP1

```
 1   advisory business to the London bank account of Madoff
 2   Securities International Limited, a United Kingdom corporation
 3   that was an affiliate of my business in New York.  Madoff
 4   Securities International Limited was principally engaged in
 5   proprietary trading and was a legitimate, honestly run and
 6   operated business.  Nevertheless, to support my false statement
 7   that I purchased and sold securities for my investment advisory
 8   clients in European markets, I caused money from the bank
 9   account of my fraudulent advisory business, located here in
10   Manhattan, to be wire transferred to the London bank account of
11   Madoff Securities International Limited.
12           There were also times in recent years when I had
13   money, which had originated in the New York Chase Manhattan
14   bank account of my investment advisory business, transferred
15   from the London bank account of Madoff Securities International
16   Limited to the Bank of New York operating bank account of my
17   firm's legitimate proprietary and market making business.  That
18   Bank of New York account was located in New York.  I did this
19   as a way of ensuring that the expenses associated with the
20   operation of the fraudulent investment advisory business would
21   not be paid from the operations of the legitimate proprietary
22   trading and market making businesses.
23           In connection with the purported trades, I caused the
24   fraudulent investment advisory side of my business to charge
25   the investment advisory clients four cents per share as a
```

1    commission.  At times in the last few years, these commissions

2    were transferred from Chase Manhattan bank account of the

3    fraudulent investment advisory side of my firm to the account

4    at Bank of New York, which was the operating account for the

5    legitimate side of Bernard L. Madoff Investment Securities, the

6    proprietary trading and market making side of my firm.  I did

7    this to ensure that the expenses associated with the operation

8    of my fraudulent investment advisory business would not be paid

9    from the operations of the legitimate proprietary trading and

10   market making business.  It is my belief that the salaries and

11   bonuses of the personnel involved in the operation of the

12   legitimate side of Bernard L. Madoff Investment Securities were

13   funded by the operations of the firm's successful proprietary

14   trading and market making businesses.

15            Your Honor, I hope I have conveyed with some

16   particularity in my own words the crimes I committed and the

17   means by which I committed them.  Thank you, your Honor.

18            THE COURT:  Thank you, Mr. Madoff.

19            Mr. Sorkin, I don't think there was mention of an

20   employee benefit plan.

21            MR. SORKIN:  The pension fund was mentioned, your

22   Honor.

23            THE COURT:  What page that?

24            MR. SORKIN:  I think it's page 2.  If you look at the

25   top, the victim -- I'm quoting -- the victims of my scheme

93CMMADP1

```
 1   included individuals, charitable organizations, trusts, pension

 2   funds, and hedge funds.

 3           THE COURT:  I see.

 4           And those pension funds include employee welfare

 5   benefit plans?

 6           MR. SORKIN:  Yes, your Honor.

 7           Is that correct?

 8           THE DEFENDANT:  Yes.

 9           THE COURT:  Mr. Madoff, you can be seated for a

10   moment.

11           Does the government believe that Mr. Madoff's

12   admissions cover the elements of the crimes of each count?

13           MR. LITT:  Yes, your Honor.  The government does not

14   entirely agree with all of the defendant's description of his

15   conduct.  However, the government does believe that his

16   allocution does cover each of the elements of the charged

17   offenses.

18           THE COURT:  Would you summarize what the government's

19   evidence would be if the defendant were to go to trial?

20           MR. LITT:  Yes.

21           Had this case proceeded to trial, the government would

22   have proven through testimony and evidence beyond a reasonable

23   doubt all of the facts set forth in the criminal information.

24           In summary, the government would have proven the

25   following:  The defendant operated a massive Ponzi scheme
```

93CMMADP1

 1    through his company, Bernard L. Madoff Investment Securities,

 2    beginning at least as early as the 1980s.  Over the decades

 3    working from his New York City office and elsewhere, Madoff

 4    solicited and caused others to solicit prospective clients to

 5    open accounts with his company.  His clients included

 6    individuals, charitable organizations, trusts, pension funds,

 7    and hedge funds, among others, and those clients were also his

 8    victims.

 9              Madoff told those clients that he would invest their

10    funds in publicly-traded securities, options, and treasury

11    bills.  In fact, over the life of his scheme Madoff did not buy

12    stocks or options as he had promised.  Instead, Madoff used

13    client funds to pay other clients who sought to redeem their

14    investments, and used so-called commission revenue generated by

15    charging clients four cents per share for shares that he never,

16    in fact, purchased to generate revenue for his firm.  At times,

17    his firm would have been unable to operate but for the cash

18    generated from this Ponzi scheme.  Madoff repeatedly lied to

19    clients in person, on telephone calls, and through mailings,

20    including account statements and confirmations of purchases and

21    sales of securities that he mailed through the U.S. Postal

22    Service.

23              Some investors sent checks to Madoff through the

24    mails, others wired money to Madoff, and many of those wires

25    came from outside New York State into the Southern District of

93CMMADP1

1    New York.  Madoff also caused hundreds of millions of dollars

2    of client funds to be wired overseas to accounts in London.

3    Some of that money was sent back to his firm and used to pay

4    its expenses.  Other money was sent back and forth between New

5    York and London to give the false impression that he was

6    actually buying and selling securities in European markets

7    when, in fact, he was not.

8         Madoff also used some of the money funneled through

9    London to support his lavish lifestyle.  Madoff also used other

10   means of deception to hide his scheme.  He lied when he told

11   clients that he was purchasing securities on their behalf.

12        He also lied to regulators, including the SEC.  He

13   filed false and fraudulent certified financial statements with

14   the SEC that failed to disclose his fraud scheme, failed to

15   disclose his liabilities to the victims of his Ponzi scheme,

16   and contained false certifications that the audited statements

17   had been prepared in accordance with generally-accepted

18   auditing standards and principles.

19        Mr. Madoff lied in a form that he was required to file

20   with the SEC as an investment adviser, claiming that his

21   company had custody of client securities when, in fact, he had

22   not purchased any securities for those clients.

23        He also lied at least seven separate times in an SEC

24   deposition in 2006.

25        At the end, Madoff told his clients that he was

93CMMADP1

1    holding nearly $65 billion in securities on behalf of those

2    clients.   In fact, he had only a small fraction of that amount.

3              (Continued on next page)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

93CGMADP2

1              THE COURT:  Thank you.  Mr. Madoff, please stand.

2              When you did the things you told me you did in your

3       statement, did you know that what you were doing was wrong and

4       illegal?

5              THE DEFENDANT:  Yes, I did, your Honor.

6              THE COURT:  How do you now plead to Count One of the

7       information, guilty or not guilty?

8              THE DEFENDANT:  Guilty.

9              THE COURT:  How do you now plead to Count Two of the

10      information, guilty or not guilty?

11             THE DEFENDANT:  Guilty.

12             THE COURT:  How do you now plead to Count Three,

13      guilty or not guilty?

14             THE DEFENDANT:  Guilty.

15             THE COURT:  How do you now plead to Count Four, guilty

16      or not guilty?

17             THE DEFENDANT:  Guilty.

18             THE COURT:  How do you now plead to Count Five, guilty

19      or not guilty?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  How do you now plead to Count Six, guilty

22      or not guilty?

23             THE DEFENDANT:  Guilty.

24             THE COURT:  How do you now plead to Count Seven,

25      guilty or not guilty?

93CGMADP2

1              THE DEFENDANT:  Guilty.

2              THE COURT:  How do you plead to Count Eight, guilty or

3    not guilty?

4              THE DEFENDANT:  Guilty.

5              THE COURT:  How do you plead to Count Nine, guilty or

6    not guilty?

7              THE DEFENDANT:  Guilty.

8              THE COURT:  How do you now plead to Count Ten, guilty

9    or not guilty?

10             THE DEFENDANT:  Guilty.

11             THE COURT:  And finally, how do you now plead to Count

12   Eleven, guilty or not guilty?

13             THE DEFENDANT:  Guilty, your Honor.

14             THE COURT:  Did you do the things that you are charged

15   with doing in all 11 counts of the information?

16             THE DEFENDANT:  Yes, I did, your Honor.

17             THE COURT:  And are you pleading guilty because you

18   are guilty?

19             THE DEFENDANT:  Yes, I am.

20             THE COURT:  Are you pleading guilty voluntarily and of

21   your own free will?

22             THE DEFENDANT:  Yes, I am.

23             THE COURT:  All right.  Mr. Madoff, you may be seated.

24             Based on what I have heard, I am inclined to accept

25   Mr. Madoff's guilty plea.

93CGMADP2

 1            As I stated the other day, the government received a
 2   number of e-mails from victims objecting to any plea bargain or
 3   any plea deal.  As it is clear that there is no plea bargain or
 4   plea deal, there is no basis for these objections.  At this
 5   time, nonetheless, if there is any victim who signed our
 6   sign-in sheet who wishes to be heard on the question of whether
 7   I should accept Mr. Madoff's guilty plea, you can have a chance
 8   to speak now.  We have a list.
 9            Mr. Nierenberg, do you want to speak?
10            MR. NIERENBERG:  Yes.
11            THE COURT:  All right, sir.  Come to the microphone.
12   And remember that today is not the sentencing.  Victims will
13   have a chance to speak at sentencing.  Go ahead.
14            MR. NIERENBERG:  I am one of the many victims of
15   Madoff's egregious crimes.  I don't know whether you had a
16   chance to turn around and look at the victims --
17            THE COURT:  Mr. Nierenberg, Mr. Nierenberg --
18            MR. NIERENBERG:  I just wanted to --
19            THE COURT:  Remain at the podium, please.
20            MR. NIERENBERG:  All right.  I know that the
21   operation -- Madoff's operation was massive, that he didn't
22   commit these crimes alone, and I don't understand why
23   conspiracy is not a part of one of his pleas.  Just to produce
24   the reams of documents that were received and the elaborate
25   data that went into them must have required an army of people

93CGMADP2

 1   to produce.  And we all know that Madoff wasn't around a lot at

 2   his operation.  There were other people that were there who

 3   handled it when he was gone.  I --

 4              THE COURT:  I gather your point is that I should

 5   reject the plea because the government has not charged

 6   conspiracy?

 7              MR. NIERENBERG:  No.  The question is -- I'm not

 8   suggesting that you reject the plea.  What I'm suggesting is

 9   that there's an additional crime that was committed that wasn't

10   included in the plea that needs to be considered.

11              THE COURT:  All right.  What I want to hear from now

12   are victims who object to my accepting the plea.

13              MR. NIERENBERG:  Okay.

14              THE COURT:  Do you object to my accepting the plea?

15              MR. NIERENBERG:  No, I don't.

16              THE COURT:  Well, thank you, then.  You can have your

17   seat.

18              MR. NIERENBERG:  Okay.

19              THE COURT:  Mark Labianca?  No.

20              Brian Felsen?  Mr. Felsen, do you want to be heard?

21              MR. FELSEN:  I would like to be heard, but I do not

22   object to the plea.

23              THE COURT:  All right.  If you want to be heard with

24   respect to sentencing, we will make sure we have procedures to

25   give victims an opportunity to be heard at sentencing.

93CGMADP2

 1            MR. FELSEN:  Okay.

 2            THE COURT:  All right.  Thank you.

 3            Bennett Goldwait?  I can't quite read the handwriting.

 4            MR. GOLDWORTH:  Goldworth.  No thank you.

 5            THE COURT:  Ronnie Sue and Dominic Ambrosino, do you

 6   wish to be heard?

 7            MS. AMBROSINO:  Yes, I do.

 8            THE COURT:  All right.  Come forward, please.  And say

 9   your name again when you get to the microphone.

10            MS. AMBROSINO:  My name is Ronnie Sue Ambrosino, and I

11   would object to the plea -- I just need to find a spot.  I have

12   taken a lot of notes.  Judge, I believe that you have the

13   opportunity today to find out information as to where the money

14   is and to find out who else may be involved in this crime.  And

15   if that plea is accepted without those two pieces of

16   information, then I do object.  If you can ascertain that you

17   can get those two pieces of information, I would love to see

18   this man, who admits that he lied under oath in May of 2006 and

19   sat here and took an oath today -- I would like to see him

20   guilty.

21            THE COURT:  All right.  Thank you.

22            MS. AMBROSINO:  Thank you, sir.

23            THE COURT:  Maureen Aebel?  Go ahead.

24            MS. AEBEL:  Judge Chin, I would like to present you

25   with a different scenario that our country could witness if you

93CGMADP2

1    reject Mr. Madoff's plea.  If we go to trial, we will show our

2    people in this struggling country and the world, who looks to

3    us as the global moral leader, that we hold all people

4    accountable.  If we go to trial, we can show all our world that

5    all crimes, all crimes, including crimes of greed, can be

6    dissected, ruled upon, and punished.  And we can demonstrate

7    that we are a country that can learn from our mistakes, and we

8    will be then able to reexamine and improve the mechanisms that

9    exist for our protection that have failed so completely.  If we

10   go to trial, we have more of a chance to comprehend the global

11   scope of this horrendous crime.  At trial we can hear and bear

12   witness to the pain that Mr. Madoff has inflicted on the young,

13   the old, and the infirmed.  No man, no matter who he knows or

14   who he is able to influence, is above the law.  Thank you,

15   Judge Chin.

16           THE COURT:  Thank you.  All right.  That is it with

17   respect to the victims who signed up on the acceptance of the

18   plea.  Does the government or the defense want to respond to

19   anything?  Does the government want to respond to anything?

20           MR. LITT:  May I just have a moment?

21           THE COURT:  Yes.

22           MR. LITT:  I think the only thing the government would

23   say is that the government's investigation continues.  It is

24   continuing.  A lot of resources and effort are being expended,

25   both to find assets and to find anyone else who may be

93CGMADP2

1   responsible for this fraud.

2            THE COURT:  Thank you.  Mr. Sorkin?

3            MR. SORKIN:  Nothing at this time, your Honor.  Thank

4   you.

5            THE COURT:  First of all, I appreciate the comments

6   from the victims.  With respect to Ms. Ambrosino's comments

7   about where the money is, as the government has just said, it

8   is continuing its investigation, and this guilty plea certainly

9   does not preclude the government from proceeding.

10           With respect to Ms. Aebel's comment about how a trial

11  would show the world that we hold all people accountable, I

12  believe that these proceedings will do the same thing.

13           Mr. Madoff, please stand.  I am accepting the plea.

14  Mr. Madoff, because you acknowledge that you are guilty as

15  charged in Counts One through Eleven of the information,

16  because you know your rights and are waiving them, because your

17  plea is entered knowingly and voluntarily and is supported by

18  an independent basis in fact for each of the elements of the 11

19  offenses, I accept your guilty plea and adjudge you guilty on

20  Counts One through Eleven of the information.  You can be

21  seated.

22           Mr. Madoff, the probation department will prepare a

23  presentence report to assist me in sentencing you.  You will be

24  interviewed by the probation department, and it is important

25  that you give the probation officer truthful and accurate

93CGMADP2

1    information, for the report is important in my decision as to

2    what your sentence will be.  You and your attorney have a right

3    and will have an opportunity to review the report, to challenge

4    or comment upon it and to speak on your behalf before

5    sentencing.

6              Sentencing is set for June 16th at 1:30 p.m.

7              Turning to bail, is the government requesting that I

8    remand Mr. Madoff pending sentencing?

9              MR. LITT:  Yes.  The government moves for remand at

10   this time pursuant to 18 USC 3143, which puts the burden on the

11   defendant to show by clear and convincing evidence that he can

12   be trusted to appear for future court appearances.

13             The defendant has now pled guilty and been found

14   guilty of 11 -- or does the Court wish to hear argument now

15   or --

16             THE COURT:  Well, let me ask Mr. Sorkin whether he

17   opposes remand.

18             MR. SORKIN:  We do, your Honor, and I'd like to be

19   heard on that point.

20             THE COURT:  Let me hear from Mr. Sorkin.

21             MR. SORKIN:  Thank you, your Honor.  May I go to the

22   podium, your Honor?

23             THE COURT:  Yes, wherever you would like.

24             MR. SORKIN:  Thank you.  Thank you, your Honor.  Your

25   Honor, let me take just a little bit of while, because I want

93CGMADP2

1    to review the history of the bail as it related to this case.

2              THE COURT:  Yes.  The government provided me with the

3    transcripts and the letter briefs, and I've reviewed them too.

4              MR. SORKIN:  I'm not going to go through every one of

5    them, but I think it's important that I list the chronology and

6    how we got to this point today.

7              THE COURT:  That's fine.  That's fine.

8              MR. SORKIN:  Your Honor, this case started when

9    Mr. Madoff on December 10th confessed his wrongdoing to his two

10   sons, knowing full well that his two sons were going to turn

11   him in.  He didn't run.  He didn't attempt to flee at that

12   time.  When he was arrested by the FBI the next morning, he

13   confessed to the FBI.

14             He appeared on December 11th before Magistrate Judge

15   Eaton, and a personal recognizance bond of ten million dollars

16   was signed by Mr. Madoff and his wife.  There were three

17   additional cosigners that were required, and it was secured by

18   Mr. Madoff's residence in Manhattan.  Surrender of Mr. Madoff's

19   travel documents took place, and his travel was restricted to

20   the Southern and Eastern Districts of New York and the District

21   of Connecticut.

22             The Pretrial Services at the time, your Honor, did not

23   recommend in its initial recommendation that Mr. Madoff be

24   remanded, and I add additionally that the government had no

25   difference and no objection with any of the conditions that

93CGMADP2

 1   were imposed on December 11th.  That was before Magistrate

 2   Judge Eaton.

 3          On December 17th, your Honor, before another

 4   magistrate judge, Magistrate Judge Gorenstein, Mr. Madoff --

 5   and it was ratcheted up -- was placed on home detention in his

 6   apartment with electronic ankle bracelet monitoring.  He was

 7   permitted to travel only to his attorney's offices and to the

 8   court.  A curfew of 7:00 p.m. through 9:00 a.m. was imposed,

 9   and this was done in addition to the entry of confession of

10   judgments with respect to his wife's properties on Montauk, New

11   York, and Palm Beach, Florida, a surrender of Mrs. Madoff's

12   passport and a reduction of the number of cosigners on the bond

13   from four to two.  This, too, your Honor, was consented to by

14   the government.  Indeed, I believe it was done by stipulation

15   without argument before Magistrate Judge Gorenstein.

16          On December 19th, again, on consent of the government,

17   a ten million dollar personal recognizance bond was signed by

18   Mr. Madoff, his wife, and his brother, secured by confessions

19   of judgment on his wife's properties in Montauk, in New York,

20   and Palm Beach.  The passports of both Mrs. Madoff had already

21   been surrendered, and other than scheduled court appearances,

22   Mr. Madoff was confined to his home 24 hours a day.  He was no

23   longer permitted to visit his counsel.  And they had, in

24   addition to the 24-hour-a-day confinement, an electronic

25   monitoring device, which is still attached to his ankle.

93CGMADP2

1        At his wife's own expense --

2        THE COURT:  Would the audience please remain quiet.

3   Go ahead.

4        MR. SORKIN:  Because Mr. Madoff's assets were all

5   frozen, but his wife's were not, although she later voluntarily

6   committed to a freeze of her assets under certain restrictions.

7   So with the government's consent, Mrs. Madoff's own assets,

8   which were not frozen by Judge Stanton or any judge in this

9   court -- she agreed to pay a security firm acceptable to the

10  government to provide the following services to prevent harm or

11  flight.

12       And with these unfrozen assets, not objected to by the

13  government, Mr. Madoff has round-the-clock monitoring at his

14  building 24 hours a day, including video monitoring of all of

15  his apartment, doors, communications devices, and services

16  permitting security to send a direct signal from an observation

17  post to the FBI in the event of even the suspicion of harm or

18  flight.  This is known as a panic button.  There are additional

19  guards available on request, if necessary, to prevent flight or

20  harm, both inflicted by Mr. Madoff -- I'm dealing with the

21  danger to the community issue -- and also harm to Mr. Madoff.

22       On January 12th, your Honor -- and again, this was by

23  consent of the government.  On January 12th, Magistrate Judge

24  Ronald Ellis imposed additional restrictions.  This was

25  briefed, as your Honor well knows.  It was argued by Magistrate

93CGMADP2

1  Judge Ellis.  And on that date, Magistrate Judge Ellis

2  incorporated the restrictions set forth in the order of Judge

3  Stanton, who has jurisdiction over the SEC matter, including

4  restrictions on the transfer of all property whatsoever

5  wherever located in the possession or under the control of

6  Mr. Madoff.  And that was part of the SEC consent under the TRO

7  and also the consent under the preliminary injunction, which

8  Mr. Madoff consented to.  Magistrate Judge Ellis incorporated

9  these restrictions to a voluntary restraint agreement, which

10  the government agreed to, involving Mrs. Madoff's assets and

11  restricted the transfer of all assets owned by her voluntarily,

12  your Honor.

13        Additionally, Magistrate Judge Ellis directed the

14  compilation of an inventory of all valuable portable items in

15  the Manhattan home, which is to be checked once every two weeks

16  by government-approved security, who are also required to

17  inspect all outgoing mail.

18        The government appealed Magistrate Judge Ellis'

19  ruling, and before District Judge Lawrence McKenna on January

20  16th, 2009, argument was held.  The matter was briefed, and

21  Judge McKenna added additional conditions:  One, a compilation

22  of any inventory of all valuable portable items in the homes in

23  Montauk, Palm Beach, as well as any property owned by

24  Mrs. Madoff in a small residence in France.

25        I quote, which your Honor, I'm sure, has read, from

93CGMADP2

1  Judge McKenna's statement in court after hearing argument and

2  seeing papers, that, quote -- and this is from Judge McKenna --

3  I think the chances of Mr. Madoff fleeing at this point are as

4  close to nil as you can get in any bail package, period,

5  unquote.

6        Now, nothing has changed, your Honor, and I agree it

7  has changed substantially in terms of the plea.  And I agree

8  with Mr. Litt that the burden is upon us to show by clear and

9  convincing evidence that Mr. Madoff is neither a flight risk

10 nor a risk to the community.

11       As far as we are aware, your Honor, Pretrial Services

12 has not found that Mr. Madoff has been negligent or careless in

13 complying with all of the bail conditions.  There has been no

14 incident at all, as far as we are aware, that has been conveyed

15 to us by Pretrial or the government that Mr. Madoff has

16 attempted at any time to flee or certainly, which the

17 government conceded before Magistrate Judge Ellis and Judge

18 McKenna, posed any risk of harm.  The argument before Judge

19 Ellis and Judge McKenna was the risk of harm was in the

20 financial world, that he would dissipate assets.  That was

21 taken care of, your Honor, respectfully, by Magistrate Judge

22 Ellis and by Judge McKenna.  All mail going out, all packages

23 going out are inspected by the security firm approved by the

24 government.

25       I respectfully submit, your Honor, that the change has

93CGMADP2

1   been the media attention and the increased and, in many cases,

2   justifiable anger by people who claim they lost money, but the

3   Bail Reform Act doesn't deal with those two issues.  I do not

4   believe, your Honor, that the precedent set in this court where

5   such individuals as Rigas in the Adelphia case, Ebbers in the

6   WorldCom case, Messrs. Skilling and Lay -- Mr. Lay passed away

7   before sentencing -- all of whom were facing substantial years

8   in prison, Rigas and Ebbers in this court, Mr. Skilling in

9   Texas.  All were released on bail pending sentence.  All went

10  to trial but did not plead guilty, and all, your Honor, as far

11  as I am aware, never once confessed at the get-go to the

12  wrongdoing that you heard Mr. Madoff confess to today.

13          So I would respectfully submit, your Honor, that there

14  is no chance that Mr. Madoff will certainly be a risk to the

15  community, a danger to the community.  And his risk of

16  flight -- and I agree with Judge McKenna -- is virtually nil

17  with all of the restrictions that have been imposed on him.  So

18  I respectfully request that his bail be continued.

19          I would also add, your Honor -- again, I refer to the

20  Bail Reform Act as not being relevant on those two other

21  issues.  What is also relevant, your Honor, is that Mr. Madoff

22  is going to have the opportunity, I am sure, if the government

23  and the defense can come to some agreement, to review literally

24  thousands of thousands of documents which the trustee and the

25  government have been reviewing to discover where this

93CGMADP2

1    forfeiture number comes from.  And we've been able to

2    communicate with him in his apartment, and I think that is a

3    factor that your Honor should consider, even though that is not

4    my argument with respect to the Bail Reform Act.  I think we

5    have met all the conditions under the act.

6         So by clear and convincing evidence, I don't think he

7    is a risk of either danger to the community, flight, and I

8    would respectfully request that his bail be continued.  Thank

9    you, your Honor.

10        THE COURT:  I don't need to hear from the government.

11   It is my intention to remand Mr. Madoff.

12        Please, ladies and gentlemen, please.

13        Now, I have a number of people who signed in who

14   wanted to be heard on the issue of bail, and I think you should

15   only be heard if you object to remand.

16        Adriane Biondo?  Mr. Ross?  Helen Chaitman?

17        MS. CHAITMAN:  No objection.

18        THE COURT:  Donald Schupak?

19        MR. SCHUPAK:  I do not object.

20        THE COURT:  Mark Labianca?

21        MR. LABIANCA:  I do not object.

22        THE COURT:  Sharon Lissauer?

23        As Mr. Madoff has pled guilty, he is no longer

24   entitled to the presumption of innocence.  The exposure is

25   great, 150 years in prison.  In light of Mr. Madoff's age, he

93CGMADP2

 1    has an incentive to flee, he has the means to flee, and thus,

 2    he presents a risk of flight.  Bail is revoked, and the

 3    defendant is remanded.

 4            MR. SORKIN:  Your Honor, would your Honor consider,

 5    respectfully, a stay so that we might appeal your Honor's bail

 6    decision?  We intend to do it expeditiously.

 7            THE COURT:  The request for a stay is denied.

 8            MR. SORKIN:  Thank you.

 9            THE COURT:  Sentencing, as I said, is set for June

10    16th, 1:30 p.m.  Some of the victims may wonder why do we need

11    so much time.  Well, the probation department has to prepare a

12    presentence report.  By law, the defendant is entitled to 35

13    days to review the presentence report before sentencing.  We

14    also have to give the parties an opportunity to submit written

15    materials.

16            Mr. Madoff, I will see you at sentencing.  We are

17    adjourned.

18                              o0o

19

20

21

22

23

24

25

# EXHIBIT  D

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/12/08

JAMES CLARKSON
ACTING REGIONAL DIRECTOR
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – RM 400
New York, NY 10281
(212) 336-1020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,  :
:
Plaintiff,  :
:
- against -  :          08 Civ. 10791 (LLS)
:          ECF CASE
BERNARD L. MADOFF and  :
BERNARD L. MADOFF INVESTMENT  :
SECURITIES LLC,  :
:
Defendants.  :
:
---------------------------------------------------------------x

## ORDER TO SHOW CAUSE,
## TEMPORARY RESTRAINING ORDER,
## AND ORDER FREEZING ASSETS AND GRANTING OTHER RELIEF

On the Emergency Application of Plaintiff Securities and Exchange Commission (the

"Application") for an Order and upon consent of Defendants Bernard L. Madoff ("Madoff") and

Bernard L. Madoff Investment Securities LLC ("BMIS") (collectively, "Defendants") to an

Order:[1]

---

[1]    Defendants consent to this Order in its entirety, except that they do not object and
otherwise take no position on the portion of Section XII below temporarily enjoining any third
party other than the Securities Investor Protection Corporation from filing a bankruptcy
proceeding against the Defendants without filing a motion on at least three (3) days' notice to the
Plaintiff, and approval of this Court after a hearing.

1.    directing Madoff and BMIS to show cause why an order should not be entered,

pending a final disposition of this action:

> a.    preliminarily enjoining Defendants from violating Sections 206(1) and
>
> 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15
>
> U.S.C. § 80b-6(1) and (2); Section 17(a) of the Securities Act of 1933
>
> ("Securities Act"), 15 U.S.C. §§ 77q(a); Section 10(b) of the Securities
>
> Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), and
>
> Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.
>
> b.    directing Defendants to provide a verified accounting immediately,
>
> including, but not limited to, a verified written accounting of Madoff's
>
> interests in BMIS and all other entities owned, in whole or in part, or
>
> controlled by, related to, or associated or affiliated with, Madoff or BMIS;
>
> c.    freezing the assets of the Defendants;
>
> d.    appointing Lee Richards as receiver for BMIS' assets;
>
> e.    prohibiting the destruction, concealment, or alteration of documents by
>
> Defendants; and
>
> f.    preliminarily enjoining Defendants and their partners, owners, agents,
>
> employees, attorneys, or other professionals, anyone acting in concert with
>
> them, and any third party from filing a bankruptcy proceeding against the
>
> Defendants without filing a motion on at least three (3) days' notice to the

2

Plaintiff, and approval of this Court after a hearing; and

2.    pending adjudication of the foregoing, an Order

    a.    temporarily restraining Defendants from violating the aforementioned statutes and rules;

    b.    directing Defendant Madoff to provide a verified accounting immediately, including, but not limited to, a verified written accounting of Madoff's interests in BMIS and all other entities owned, in whole or in part, or controlled by, related to, or associated or affiliated with, Madoff or BMIS;

    c.    freezing the assets of the Defendants, including, without limitation, the accounts listed on the attached Exhibit A;

    d.    appointing Lee Richards, Esq., of Richards Kibbe & Orbe LLP as receiver for the Defendants' assets, including without limitation Madoff Securities International Ltd. ("Madoff International") and Madoff Ltd.;

    e.    prohibiting the destruction, concealment, or alteration of documents by Defendants;

    f.    temporarily restraining Defendants and their partners, owners, agents, employees, attorneys, or other professionals, anyone acting in concert with them, and any third party from filing a bankruptcy proceeding against the Defendants without filing a motion on at least three (3) days' notice to the Plaintiff, and approval of this Court after a hearing; and

    g.    providing that the Commission may take expedited discovery in

3

preparation for a hearing on this Order to Show Cause, and further

providing that the order expediting discovery will remain in place beyond

any hearing on the Commission's application for preliminary injunctions.

The Court has considered (1) the Complaint filed by the Commission on December 11,

2008; (2) the sworn statement of Theodore Cacioppi, executed December 11, 2008; (3) the

Declaration of Alex Vasilescu Pursuant to Local Rule 6.1, executed December 11, 2008; and (4)

the memorandum of law in support of the Application. Based upon the foregoing documents, the

Court finds that a proper showing, as required by Sections 20(b) of the Securities Act, Section

21(d) of the Exchange Act, and Section 209 of the Advisers Act has been made for the relief

granted herein, for the following reasons:

It appears from the evidence presented that Defendants have violated, and, unless

temporarily restrained, will continue to violate, Section 17(a) of the Securities Act, Section 10(b)

of the Exchange Act, Exchange Act Rule 10b-5, and Sections 206(1) and 206(2) of the Advisers

Act, as charged in the Complaint.

It appears from the evidence presented that certain ill-gotten gains derived from the

Defendants' fraudulent conduct have been deposited into the accounts of BMIS and/or Madoff's

personal accounts.

It appears from the evidence presented that BMIS is under the control of Madoff, its

founder.

4

It appears that Defendants may attempt to dissipate or transfer from the jurisdiction of this Court, funds, property and other assets that could be subject to an order of disgorgement or an order imposing civil penalties.

It appears that an order freezing Defendants' assets, as specified herein, is necessary to preserve the status quo, and to protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud and civil penalties, and to preserve the Court's ability to approve a fair distribution for victims of the fraud.

It appears that an order requiring Defendants to provide a verified accounting of all assets, money and property held directly or indirectly by the Defendants, or by others for Defendants' direct and indirect beneficial interest is necessary to effectuate and ensure compliance with the freeze imposed on the Defendants' assets.

It appears that an order prohibiting Defendants and their partners, agents, employees, attorneys, or other professionals, anyone acting in concert with them or on their behalf, and any third party, from filing a bankruptcy proceeding against the Defendants without filing a motion on at least three (3) days' notice to the Plaintiff, and approval of this Court after a hearing, is necessary to preserve the status quo and to preserve the Court's ability to approve a fair distribution for victims of the fraud.

It appears that the appointment of a receiver for the assets of BMIS is necessary to (i) preserve the status quo, (ii) ascertain the extent of commingling of funds between Madoff and BMIS; (iii) ascertain the true financial condition of BMIS and the disposition of investor funds; (iv) prevent further dissipation of the property and assets of BMIS; (v) prevent the encumbrance

5

or disposal of property or assets of BMIS and the investors; (vi) preserve the books, records and documents of BMIS; (vii) respond to investor inquiries; (viii) protect the assets of BMIS from further dissipation; (ix) determine whether BMIS should undertake bankruptcy filings; and (x) determine the extent to which the freeze should be lifted as to certain assets in the custody of BMIS.

Good and sufficient reasons have been shown why procedure other than by notice of motion is necessary.

This Court has jurisdiction over the subject matter of this action and over Defendants, and venue properly lies in this District.

**NOW, THEREFORE,**

## I.

**IT IS HEREBY ORDERED** that the Defendants show cause, if there be any, to this Court at 12:00 p.m. on Friday, December 19, 2008, in Courtroom 21C of the United States Courthouse, 500 Pearl Street, New York, New York 10007-1312, why this Court should not enter an Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, Section 20 of the Securities Act, Section 21 of the Exchange Act, and Section 209 of the Advisers Act preliminarily enjoining Defendants from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, Exchange Act Rule 10b-5, and Sections 206(1) and 206(2) of the Advisers Act.

## II.

**IT IS FURTHER ORDERED** that Defendants show cause at that time why this Court

6

should not also enter an Order directing that, pending a final disposition of this action, Defendants, and each of their financial and brokerage institutions, agents, servants, employees, attorneys, and those persons in active concert or participation with either of them who receive actual notice of such Order by personal service, facsimile service, telephonic notice, notice by e-mail, or otherwise, and each of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the direct or indirect control of, Defendants, whether held in the name of Madoff, BMIS, Madoff International or Madoff Ltd. or for the direct or indirect beneficial interest of one or both of them, wherever situated, in whatever form such assets may presently exist and wherever located, and directing each of the financial or brokerage institutions, debtors and bailees, or any other person or entity holding such assets, funds or other property of Defendants, to hold or retain within its control and prohibit the withdrawal, removal, transfer or other disposal of any such assets, funds or other properties, including, but not limited to: (1) all assets, funds, or other properties held in the name of, held by, or under the control of one or both of the Defendants; (2) all accounts in the name of Madoff or BMIS or on which Madoff is a signatory, including the accounts listed on the attached Exhibit A; (3) all artwork, property, motor vehicles, jewelry and other items of personalty held in the name of, held by, or under the control of Madoff or BMIS; and (4) all real property held in the name of, held by, or under the control of Madoff or BMIS.

7

09-01186-cgm Case No: 03:52-PC Filed 03/25/24 Filed 09/25/2021 Page 13 of 21 Redacted
Case 1:08-cv-10791-LLS Document Pg 101 of 229
Documents Pg 101 of 229

## III.

**IT IS FURTHER ORDERED** that Defendants show cause at that time why this Court

should not also enter an Order enjoining them, and any person or entity acting at their direction

or on their behalf, from destroying, altering, concealing or otherwise interfering with, the access

of the Plaintiff Commission to any and all documents, books and records, that are in the

possession, custody or control of Defendants, and each of their partners, agents, employees,

servants, accountants, financial or brokerage institutions, attorneys-in-fact, subsidiaries, affiliates,

predecessors, successors and related entities that refer, reflect or relate to the allegations in the

Complaint, including, without limitation, documents, books, and records referring, reflecting or

relating to Defendants' finances or business operations, or the offer or sale of securities by

Defendants and the use of proceeds therefrom.

## IV.

**IT IS FURTHER ORDERED** that the Defendant show cause at that time why this Court

should not also enter an Order continuing the appointment of Lee Richards, Esq., of Richards

Kibbe & Orbe LLP as receiver for BMIS' assets, including, without limitation, the assets of

Madoff International and Madoff Ltd.

## V.

**IT IS FURTHER ORDERED** that Defendants show cause at that time why this Court

should not also enter an Order preliminarily enjoining Defendants and their partners, agents,

employees, attorneys, or other professionals, anyone acting in concert with them or on their

behalf, and any third party, from filing a bankruptcy proceeding against the Defendants without

8

filing a motion on at least three (3) days' notice to the Plaintiff, and approval of this Court after a hearing.

VI.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Application, Defendants, and each of their partners, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, telephonic notice, notice by e-mail or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert, in the offer, purchase or sale of any security, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

a.    employing any device, scheme or artifice to defraud;

b.    obtaining money or property by means of an untrue statement of material fact or omitting to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.    engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

VII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Application, Defendants, and each of their partners, agents, servants, employees, and attorneys,

9

and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, telephonic notice, notice by e-mail or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a.    employing any device, scheme or artifice to defraud any client or prospective client;

    b.    engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon any client or prospective client,

in violation of Sections 206(1) and 206(2) of the Advisers Act.

## VIII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Application, Defendants, and each of their financial and brokerage institutions, agents, servants, employees, attorneys, and those persons in active concert or participation with either of them who receive actual notice of such Order by personal service, facsimile service, telephonic notice, notice by e-mail, or otherwise, and each of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the direct or indirect control of Madoff or BMIS, whether held in the name of Madoff, BMIS, Madoff International or Madoff Ltd. for the direct or indirect beneficial interest of either of them, wherever situated, in whatever form such assets may

presently exist and wherever located, and direct each of the financial or brokerage institutions, debtors and bailees, or any other person or entity holding such assets, funds or other property of Defendants to hold or retain within its control and prohibit the withdrawal, removal, transfer or other disposal of, any such assets, funds or other properties, including, but not limited to: (1) all assets, funds, or other properties held in the name of, held by, or under the control of one or both of the Defendants: (2) all accounts in the name of Madoff or BMIS or on which Madoff is a signatory, including, without limitation, the accounts listed on Exhibit A; (3) all artwork, property, motor vehicles, jewelry and other items of personalty held in the name of, held by, or under the control of Madoff or BMIS; and (4) all real property held in the name of, held by, or under the control of Madoff or BMIS.

## IX.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction:

1.     Defendants shall each file with this Court and serve upon Plaintiff, two days prior to the hearing on the Commission's Application for a Preliminary Injunction, a verified written accounting, under penalty of perjury, of:

    a.     All assets, liabilities and property currently held, directly or indirectly, by or for the benefit of one or both Defendants, including, without limitation, bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

11

b.    All money, property, assets and income received by one or both

Defendants, or for the direct or indirect benefit of one or both Defendants,

at any time through the date of such accounting, describing the source,

amount, disposition and current location of each of the items listed;

c.    The names and last known addresses of all bailees, debtors, and other

persons and entities that currently are holding the assets, funds or property

of Madoff or BMIS; and

d.    All assets, funds, securities, and real or personal property received by

Madoff, BMIS, or any other person or entity controlled by Madoff, from

persons who provided money to him or at his direction in connection with

the offer or sale of any securities by him at any time to the date of the

accounting, and the disposition of such assets, funds, securities, real or

personal property; and

The Defendant shall serve such verified written accountings by hand delivery, facsimile

transmission, email or overnight courier service on the Commission's counsel, Alex Vasilescu,

Esq., Securities and Exchange Commission, 3 World Financial Center, Room 400, New York,

NY 10281, vasilescua@sec.gov.

## X.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the

Commission's Application for a Preliminary Injunction, Defendants, and any person or entity

acting at their direction or on their behalf, be and hereby are (1) enjoined and restrained from

destroying, altering, concealing or otherwise interfering with the access of Plaintiff Commission

to any and all documents, books, and records that are in the possession, custody or control of

Defendants and each of their partners, agents, employees, servants, accountants, financial or

brokerage institutions, or attorneys, subsidiaries, affiliates, predecessors, successors and related

entities that refer, reflect or relate to the allegations in the Complaint, including, without

limitation, documents, books and records referring, reflecting or relating to Defendants' finances

or business operations.

## XI.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the

Commission's Application for a Preliminary Injunction, Lee Richards, Esq., of Richards Kibbe &

Orbe LLP is appointed as receiver for the assets of BMIS, including, without limitation, the

assets of Madoff Securities International Ltd. ("Madoff International") and Madoff Ltd. to (i)

preserve the status quo, (ii) ascertain the extent of commingling of funds between Madoff and

BMIS; (iii) ascertain the true financial condition of BMIS and the disposition of investor funds;

(iv) prevent further dissipation of the property and assets of BMIS; (v) prevent the encumbrance

or disposal of property or assets of BMIS and the investors; (vi) preserve the books, records and

documents of BMIS; (vii) respond to investor inquiries; (viii) protect the assets of BMIS from

further dissipation; (ix) determine whether BMIS should undertake bankruptcy filings; and (x)

determine the extent to which the freeze should be lifted as to certain assets in the custody of

BMIS.

    To effectuate the foregoing, the receiver is empowered to:

13

(a)     Take and retain immediate possession and control of all of the assets and property,
and all books, records and documents of, BMIS, Madoff International, and
Madoff Ltd.;

(b)     Have exclusive control of, and be made the sole authorized signatory for, all
accounts at any bank, brokerage firm or financial institution that has possession or
control of any assets or funds of BMIS and Madoff International and Madoff Ltd.;

(c)     Conduct business, including making trades, and pay from available funds
necessary business expenses, as required to preserve or maximize the value of the
assets and property of BMIS, Madoff International and Madoff Ltd.,
notwithstanding the asset freeze imposed by paragraph VIII, above;

(d)     Locate assets that may have been conveyed to third parties or otherwise
concealed;

(e)     Engage and employ persons, including accountants, attorneys and experts, to
assist in the carrying out of the receiver's duties and responsibilities hereunder,
including appointing a person or entity to manage any aspect of the business of
BMIS, Madoff International or Madoff Ltd., including its investment adviser
business and its market-making business, and to use available funds as required to
preserve the assets and property of BMIS, notwithstanding the asset freeze
imposed by paragraph VIII, above;

(f)     Report to the Court and the parties within 45 days from the date of the entry of
this Order, subject to such reasonable extensions as the Court may grant, the

14

following information:

1.    All assets, money, funds, securities, and real or personal property then held

directly or indirectly by or for the benefit of BMIS, Madoff International or

Madoff Ltd., including, but not limited to, real property, bank accounts,

brokerage accounts, investments, business interests, personal property,

wherever situated, identifying and describing each asset, its current

location and value;

2.    A list of secured creditors and other financial institutions with an interest

in the receivership assets;

3.    A list of customers and clients of BMIS, Madoff International, and Madoff

Ltd., including investment advisory clients, and, to the extent practicable,

the amounts received by Madoff from each such customer or client and the

amounts withdrawn by each such customer or client;

(g)    Develop a preliminary plan for the administration of the assets of the receivership,

including a recommendation regarding whether bankruptcy cases should be filed

for all or a portion of the assets subject to the receivership and a recommendation

whether litigation against third parties should be commenced on a contingent fee

basis to recover assets for the benefit of the receivership.

Defendants agree to provide any written authorizations necessary for the receiver to

exercise the foregoing powers over Madoff International and Madoff Ltd.

## XI.

**IT IS FURTHER ORDERED** that each of the receiver and his advisors be, and they

hereby are, indemnified by each of the Defendants, Madoff International and Madoff Ltd., except

for gross negligence, willful misconduct, fraud, and breach of fiduciary duty determined by final

order no longer subject to appeal or certiorari, for all judgments, losses, costs, and reasonable

expenses including legal fees (which shall be paid under the indemnity after court approval as

they arise), arising from or related to any and all claims of whatsoever type brought against any

of them in their capacities as receiver or advisors to the receiver; provided, however, that nothing

herein shall limit the immunity of the receiver and his advisors allowed by law or deprive the

receiver and his advisors of indemnity for any act or omission for which they have immunity.

## XII.

**IT IS FURTHER ORDERED** that no creditor or claimant against the Defendants, or

any person acting on behalf of such creditor or claimant, shall take any action to interfere with

the control, possession, or management of the assets subject to the receivership.

## XIII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the

Commission's Application for a Preliminary Injunction, Defendants and their partners, agents,

employees, attorneys, or other professionals, anyone acting in concert with them or on their

behalf, and any third party, are temporarily enjoined from filing a bankruptcy proceeding against

the Defendants without filing a motion on at least three (3) days' notice to the Plaintiff, and

approval of this Court after a hearing, except that the Securities Investor Protection Corporation

16

may commence a proceeding under the Securities Investor Protection Act.

## XIV.

**IT IS FURTHER ORDERED** that discovery is expedited as follows: pursuant to Rules 26, 30, 31, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure, and without the requirement of a meeting pursuant to Fed. R. Civ. P. 26(f), the parties may:

1.    Take depositions, subject to two (2) calendar days' notice by facsimile, email or otherwise;

2.    Obtain the production of documents, within three (3) calendar days from service by facsimile, email or otherwise of a request or subpoena from any persons or entities, including non-party witnesses;

3.    Obtain other discovery, including further interrogatories, requests for admissions, and requests to inspect the premises and files of Defendant within three (3) calendar days from the date of service by facsimile, email or otherwise of such other discovery requests, interrogatories, requests for admissions or requests for inspection; and

4.    Service of any discovery requests, notices, or subpoenas may be made by personal service, facsimile, overnight courier, e-mail, or first-class mail on an individual, entity or the individual's or entity's attorney.

This order expediting discovery will remain in place beyond any hearing on the Commission's application for preliminary injunction.

17

## XV.

**IT IS FURTHER ORDERED** that a copy of this Order and the papers supporting the Commission's Application be served upon the Defendants, or their respective counsel, on or before December 12, 2008 by personal delivery, facsimile, overnight courier, electronic mail, or first-class mail to their last known addresses.

## XVI.

**IT IS FURTHER ORDERED** that the Defendant shall deliver any opposing papers in response to the Order to Show Cause above no later than December 16, 2008, at 11:59 p.m. Service shall be made by delivering the papers, using the most expeditious means available, by that date and time, to the New York Regional Office of the Commission at 3 World Financial Center, Room 400, New York, New York 10281, Attn: Alex Vasilescu, Esq., or such other place as counsel for the Commission may direct in writing. The Commission shall have until December 18, 2008, at 5:00 p.m., to serve, by the most expeditious means available, any reply papers upon the Defendant, or upon their respective counsel.

## XVII.

**IT IS FURTHER ORDERED** that this Order shall be, and is, binding upon Defendants and their partners, agents, servants, employees, attorneys, subsidiaries, affiliates and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, telephone, e-mail or otherwise.

18

Consented to by Defendants Bernard L. Madoff and Bernard L. Madoff Investment Securities
LLC and by Madoff Securities International Ltd. and Madoff Ltd.:

Dated: 12 - 12 , 2008
New York, New York

By
    Ira Lee Sorkin, Esq.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 277-6576

Attorney for Defendants Bernard L. Madoff
and Bernard L. Madoff Investment
Securities LLC and for Madoff Securities
International Ltd. and Madoff Ltd.

_____
Louis L. Stanton
UNITED STATES DISTRICT JUDGE

Issued at :   4 : 51 p.m.
December 12, 2008
New York, NY

19

## Exhibit A

JP Morgan Chase Account No. ███████ 1703
Account in the Name of:  Bernard L. Madoff Investment Securities

JP Morgan Chase Account No. ███████ 9466
Account in the Name of:  Bernard L. Madoff Investment Securities

The Bank of New York Mellon Account No. ██████ 2-393
Account in the Name of:  Benard L Madoff Investment Securities

The Bank of New York Mellon Account No. ██████ 1050
Account in the Name of:  Bernard L Madoff

The Bank of New York Mellon Account No. ██████ 6-621
Account in the Name of:  Bernard L Madoff Investment Securities LLC

# EXHIBIT  E

☐ **ORIGINAL**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,   :

                        Plaintiff,   :

          - against -   :

BERNARD L. MADOFF and   :
BERNARD L. MADOFF INVESTMENT   :
SECURITIES LLC,   :

                 Defendants.   :

                              :

-----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/08

08 Civ. 10791 (LLS)
ECF CASE

### ORDER ON CONSENT IMPOSING PRELIMINARY INJUNCTION, FREEZING ASSETS AND GRANTING OTHER RELIEF AGAINST DEFENDANTS

The Securities and Exchange Commission ("SEC") having filed a Complaint in this

matter on December 11, 2008; the SEC that same day having filed an Application for Emergency

Preliminary Relief Against Defendants Bernard L. Madoff ("Madoff") and Bernard L. Madoff

Investment Securities LLC ("BMIS") (collectively, "Defendants"); Defendants that same day

having entered a general appearance and consented to the Court's jurisdiction over the

Defendants and the subject matter of this action; Defendants on December 12, 2008 having

consented to the entry of a temporary restraining order, asset freeze, appointment of a receiver

and other relief against Defendants; the Court that same day having entered such an Order; the

Court on December 15, 2008 having issued an Order appointing Irving H. Picard, Esq. ("SIPC

Trustee"), as trustee for the liquidation of the business of Defendants with all the duties and

powers of a trustee described in the Securities Investor Protection Corporation ("SIPC"), and

appointing the law firm of Baker & Hostetler LLP as appointed counsel for the trustee; and

Defendants having consented to the entry of this Order On Consent Imposing Preliminary

Injunction, Freezing Assets And Granting Other Relief Against Defendants, waived findings of fact and conclusions of law, and waived any right to appeal from this P.I. Order:

## I.

**IT IS HEREBY ORDERED**, pending a final disposition of this action, that Defendants, and each of their partners, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, telephonic notice, notice by e-mail or otherwise, are preliminarily enjoined from, directly or indirectly, singly or in concert, in the offer, purchase or sale of any security, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a.      employing any device, scheme or artifice to defraud;

    b.      obtaining money or property by means of an untrue statement of material fact or omitting to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c.      engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

## II.

**IT IS FURTHER ORDERED**, pending a final disposition of this action, that Defendants, and each of their partners, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by

2

personal service, facsimile service, telephonic notice, notice by e-mail or otherwise, are

preliminarily enjoined from, directly or indirectly, singly or in concert, by use of any means or

instruments of transportation or communication in interstate commerce or by use of the mails:

a. employing any device, scheme or artifice to defraud any client or prospective client;

b. engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon any client or prospective client,

in violation of Sections 206(1) and 206(2) of the Advisers Act.

### III.

**IT IS FURTHER ORDERED**, pending a final disposition of this action, that

Defendants, and each of their financial and brokerage institutions, agents, servants, employees,

attorneys, and those persons in active concert or participation with either of them who receive

actual notice of this Order by personal service, facsimile service, telephonic notice, notice by e-

mail, or otherwise, and each of them, hold and retain within their control, and otherwise prevent,

any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other

disposal of any assets, funds, or other property (including money, real or personal property,

securities, commodities, choses in action or other property of any kind whatsoever) of, held by,

or under the direct or indirect control of, Defendants, whether held in the name of Madoff,

BMIS, Madoff International or Madoff Ltd. or for the direct or indirect beneficial interest of one

or both of them, wherever situated, in whatever form such assets may presently exist and

wherever located, and directing each of the financial or brokerage institutions, debtors and

bailees, or any other person or entity holding such assets, funds or other property of Defendants,

*L L S*

3

to hold or retain within its control and prohibit the withdrawal, removal, transfer or other
disposal of any such assets, funds or other properties, including, but not limited to: (1) all assets,
funds, or other properties held in the name of, held by, or under the control of one or both of the
Defendants; (2) all accounts in the name of Madoff or BMIS or on which Madoff is a signatory,
including the accounts listed on the attached Exhibit A; (3) all artwork, property, motor vehicles,
jewelry and other items of personalty held in the name of, held by, or under the control of
Madoff or BMIS; and (4) all real property held in the name of, held by, or under the control of
Madoff or BMIS.

## IV.

**IT IS FURTHER ORDERED**, pending a final disposition of this action, that
Defendants, and any person or entity acting at their direction or on their behalf, are preliminarily
enjoined from destroying, altering, concealing or otherwise interfering with, the access of the
Plaintiff Commission and/or SPIC Trustee to any and all documents, books and records, that are
in the possession, custody or control of Defendants, and each of their partners, agents,
employees, servants, accountants, financial or brokerage institutions, attorneys-in-fact,
subsidiaries, affiliates, predecessors, successors and related entities that refer, reflect or relate to
the allegations in the Complaint, including, without limitation, documents, books, and records
referring, reflecting or relating to Defendants' finances or business operations, or the offer or
sale of securities by Defendants and the use of proceeds therefrom.

## V.

**IT IS FURTHER ORDERED** that Defendants and their partners, agents, employees,
attorneys, or other professionals, anyone acting in concert with them or on their behalf, and any

4

third party, are preliminarily enjoined from filing a bankruptcy proceeding against Defendants

without filing a motion on at least three (3) days' notice to the Plaintiff, and approval of this

Court after a hearing.

### VI.

**IT IS FURTHER ORDERED** that:

1.   Defendant Madoff shall serve upon Plaintiff, on or before December 31, 2008, a

verified written accounting, under penalty of perjury, of:

      a.   All assets, liabilities and property currently held, directly or indirectly, by

          or for the benefit of Defendant Madoff, including, without limitation, bank

          accounts, brokerage accounts, investments, business interests, loans, lines

          of credit, and real and personal property wherever situated, describing

          each asset and liability, its current location and amount;

      b.   All money, property, assets and income received by Defendant Madoff, or

          for the direct or indirect benefit of Defendant Madoff, at any time through

          the date of such accounting, describing the source, amount, disposition

          and current location of each of the items listed;

      c.   The names and last known addresses of all bailees, debtors, and other

          persons and entities that currently are holding the assets, funds or property

          of Defendant Madoff; and

      d.   The names and locations of all entities where Defendant BMIS, or entities

          controlled by, or related to, BMIS, held, without limitation, bank accounts,

          brokerage accounts, investments, or assets.

Defendant Madoff shall serve such verified written accountings by hand delivery, facsimile

transmission, email or overnight courier service on the Commission's counsel, Alex Vasilescu,

Esq., Securities and Exchange Commission, 3 World Financial Center, Room 400, New York,

NY 10281, vasilescua@sec.gov.

## VII.

**IT IS FURTHER ORDERED** that Lee Richards, Esq., of Richards Kibbe & Orbe LLP,

continues as the appointed receiver for the assets of Madoff Securities International Ltd.

("Madoff International"), Madoff Ltd., and any other broker-dealer, market making, or

investment advisory businesses (the "Foreign Entities") not located in the United States of

America that are owned or controlled, in whole or in part, by Madoff, BMIS and their partners,

agents, employees, attorneys, or other professionals, anyone acting in concert with them or on

their behalf, and any third party, to (i) preserve the status quo, (ii) ascertain the extent of

commingling of funds between Madoff, BMIS and the Foreign Entities; (iii) ascertain the true

financial condition of the Foreign Entities and the disposition of investor funds; (iv) prevent

further dissipation of the property and assets of the Foreign Entities; (v) prevent the

encumbrance or disposal of property or assets of the Foreign Entities and the investors; (vi)

preserve the books, records and documents of the Foreign Entities; (vii) respond to investor

inquiries regarding the foreign entities; (viii) protect the assets of the Foreign Entities from

further dissipation; (ix) determine whether the Foreign Entities should undertake bankruptcy

filings; and (x) determine the extent to which the freeze should be lifted as to certain assets in the

custody of the Foreign Entities.

To effectuate the foregoing, the receiver is empowered to:

6

(a)    Take and retain immediate possession and control of all of the assets and

property, and all books, records and documents of, the Foreign Entities;

(b)    Have exclusive control of, and be made the sole authorized signatory for, all

accounts at any bank, brokerage firm or financial institution that has possession or

control of any assets or funds of the Foreign Entities;

(c)    Conduct business, including making trades, and pay from available funds

necessary business expenses, as required to preserve or maximize the value of the

assets and property of the Foreign Entities, notwithstanding the asset freeze

imposed by paragraph III, above;

(d)    Locate assets that may have been conveyed to third parties or otherwise concealed

by the Foreign Entities;

(e)    Engage and employ persons, including accountants, attorneys and experts, to

assist in the carrying out of the receiver's duties and responsibilities hereunder,

including appointing a person or entity to manage any aspect of the business of

the Foreign Entities, including any investment adviser business and market-

making businesses of the Foreign Entities, and to use available funds as required

to preserve the assets and property of the Foreign Entities, notwithstanding the

asset freeze imposed by paragraph III, above;

(f)    Report to the Court and the parties by January 26, 2009, subject to such

reasonable extensions as the Court may grant, the following information:

1.    All assets, money, funds, securities, and real or personal property then

held directly or indirectly by or for the benefit of the Foreign Entities,

7

including, but not limited to, real property, bank accounts, brokerage

accounts, investments, business interests, personal property, wherever

situated, identifying and describing each asset, its current location and

value;

2.    A list of secured creditors and other financial institutions with an interest

in the receivership assets of the Foreign Entities;

3.    A list of customers and clients of the Foreign Entities, including

investment advisory clients, and, to the extent practicable, the amounts

received by Madoff from each such customer or client and the amounts

withdrawn by each such customer or client;

(g)    Develop a preliminary plan for the administration of the assets of the receivership

of the Foreign Entities, including a recommendation regarding whether

bankruptcy cases should be filed for all or a portion of the assets subject to the

receivership and a recommendation whether litigation against third parties should

be commenced on a contingent fee basis to recover assets of the Foreign Entities

for the benefit of the receivership.

Defendants agree to provide any written authorizations necessary for the receiver to

exercise the foregoing powers over the Foreign Entities.

As this Court has entered an Order (referenced above) appointing the SIPC Trustee, and

as the SIPC Trustee has roles and responsibilities with respect to BMIS, the receiver will have no

authority over BMIS, except to the extent that such authority is necessary to carry out his

responsibilities with respect to the Foreign Entities and that such authority is exercised with the

8

prior consent and approval of the SIPC Trustee.

## VIII.

**IT IS FURTHER ORDERED** that each of the Receiver and his advisors be, and they

hereby are, indemnified by each of the Defendants, Madoff International and Madoff Ltd.,

except for gross negligence, willful misconduct, fraud, and breach of fiduciary duty determined

by final order no longer subject to appeal or certiorari, for all judgments, losses, costs, and

reasonable expenses including legal fees (which shall be paid under the indemnity after court

approval as they arise), arising from or related to any and all claims of whatsoever type brought

against any of them in their capacities as receiver or advisors to the receiver; provided, however,

that nothing herein shall limit the immunity of the receiver and his advisors allowed by law or

deprive the receiver and his advisors of indemnity for any act or omission for which they have

immunity.

## IX.

**IT IS FURTHER ORDERED** that no creditor or claimant against the Defendants, or

any person acting on behalf of such creditor or claimant, shall take any action to interfere with

the control, possession, or management of the assets subject to the receivership.

## X.

**IT IS FURTHER ORDERED** that, pending final disposition of this action or such

further order of the Court, Plaintiff may conduct expedited discovery, pursuant to Rules 26, 30,

31, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure and without the requirement of a

meeting pursuant to Fed. R. Civ. P. 26(f).

## XI.

**IT IS FURTHER ORDERED** that this Order shall be, and is, binding upon Defendants

and their partners, agents, servants, employees, attorneys, subsidiaries, affiliates and those

persons in active concert or participation with them who receive actual notice of this Order by

personal service, facsimile service, telephone, e-mail or otherwise.

## XII.

**IT IS FURTHER ORDERED** that the Consent of Defendants to Preliminary Injunction

Order filed herewith is incorporated herein with the same force and effect as if fully set forth

herein, and that Defendants shall comply with all of the undertakings and agreements set forth

therein.

_____

UNITED STATES DISTRICT JUDGE

Issued at :    **6** : **35** p.m.
December **16**, 2008
New York, NY

10

## Exhibit A

JP Morgan Chase Account No. ████████.703
Account in the Name of:  Bernard L. Madoff Investment Securities

JP Morgan Chase Account No. ████████9466
Account in the Name of:  Bernard L. Madoff Investment Securities

The Bank of New York Mellon Account No. ██████2-393
Account in the Name of:  Benard L Madoff Investment Securities

The Bank of New York Mellon Account No. ██████1050
Account in the Name of:  Bernard L Madoff

The Bank of New York Mellon Account No. ██████5-621
Account in the Name of:  Bernard L Madoff Investment Securities LLC

# EXHIBIT  F

STANTON, S.

☐ ORIGINAL

SECURITIES INVESTOR PROTECTION
  CORPORATION
JOSEPHINE WANG (JW0674)
General Counsel
KEVIN H. BELL (KB2260)
Senior Associate General Counsel
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005-2207
Telephone: (202) 371-8300

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/15/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff, )<br>)<br>v. )<br>)<br>BERNARD L. MADOFF, and )<br>BERNARD L. MADOFF INVESTMENT )<br>SECURITIES LLC, )<br>Defendants. )<br>)<br>)<br>———————————————————— )<br>)<br>SECURITIES INVESTOR PROTECTION )<br>CORPORATION, )<br>)<br>Applicant, )<br>)<br>v. )<br>)<br>BERNARD L. MADOFF INVESTMENT )<br>SECURITIES LLC, )<br>Defendant. )<br>———————————————————— ) | Civ. 08-10791 |

## ORDER

On the Complaint and Application of the Securities Investor Protection Corporation

("SIPC"), it is hereby:

    I.     ORDERED, ADJUDGED and DECREED that the customers of the Defendant,

Bernard L. Madoff Investment Securities LLC, are in need of the protection afforded by the Securities Investor Protection Act of 1970, as amended ("SIPA", 15 U.S.C. §78aaa *et seq.*).

II.     ORDERED that pursuant to 15 U.S.C. §78eee(b)(3), Irving H. Picard, Esquire is appointed trustee for the liquidation of the business of the Defendant with all the duties and powers of a trustee as prescribed in SIPA, and the law firm of Baker & Hostetler LLP is appointed counsel for the trustee. The trustee shall file a fidelity bond satisfactory to the Court in the amount of $250,000.00

III.     ORDERED that all persons and entities are notified that, subject to the other provisions of 11 U.S.C. §362, the automatic stay provisions of 11 U.S.C. §362(a) operate as a stay of:

A.     the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other proceeding against the Defendant that was or could have been commenced before the commencement of this proceeding, or to recover a claim against the Defendant that arose before the commencement of this proceeding;

B.     the enforcement against the Defendant or against property of the estate of a judgment obtained before the commencement of this proceeding;

C.     any act to obtain possession of property of the estate or property from the estate;

D.     any act to create, perfect or enforce any lien against property of the estate;

E.     any act to create, perfect or enforce against property of the Defendant any lien to the extent that such lien secures a claim that arose before the commencement of this proceeding;

F.     any act to collect, assess or recover a claim against the Defendant that arose before the commencement of this proceeding;

G.     the setoff of any debt owing to the Defendant that arose before the commencement

-2-

of this proceeding against any claim against the Defendant; and

H.    the commencement or continuation of a proceeding before the United States Tax Court concerning the Defendant's tax liability for a taxable period the Bankruptcy Court may determine.

IV.    ORDERED that all persons and entities are stayed, enjoined and restrained from directly or indirectly removing, transferring, setting off, receiving, retaining, changing, selling, pledging, assigning or otherwise disposing of, withdrawing or interfering with any assets or property owned, controlled or in the possession of the Defendant, including but not limited to the books and records of the Defendant, and customers' securities and credit balances, except for the purpose of effecting possession and control of said property by the trustee.

V.    ORDERED that pursuant to 15 U.S.C. §78eee(b)(2)(B)(i), any pending bankruptcy, mortgage foreclosure, equity receivership or other proceeding to reorganize, conserve or liquidate the Defendant or its property and any other suit against any receiver, conservator or trustee of the Defendant or its property, is stayed.

VI.    ORDERED that pursuant to 15 U.S.C. §§78eee(b)(2)(B)(ii) and (iii), and notwithstanding the provisions of 11 U.S.C. §§362(b) and 553, except as otherwise provided in this Order, all persons and entities are stayed, enjoined and restrained for a period of twenty-one (21) days, or such other time as may subsequently be ordered by this Court or any other court having competent jurisdiction of this proceeding, from enforcing liens or pledges against the property of the Defendant and from exercising any right of setoff, without first receiving the written consent of SIPC and the trustee.

VII.    ORDERED that, pursuant to 15 U.S.C. §78eee(b)(2)(C)(ii), and notwithstanding 15 U.S.C. §78eee(b)(2)(C)(i), all persons and entities are stayed for a period of twenty-one (21) days,

-3-

or such other time as may subsequently be ordered by this Court or any other court having competent jurisdiction of this proceeding, from foreclosing on, or disposing of, securities collateral pledged by the Defendant, whether or not with respect to one or more of such contracts or agreements, securities sold by the Defendant under a repurchase agreement, or securities lent under a securities lending agreement, without first receiving the written consent of SIPC and the trustee.

VIII.    ORDERED that the stays set forth above shall not apply to:

A.    any suit, action or proceeding brought or to be brought by the United States Securities and Exchange Commission ("Commission") or any self-regulatory organization of which the Defendant is now a member or was a member within the past six months; or

B.    the exercise of a contractual right of a creditor to liquidate, terminate, or accelerate a securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, or master netting agreement, as those terms are defined in 11 U.S.C. §§101, 741, and 761, to offset or net termination values, payment amounts, or other transfer obligations arising under or in connection with one or more of such contracts or agreements, or to foreclose on any cash collateral pledged by the Defendant, whether or not with respect to one or more of such contracts or agreements; or

C.    the exercise of a contractual right of any securities clearing agency to cause the liquidation of a securities contract as defined in 11 U.S.C. §741(7); or

D.    the exercise of a contractual right of any stockbroker or financial institution, as defined in 11 U.S.C. §101, to use cash or letters of credit held by it as collateral, to cause the liquidation of its contract for the loan of a security to the Defendant or

-4-

for the pre-release of American Depository Receipts or the securities underlying such receipts; or

E.      the exercise of a contractual right of any "repo" participant, as defined in 11 U.S.C. §101, to use cash to cause the liquidation of a repurchase agreement, pursuant to which the Defendant is a purchaser of securities, whether or not such repurchase agreement meets the definition set forth in 11 U.S.C. §101(47); or

F.      the exercise of a contractual right, as such term is used in 11 U.S.C. §555, in respect of (i) any extension of credit for the clearance or settlement of securities transactions or (ii) any margin loan, as each such term is used in 11 U.S.C. §741(7), by a securities clearing bank. As used herein, "securities clearing bank" refers to any financial participant, as defined in 11 U.S.C. §101(22A), that extends credit for the clearance or settlement of securities transactions to one or more Primary Government Securities Dealers designated as such by the Federal Reserve Bank of New York from time to time; or

G.      any setoff or liquidating transaction undertaken pursuant to the rules or bylaws of any securities clearing agency registered under section 17A(b) of the Securities Exchange Act of 1934, 15 U.S.C.§78q-1(b), or by any person acting under instructions from and on behalf of such a securities clearing agency; or

H.      any settlement transaction undertaken by such securities clearing agency using securities either (i) in its custody or control, or (ii) in the custody or control of another securities agency with which it has a Commission approved interface procedure for securities transactions settlements, provided that the entire proceeds thereof, without benefit of any offset, are promptly turned over to the trustee; or

I.   any transfer or delivery to a securities clearing agency by a bank or other

depository, pursuant to instructions given by such clearing agency, of cash,

securities, or other property of the Defendant held by such bank or depository subject

to the instructions of such clearing agency and constituting a margin payment as

defined in 11 U.S.C. §741(5).

IX.   ORDERED that pursuant to 15 U.S.C. §78eee(b)(4), this liquidation proceeding is

removed to the United States Bankruptcy Court for the Southern District of New York.

X.   ORDERED that the trustee is authorized to take immediate possession of the property

of the Defendant, wherever located, including but not limited to the books and records of the

Defendant, and to open accounts and obtain a safe deposit box at a bank or banks to be chosen by

the trustee, and the trustee may designate such of his representatives who shall be authorized to have

access to such property.

Date:   December _15_, 2008

_4:08 PM_

_Louis L. Stanton_

UNITED STATES DISTRICT JUDGE

-6-

# EXHIBIT  G

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,                          08 Civ. 10791 (LLS)

          - against -                                      ORDER

BERNARD L. MADOFF and
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendants.
- - - - - - - - - - - - - - - - - - -X

This Court having by Order dated December 11, 2008, parts XI

of the Temporary Restraining Order Freezing Assets and Granting

Other Relief dated December 12, 2008, and parts VII and VIII of the

Consent Preliminary Injunction Freezing Assets and Granting Other

Relief dated December 18, 2008 appointed and continued Lee Richards

Esq. of Richards Kibbe & Orbe LLP as receiver of assets of Bernard

L. Madoff Investment Securities LLC ("BMIS") and later Madoff

Securities International Ltd. ("MSIL") and Madoff Ltd., which

provisions were incorporated in the Partial Judgment dated February

9, 2009 (part IV), and Mr. Richards, as receiver, having submitted

his Report and Application to Terminate the Receivership dated

February 26, 2009, and after receiving responses on behalf of the

Securities and Exchange Commission, the United States Attorney for

the Southern District of New York, and Irving H. Picard, the

Trustee for the liquidation of BMIS pursuant to the Securities

Investor Protection Act, 15 U.S.C. §§ 78aaa et seq., and having

heard the interested parties in open court on Monday, March 23, 2009, it is

ORDERED that

(1)   For the reasons stated in the March 9, 2009 letter from David J. Sheehan, Esq., counsel for Mr. Picard, to the Court and his statements upon the record in court, and it appearing provident and expedient for this to be done now, Mr. Richards shall pursuant to item 1.2 thereof appoint Irving Picard, as the SIPA Trustee, as substitute Attorney under the December 15, 2008 Power of Attorney granted by Mr. Bernard L. Madoff (in his individual capacity) to act thereunder as Mr. Picard considers desirable in connection with all of the issued shares of MSIL registered in Mr. Bernard L. Madoff's name;

(2)   Mr. Richards's Report and Application is accepted and his receivership discharged and terminated with the thanks of the Court on behalf of the public; and

(3)   Mr. Richards may serve and file his application for payment of fees and expenses as receiver, in accordance with the requirements of applicable law and procedures.

So ordered.

Dated: New York, New York
       March 23, 2009

                                    _Louis L. Stanton_
                                    LOUIS L. STANTON
                                    U.S.D.J.

# EXHIBIT  H

JUDGE CHIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - x

**09 CRIM 213**

UNITED STATES OF AMERICA          :

**INFORMATION**

          -v-          :

          09 Cr.

BERNARD L. MADOFF,          :

          Defendant.          :

- - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICAL...
DOC ...
DATE FILED: MAR 1 0 2009

**COUNT ONE**
(Securities Fraud)

The United States Attorney charges:

### Relevant Persons and Entities

1.   At all times relevant to this Information, Bernard
L. Madoff Investment Securities LLC, and its predecessor, Bernard
L. Madoff Investment Securities (collectively and separately,
"BLMIS"), had its principal place of business in New York, New
York, most recently at 885 Third Avenue, New York, New York.
BLMIS was a broker-dealer that engaged in three principal types
of business:  market making; proprietary trading; and investment
advisory services.  BLMIS was registered with the United States
Securities and Exchange Commission ("SEC") as a broker-dealer and
was, beginning in or about 2006, registered with the SEC as an
investment adviser.

2.   At all times relevant to this Information, Madoff
Securities International Ltd. ("MSIL") was a corporation

MICROFILMED   MAR 1 0 2009 -2 ⬤ PM

incorporated in the United Kingdom.  MSIL was an affiliate of
BLMIS which engaged principally in proprietary trading.

       3.    BERNARD L. MADOFF, the defendant, was the founder
of BLMIS, and served as its sole member and principal.  In that
capacity, MADOFF controlled the business activities of BLMIS.
MADOFF owned the majority of the voting shares of MSIL, and
served as the Chairman of MSIL's Board of Directors.  MADOFF also
served on the Board of Directors of the National Association of
Securities Dealers Automated Quotations ("NASDAQ"), and for a
period served as the Chairman of NASDAQ.

### The Scheme to Defraud

       4.    From at least as early as the 1980s through on or
about December 11, 2008, BERNARD L. MADOFF, the defendant,
perpetrated a scheme to defraud the clients of BLMIS by
soliciting billions of dollars of funds under false pretenses,
failing to invest investors' funds as promised, and
misappropriating and converting investors' funds to MADOFF's own
benefit and the benefit of others without the knowledge or
authorization of the investors.

       5.    To execute the scheme, MADOFF solicited and caused
others to solicit prospective clients to open trading accounts
with BLMIS, based upon, among other things, his promise to use
investor funds to purchase shares of common stock, options and
other securities of large, well-known corporations, and

representations that he would achieve high rates of return for
clients, with limited risk.  In truth and in fact, as MADOFF well
knew, these representations were false.  MADOFF failed to honor
his promises to BLMIS clients by, among other things, failing to
invest the BLMIS investment advisory clients' funds in securities
as he had promised.  Instead, notwithstanding his promises to the
contrary, and notwithstanding representations that MADOFF made
and caused to be made on tens of thousands of account statements
and other documents sent through the United States Postal Service
to BLMIS clients throughout the operation of this scheme, MADOFF
operated a massive Ponzi scheme in which client funds were
misappropriated and converted to the use of MADOFF, BLMIS, and
others.

   6. In connection with this Ponzi scheme, BERNARD L.
MADOFF, the defendant, accepted billions of dollars of investor
money, cumulatively, from individual investors, charitable
organizations, trusts, pension funds, and hedge funds, among
others, and established on their behalf thousands of accounts at
BLMIS.  From the outset of the scheme, and continuing throughout
its operation, MADOFF obtained investor funds through interstate
wire transfers from financial institutions located outside New
York State and through mailings delivered by the United States
Postal Service.

3

7.    In the course of carrying out this scheme, BERNARD
L. MADOFF, the defendant, made, and caused others to make, false
representations concerning his investment strategies to clients
and prospective clients of BLMIS.  Among other things, MADOFF
marketed to clients and prospective clients an investment
strategy referred to as a "split strike conversion" strategy.
Clients were promised that BLMIS would invest their funds in a
basket of approximately 35-50 common stocks within the Standard &
Poor's 100 Index (the "S&P 100"), a collection of the 100 largest
publicly traded companies in terms of their market
capitalization.  MADOFF claimed that he would select a basket of
stocks that would closely mimic the price movements of the S&P
100.  MADOFF further claimed that he would opportunistically time
those purchases, and would be "out of the market" intermittently,
investing clients' funds in these periods in United States
Government-issued securities such as United States Treasury
bills.  MADOFF also claimed that he would hedge the investments
that he made in the basket of common stocks by using investor
funds to buy and sell option contracts related to those stocks,
thereby limiting potential losses caused by unpredictable changes
in stock prices.

8.    Further, to induce new and continued investments
by clients and prospective clients, MADOFF promised certain
clients annual returns in varying amounts up to at least

4

approximately 46 percent per year.  MADOFF also told certain

clients that the fee for his services would be based on an

approximately $0.04 per share commission on the stocks that

MADOFF traded for such clients.

9.    Contrary to his promises to those clients that he

would use their funds to purchase securities on their behalf, and

would invest client funds pursuant to the strategies he had

marketed, MADOFF used most of the investors' funds to meet the

periodic redemption requests of other investors.  In addition,

MADOFF took some of these clients' investment funds as

"commissions," which he used to support the market making and

proprietary trading businesses of BLMIS, and from which he and

others received millions of dollars in benefits.

10.    BERNARD L. MADOFF, the defendant, created and

caused to be created a broad infrastructure at BLMIS to generate

the impression and support the appearance that BLMIS was

operating a legitimate investment advisory business in which

client funds were actively traded as he had promised, and to

conceal the fact that no such business was actually being

conducted.  Among other things, MADOFF hired numerous employees

to serve as a "back office" for this investment advisory

business.  Many of the employees hired to perform those functions

had little or no prior pertinent training or experience in the

securities industry.  MADOFF caused those BLMIS employees to,

5

among other things, communicate with clients and generate false and fraudulent documents including, but not limited to, monthly client account statements and trade confirmations that purportedly reflected the purchases and sales of securities that MADOFF claimed had been conducted on behalf of BLMIS's clients. MADOFF further caused account statements and trade confirmations that were sent to clients to reflect fictitious returns consistent with the returns that had been promised to those clients.

11. Moreover, to support BLMIS's market making and proprietary trading businesses, between at least as early as in or about 2002 and in or about 2008, BERNARD L. MADOFF, the defendant, caused more than $250 million of BLMIS investment advisory clients' funds to be directed, through a series of wire transfers, to the operating accounts that funded the operations of these businesses. Specifically, MADOFF caused those investor funds to be sent from a BLMIS account in New York, New York (the "BLMIS Client Account"), to accounts held by MSIL in London, United Kingdom (the "MSIL Accounts"), and further caused funds to be transferred from the MSIL Accounts to either the BLMIS Client Account or to another bank account in New York, New York, which was principally used to fund BLMIS's operations (the "BLMIS Operating Account"). MADOFF directed these funds transfers, in part, to give the appearance that he was conducting securities

transactions in Europe on behalf of the investors when, in fact,

he was not conducting such transactions. MADOFF also directed

the transfer of funds from the MSIL Accounts to purchase and

maintain property and services for the personal use and benefit

of MADOFF, his family members and associates.

12. To conceal his scheme, BERNARD L. MADOFF, the

defendant, among other things, withheld information from

regulators and repeatedly lied to the SEC in written submissions

and in sworn testimony.

13. In furtherance of the scheme, BERNARD L. MADOFF,

the defendant, caused false and fraudulent certified financial

statements for BLMIS, including balance sheets, statements of

income, statements of cash flows, and reports on internal

control, to be created. MADOFF further caused such false and

fraudulent financial statements to be sent to clients and

prospective clients through the United States Postal Service, and

also caused such false and fraudulent financial statements to be

filed with the SEC. Among other things, MADOFF knew that the

certification attached to the BLMIS financial statements falsely

averred that those statements had been prepared in accordance

with Generally Accepted Auditing Standards and Generally Accepted

Accounting Principles.

14. As of on or about November 30, 2008, BLMIS had

approximately 4,800 client accounts. On or about December 1,

7

2008, BLMIS issued account statements for the calendar month of November 2008 reporting that those client accounts held a total balance of approximately $64.8 billion.  In fact, BLMIS held only a small fraction of that balance on behalf of its clients.

### Statutory Allegation

15.    From at least the 1980s through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, unlawfully, willfully, and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in transactions, acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18 United States Code, Section 2.)

8

## COUNT TWO
(Investment Adviser Fraud)

The United States Attorney further charges:

16.  The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

17.  From at least the 1980s through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, acting as an investment adviser with respect to clients and potential clients of BLMIS, unlawfully, willfully, and knowingly, by the use of the mails and means and instrumentalities of interstate commerce, directly and indirectly, did: (a) employ devices, schemes, and artifices to defraud clients and prospective clients; (b) engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and prospective clients; and (c) engage in acts, practices, and courses of business that were fraudulent, deceptive, and manipulative.

(Title 15, United States Code, Sections 80b-6 and 80b-17; Title 18, United States Code, Section 2.)

## COUNT THREE
(Mail Fraud)

The United States Attorney further charges:

18.  The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

19.   From at least as early as the 1980s through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom such matters and things, and did knowingly cause to be delivered, by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, to wit, on or about December 1, 2008, MADOFF sent and caused to be sent and delivered via the Postal Service a false and fraudulent account statement from BLMIS to a client in New York, New York.

(Title 18, United States Code, Sections 1341 and 2.)

10

## COUNT FOUR
### (Wire Fraud)

The United States Attorney further charges:

20.  The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

21.  From at least as early as the 1980s through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, on or about August 5, 2008, MADOFF caused approximately $2 million of investor funds to be sent by wire from Bloomington, Minnesota to New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

11

**COUNT FIVE**
(International Money Laundering To Promote
Specified Unlawful Activity)

The United States Attorney further charges:

22.    The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

23.    From at least as early as in or about 2002, through on or about December 11, 2008, in the Southern District of New York, the United Kingdom, and elsewhere, BERNARD L. MADOFF, the defendant, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully and knowingly, transported, transmitted and transferred, attempted to transport, transmit and transfer, and caused others to transport, transmit and transfer, and attempt to transport, transmit, and transfer, funds from a place in the United States to a place outside the United States, and funds from a place outside the United States to a place within the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, fraud in the sale of securities, mail fraud, wire fraud, and theft from an employee benefit plan, to wit, MADOFF caused funds to be wire transferred from BLMIS bank accounts, including the BLMIS Investor Account in New York, New York, to the MSIL Accounts in London, England, in the United Kingdom, and to be transferred from the MSIL Accounts in London, England, in the

12

United Kingdom, to BLMIS bank accounts, including the BLMIS
Operating Account, in New York, New York, in order to promote
fraud in the sale of securities, mail fraud, wire fraud, and
theft from an employee benefit plan.

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

### COUNT SIX
(International Money Laundering To Conceal And Disguise
The Proceeds of Specified Unlawful Activity)

The United States Attorney further charges:

24. The allegations contained in paragraphs 1 through
14, above, are hereby repeated, realleged and incorporated by
reference as if fully set forth herein.

25. From at least as early as in or about 2002,
through on or about December 11, 2008, in the Southern District
of New York, the United Kingdom, and elsewhere, BERNARD L.
MADOFF, the defendant, in an offense involving and affecting
interstate commerce, knowing that the property involved in
certain financial transactions, to wit, investor funds in the
custody and care of BLMIS, represented the proceeds of some form
of unlawful activity, unlawfully, willfully and knowingly would
and did conduct and attempt to conduct such financial
transactions which in fact involved the proceeds of specified
unlawful activities, to wit, fraud in the sale of securities,
mail fraud, wire fraud, and theft from an employee benefit plan,
knowing that the transactions were designed in whole and in part
to conceal and disguise the nature, the location, the source, the

13

ownership and the control of the proceeds of said specified

unlawful activity.

26.   Such financial transactions included, but were not

limited to, the following:

a.   From at least in or about 2006, through on or

about December 11, 2008, BERNARD L. MADOFF, the defendant, caused

funds to be wire transferred from BLMIS bank accounts in New

York, New York, including the BLMIS Investor Account, to the MSIL

Accounts in London, England, in the United Kingdom, and

thereafter to be transferred from the MSIL Accounts in the United

Kingdom to BLMIS bank accounts in New York, New York, including

the BLMIS Investor Account and the BLMIS Operating Account, which

transfers were designed to give the false and fraudulent

appearance that BLMIS was operating a legitimate investment

advisory business in which client funds were being used to

purchase and sell securities as MADOFF had promised, and to

conceal the fact that no such purchases or sales were actually

being made; and

b.   From at least in or about 2002, through on or

about December 11, 2008, MADOFF caused funds to be wire

transferred from BLMIS bank accounts in New York, New York,

including the BLMIS Investor Account, to the MSIL Accounts in

London, England, in the United Kingdom, and thereafter to be

transferred from the MSIL Accounts in the United Kingdom to

14

purchase and maintain property and services for the personal use and benefit of MADOFF, his family members and associates.

(Title 18, United States Code, Sections
1956(a)(1)(B)(i) & (f) and 2.)

**COUNT SEVEN**
(Money Laundering)

The United States Attorney further charges:

27. The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

28. From at least in or about the 1980s, through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully, and knowingly engaged and attempted to engage in and cause others to engage in a monetary transaction in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity; to wit, on or about April 13, 2007, MADOFF caused approximately $54,485,750 derived from fraud in the sale of securities, mail fraud, wire fraud, and theft from an employee benefit plan, to be transferred from the BLMIS Investor Account in New York, New York, to one of the BLMIS Accounts in London, England, in the United Kingdom.

(Title 18, United States Code, Sections 1957 and 2.)

15

## COUNT EIGHT
(False Statements)

The United States Attorney further charges:

29. The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

30. Beginning in or about 2006, as described in paragraph 1 above, BLMIS was, among other things, an investment adviser registered with the SEC. As such, BLMIS was subject to periodic examinations by the SEC, and was required to file an SEC Form ADV Uniform Application for Investment Adviser Registration ("ADV").

31. On or about January 7, 2008, BERNARD L. MADOFF, the defendant, filed and caused to be filed an ADV with the SEC (the "BLMIS ADV"). The BLMIS ADV was signed by MADOFF, who certified, under penalty of perjury under the laws of the United States, that the information and statements made therein were true and correct, and that he was signing the BLMIS ADV as a free and voluntary act.

32. The BLMIS ADV contained false statements made for the purpose of deceiving the SEC and hiding the defendant's unlawful conduct described in paragraphs 4 through 14, above. The BLMIS ADV filed with the SEC stated, among other things, in substance, that BLMIS had custody of advisory clients' securities.

16

33.  On or about January 7, 2008, in the Southern
District of New York, BERNARD L. MADOFF, the defendant,
unlawfully, willfully, and knowingly, in a matter within the
jurisdiction of the executive branch of the Government of the
United States, namely, the SEC, made materially false,
fictitious, and fraudulent statements and representations, to
wit, MADOFF filed the BLMIS ADV with the SEC, in which he made
the following false statement that was material to the SEC's
oversight of BLMIS's investment adviser business:

### Specification

MADOFF falsely stated that BLMIS had "custody of . . .
advisory clients' . . . securities."

(Title 18, United States Code, Section 1001(a).)

### COUNT NINE
(Perjury)

The United States Attorney further charges:

34.  The allegations contained in paragraphs 1 through
14, above, are hereby repeated, realleged and incorporated by
reference as if fully set forth herein.

35.  As described in paragraph 1 above, BLMIS was at
certain times, among other things, a broker-dealer and investment
adviser registered with the SEC.  As such, BLMIS was subject to
periodic examinations by the SEC.  The SEC has broad authority to
conduct investigations into various aspects of the securities
markets and, in or about 2006, was conducting such an

17

investigation.  As part of that investigation, on or about May

19, 2006, employees of the SEC took the voluntary testimony of

BERNARD L. MADOFF, the defendant, under oath (the "MADOFF SEC

Testimony").

        36.   During the course of the MADOFF SEC Testimony,

BERNARD L. MADOFF, the defendant, made numerous false and

misleading statements for the purpose of deceiving the SEC and

hiding his unlawful conduct described in paragraphs 4 through 11,

above.  MADOFF testified, among other things, in substance, that:

(a) BLMIS executed trades of common stock on behalf of its

investment advisory clients; (b) BLMIS executed options contracts

on behalf of its investment advisory clients; (c) BLMIS had

custody of the assets managed on behalf of its investment

advisory clients; and (d) BLMIS used the same trading strategy

for all its investment advisory clients.

        37.   On or about May 19, 2006, in the Southern District

of New York, BERNARD L. MADOFF, the defendant, having taken an

oath before a competent tribunal, officer and person, in a case

in which the law of the United States authorizes an oath to be

administered, namely, in testimony before an officer of the SEC,

that he would testify, declare, depose and certify truly, and

that any written testimony, declaration, deposition and

certificate by him subscribed, would be true, unlawfully,

willfully, knowingly, and contrary to such oath, stated and

subscribed material matters which he did not believe to be true,

18

namely, in his testimony on or about May 19, 2006, MADOFF

knowingly testified falsely as to the material matters in the

portions of his cited testimony underlined below:

### Specification One
(Page 55, Lines 20-25)

Q:    Let's just get back to some of the basics that we
      discussed before.  You mentioned earlier that the
      basket in the institutional trading business may be
      hedged with options.  Does that in fact happen?

A:    Yes.

### Specification Two
(Page 57, Lines 15-20)

Q:    Let's focus on the actual execution portion of it.
      Let's go back to the equities.  You mentioned that you
      used this AHOE system, and you mention[ed] that it
      exposes a sliced order to the European market.  Is it
      correct then that the equities are traded in Europe?

A:    Yes.

### Specification Three
(Page 63, Lines 11-23)

Q:    Now you mentioned that there was a group of dealers to
      whom you put out this indication of interest each time.
      Generally, with how many of them do you end up trading
      in each execution?

A:    Within the basket, we're probably interacting with 40,
      close to 50.

Q:    That's for equities and options.

A:    Equities.  Options is a dozen.

Q:    A dozen.  Do all of them end up trading usually?

A:    Pretty much.  They all trade on a - yes.  It's usually
      that they all participate during the trading.  They
      have an interest in these stocks.  These stocks are the
      marketplace.

19

### Specification Four
(Page 65, Lines 16-18)

Q:  Who are the counterparties to the options contracts?

A:  They're basically European banks.

### Specification Five
(Page 66, Line 19 - Page 67, Line 20)

Q:  So how does the time frame for the options trading relate to the time frame for the equities trading?

A:  First we're putting the equity basket on, and then we're putting the options on after the equity basket is complete, so the options are being done basically in the morning typically between 8:00 and 9:00 a.m.

Q:  With the options trades, is there any documentation generated? For example, for some derivatives, there is an after agreement and you have a confirmation, a 2-page document. Is there something like that for the options trades?

A:  Yes, there's an affirmation that's generated electronically, and there's a master option agreement that's attached to that that's also electronic.

Q:  And the electronic affirmation stores data for each trade with each particular dealer.

A:  Correct.

Q:  So if you wanted to find out with whom you bought these contracts on a particular day, that's where you would go.

A:  Right.

### Specification Six
(Page 85, Lines 2-3)

Q:  Who has the custody of the assets?

A:  We do.

20

### Specification Seven
(Page 116, Line 17 - Page 117, Line 2)

Q:   I wanted to go back to the question that [an SEC attorney] asked you about other persons, persons other than the institutional customers that we discussed so far and proprietary situations. The trading for these persons, is it also pursuant to the same strategy [as] in the institutional trading business?

A:   Yes.

Q:   What is approximately the total amount of assets traded for these persons?

A:   My guess would be something, a few hundred million dollars.

(Title 18, United States Code, Section 1621.)

### COUNT TEN
(False Filing With The Securities And Exchange Commission)

38.  The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

39.  On or about December 20, 2007, in the Southern District of New York, BERNARD L. MADOFF, the defendant, unlawfully, willfully, and knowingly, in applications, reports, and documents required to be filed with the SEC under the Securities Exchange Act of 1934, and the rules and regulations thereunder, did make and cause to be made statements that were false and misleading with respect to material facts, to wit,

21

MADOFF caused a false and misleading certified BLMIS audit report to be filed with the SEC.

(Title 15, United States Code, Sections 78q(e) and 78ff;
Title 17, Code of Federal Regulations, Sections 240.17a-5,
240.17a-13 and 210.2-01; Title 18, United States Code,
Section 2.)

### COUNT ELEVEN
(Theft From An Employee Benefit Plan)

40.  The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

41.  From at least as early as the 1990s through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, unlawfully, willfully, and knowingly, embezzled, stole, abstracted and converted to his own use, and to the use of others, moneys, funds, securities, premiums, credits, properties, and other assets of employee welfare benefit plans and employee pension benefit plans and funds connected therewith, to wit, on or about September 24, 2008, MADOFF failed to invest as promised approximately $10 million in pension fund assets sent to BLMIS by a master trust on behalf of approximately 35 labor union pension plans, and instead converted those funds to his use and the use of others.

(Title 18, United States Code, Sections 664 and 2.)

**FORFEITURE ALLEGATION**
(Offenses Constituting Specified Unlawful Activity)

42.  As the result of committing the offenses

constituting specified unlawful activity as defined in 18 U.S.C.

§ 1956(c)(7), as alleged in Counts One, Three, Four, and Eleven

of this Information, BERNARD L. MADOFF, the defendant, shall

forfeit to the United States, pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and

personal, that constitutes or is derived from proceeds traceable

to the commission of the said offenses.

### Substitute Asset Provision

43.  If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due
diligence;

    b.    has been transferred or sold to, or deposited
with, a third person;

    c.    has been placed beyond the jurisdiction of
the Court;

    d.    has been substantially diminished in value;
or

    e.    has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

23

other property of the defendant up to the value of the

forfeitable property described above.

(Title 18, United States Code, Sections 981(a)(1)(C),
and Title 28, United States Code, Section 2461.)

## FORFEITURE ALLEGATION
(Money Laundering)

44. As the result of committing one or more of the

money laundering offenses in violation of 18 U.S.C. §§ 1956

and 1957, alleged in Counts Five through Seven of this

Information, BERNARD L. MADOFF, the defendant, shall forfeit to

the United States, pursuant to 18 U.S.C. § 982, all property,

real and personal, involved in the said money laundering offenses

and all property traceable to such property.

### Substitute Asset Provision

45. If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due
    diligence;

  b. has been transferred or sold to, or deposited
    with, a third person;

  c. has been placed beyond the jurisdiction of
    the Court;

  d. has been substantially diminished in value;
    or

  e. has been commingled with other property which
    cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 982(b) and Title 21, United States

24

Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 982.)

LEV L. DASSIN
Acting United States Attorney



**ORDERED in the Southern District of Florida on April 14, 2009.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
#### West Palm Beach Division
#### www.flsb.uscourts.gov

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**                  **Chapter 11**
_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and ANDREW**
**LAURENCE HOSKING,**                               **Adv. Case No. 09-01355-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

      **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

      **Defendant.**
_____/

### ORDER GRANTING _EX PARTE_ MOTION FOR TEMPORARY RESTRAINING
### ORDER, ISSUING ORDER TO SHOW CAUSE AND RELATED RELIEF (D.E. #3)

THIS MATTER came before the Court on April 14, 2009, at 4:00 p.m., in West

Palm Beach , Florida on the Petitioners' (Stephen John Akers, Andrew Laurence

Hosking, and Mark Richard Byers appointed by the High Court of Justice, Chancery Division, Companies Court as the Joint Provisional Liquidators of Madoff Securities International Limited ("MSIL")) *Ex Parte* Application for Order to Show Cause With Temporary Restraining Order and Related Relief pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Petition") (D.E. # 2). This Court having considered the: (i) Application, (ii) Petition filed by the Petitioners under chapter 15 of title 11 of the United States Code, (iii)  Declaration of Stephen John Akers in support of the Proceeding, (iv) Complaint, and (v) all exhibits submitted therewith (collectively, the "Supporting Papers"), and the representations made by counsel on the record, the Court finds as follows:

1.      As the duly appointed Joint Provisional Liquidators of MSIL, and having been recognized by this Court's Order of today's date as the sole and exclusive representatives of MSIL in the United States, the Petitioners have standing and are authorized to make this Application.

2.      Petitioners have demonstrated a substantial likelihood of success on the merits of their contention that the vintage Aston Martin automobile, model number DB2/4 1964 (hereinafter, the "Vehicle"), is a US asset of MSIL and is subject to the English Proceeding, and that this Court should use its powers pursuant to 11 U.S.C. §§ 105 and 1519 to aid in the preservation and protection of the Vehicle for the benefit of MSIL's creditors;

3.      There is good cause to believe that immediate and irreparable harm will result in the absence of injunctive relief to protect the Vehicle currently believed to be in

2

the possession of Peter Madoff, as there is a substantial risk that the Vehicle may be converted or dissipated;

4.      The requested injunctive relief will not cause hardship to any other party which is not outweighed by the benefits of awarding this relief;

5.      The interest of the public will be served by preserving and protecting the Vehicle for the benefit of its creditors; and

6.      Pursuant to Bankruptcy Rule 7065, Petitioners are not required to post security prior to the issuance of a temporary restraining order, so that it is:

ORDERED as follows:

1.      That Peter Madoff and all persons and entities having notice of this Order are hereby enjoined and restrained from transferring, encumbering, selling, concealing, pledging, hypothecating, assigning, conveying, transfering, relinquishing, gifting, dissipating, removing from the jurisdiction, or otherwise disposing of the Vehicle or the proceeds, if any, of the Vehicle.

2.      That all persons and entities in possession or control of records or information relating to the Vehicle shall preserve and submit such information to Petitioners upon demand;

3.      That service of this Temporary Restraining Order and Order to Show Cause and Related Relief, together with a copy of the Supporting Papers on which it has been granted be made, if by overnight delivery, on or before **April 16, 2009** and if by hand delivery, on or before **April 16, 2009 upon Peter Madoff at 200 Algoma Road, Palm Beach, Florida 33480**, and such service shall be deemed good and sufficient service and adequate notice;

3

4.     That all papers submitted for the purpose of opposing the relief sought by Petitioners (including objections and/or responses) shall be filed with the Court and delivered so as to be received by Squire Sanders & Dempsey LLP, attorneys for Petitioners, **on or before April 20, 2009 at 12:00 p.m.,** and Petitioners' response thereto shall be filed with the Court and delivered to opponent and/or its attorneys **on or before April 21, 2009 at 12:00 p.m.**

5.     That the Temporary Restraining Order and related relief granted herein shall expire on **April 21, 2009 at 5:00 p.m.**, unless within such time the Order, for good cause shown, is extended; and

6.     That any interested party objecting to the relief requested by Petitioners shall appear before the Court on **April, 21, 2009 at 1:00 p.m. at U.S. Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor - Courtroom B, West Palm Beach, FL 33401** to show cause, if there is any, why the relief granted herein should not be extended for the duration of the English Liquidation Proceeding.

7.     That this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

### ###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).

4

Form CGFI14 (9/19/08)

**United States Bankruptcy Court**
**Southern District of Florida**
**www.flsb.uscourts.gov**

**Adversary Number:** 09–01355–PGH

**Case Number:** 09–16751–PGH

In re:

**Name of Debtor(s):** Madoff Securities International Limited

–––––––––––––––––––––––––––––––––––––––––––––––– /

ALL DOCUMENTS REGARDING THIS MATTER MUST BE IDENTIFIED BY <u>BOTH</u> ADVERSARY AND BANKRUPTCY CASE NUMBERS

**Stephen John Akers, Mark Richard Byers and Andrew Laurence Hosking**

Plaintiff(s)

**VS.**

**Peter Madoff**

Defendant(s)
–––––––––––––––––––––––––––––––––––––––––––––––/

# SUMMONS AND NOTICE OF PRETRIAL/TRIAL
# IN AN ADVERSARY PROCEEDING

**YOU ARE SUMMONED** and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court at the address indicated below within 25 days (as shortened by Local Rule 7012–1) after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

**Flagler Waterview Bldg**
**1515 N Flagler Dr #801**
**West Palm Beach FL 33401**

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney
Tina M. Talarchyk
777 S. Flagler Dr. #1900
West Palm Beach, FL 33401

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012. Pursuant to BR 7007.1, and Local Rule 7003–1(B)(2) corporate defendants must file a corporate ownership statement.

*Page 1 of 2*

## PRETRIAL CONFERENCE INFORMATION:

Date:  **July 14, 2009**

Time:  **09:30 AM**

Location:  **Flagler Waterview Building, 1515 N Flagler Dr Room 801 Courtroom A, West Palm Beach, FL 33401**

## TRIAL INFORMATION:

## THE TRIAL WILL BE SCHEDULED AT THE PRETRIAL CONFERENCE

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**



**Clerk of Court**

By: Lorraine Adam
Deputy Clerk

**Dated:**  April 15, 2009

*Page 2 of 2*

# CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
service of process was, not less than 18 years of age and not a party to the matter concerning which
service of process was made. I further certify that the service of this summons and a copy of the complaint
was made on _____ by:

☐   Mail Service: Regular, first class United States mail, postage fully pre–paid, addressed to:

☐   Personal Service: By leaving the process with defendant or with an officer or agent of
     defendant at:

☐   Residence Service: By leaving the process with the following adult at:

☐   Certified Mail Service on an Insured Depository Institution: By sending the process by certified
     mail addressed to the following officer of the defendant at:

☐   Publication: The defendant was served as follows: [Describe briefly]

☐   State Law: The defendant was served pursuant to the laws of the State of
     _____, as follows: [Describe briefly]

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: _____        Signature: _____

| Print Name: |  |  |
|---|---|---|
| Address: |  |  |
| City: | State: | Zip: |

Form CGFI17 (9/19/08)



**ORDERED in the Southern District of Florida on April 15, 2009**

**Paul G Hyman Jr**
Chief United States Bankruptcy Judge

---

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

In re:

**Name of Debtor(s):** Madoff Securities International Limited          **Case Number:** 09–16751–PGH

———————————————————————————/

**Stephen John Akers, Mark Richard Byers and Andrew Laurence
Hosking**

Plaintiff(s)

**VS.**                                                        **Adversary Number:** 09–01355–PGH

**Peter Madoff**

Defendant(s)

———————————————————————————/

## ORDER SETTING FILING AND DISCLOSURE REQUIREMENTS
## FOR PRETRIAL AND TRIAL

     To expedite and facilitate the trial of this adversary proceeding, and pursuant to Local Rule 7016–1(B) of this court, it is:

**ORDERED** as follows:

   1.   **<u>DISCLOSURES.</u>** Except as otherwise ordered by the court, Rules 26(d) and 26(f), Fed.R.Civ.P., shall not apply to this adversary proceeding. The disclosure requirements of Rules 26(a)(1),(2), and (3), Fed.R.Civ.P., shall apply, but according to the deadlines set forth as follows:

*Page 1 of 4*

    A. The initial disclosures of witnesses and documents required by Rule 26(a)(1), Fed.R.Civ.P., shall be made at least thirty days before the pretrial conference.

    B. The disclosure of expert testimony under Rule 26(a)(2), Fed.R.Civ.P., shall be made (i) at least twenty days before the pretrial conference or (ii) within ten days after the opposing party's disclosure of evidence that gives rise to the need for the expert, whichever is later. The party disclosing an expert witness shall, within ten days of the disclosure, but in no event less than five days before the pretrial conference, provide a written report prepared and signed by the witness as required by Rule 26(a)(2)(B), Fed.R.Civ.P.

    C. The pretrial disclosures under Rule 26(a)(3), Fed.R.Civ.P., shall be provided at or before the pretrial conference and shall be incorporated in the joint pretrial order.

    D. All disclosures under Rules 26(a)(1) and 26(a)(2), Fed.R.Civ.P., shall be made in writing, signed by counsel of record, served, and, except for copies of the exhibits, shall be filed with the court. The disclosures under Rule 26(a)(3) shall be incorporated in the joint pretrial order. However, written reports prepared by expert witnesses shall not be filed with the court unless otherwise ordered.

2. **PRETRIAL ORDER.** Plaintiff shall bring to the pretrial conference a pretrial order that substantially conforms to Local Form 63A. If a counterclaim has been filed, counterplaintiff shall bring to the pretrial conference a separate pretrial order that substantially conforms to Local Form 63A.

3. **DUTY OF PLAINTIFF AND COUNTERPLAINTIFF.** It shall be the duty of plaintiff (and counterplaintiff, if a counterclaim has been filed) to prepare and sign a proposed pretrial order and to furnish the proposed draft to all other parties at least five business days prior to the pretrial conference. The proposed pretrial order shall be complete in all respects except for the other parties' lists of exhibits and witnesses.

4. **DUTY OF PARTIES OTHER THAN PLAINTIFF AND COUNTERPLAINTIFF.** Within three business days following receipt of the proposed pretrial order, it shall be the duty of each other party to do the following:

    A. If the proposed draft is acceptable, to sign and return the signature page to plaintiff (or counterplaintiff) together with that party's list of exhibits and witnesses.

    B. If the proposed draft is not acceptable, to immediately meet with or telephone plaintiff (or counterplaintiff) in a good faith effort to complete a pretrial order.

5. **UNILATERAL STATEMENTS.** Unilateral pretrial statements shall not be filed.

6. **FAILURE TO COMPLY WITH PRETRIAL REQUIREMENTS.** If the acts required by this order, including submission of the pretrial order, are not completed by the deadlines provided in this order, the court may do any or all of the following:

    A. Award monetary sanctions including attorney's fees against the party at fault; and

    B. Award non–monetary sanctions against the party at fault, which may include the entry of a judgment of dismissal or the entry of an order striking the answer and entering a default.

7. **DISCOVERY.** All discovery shall be completed not later than ten days before the pretrial conference. The court will allow discovery after that date only upon a showing of good cause and exceptional circumstances. At the pretrial conference the parties shall advise the court of any anticipated material evidentiary objections.

8.  **MEDIATION.** Pursuant to Local Rule 9019–2, the court may order the assignment of this proceeding to mediation at the pretrial conference or at any other time, upon the request of any party in interest or upon the court's own motion.

9.  **TRIAL DATE.** The trial of this proceeding will be set by the court at the pretrial conference.

10. **SPECIAL SETTINGS.** If the attorney(s) trying the case are from outside this district, or the parties or witnesses are from outside this district, or if some other special reason exists that justifies a request to the court to specially set trial at a time or date certain, counsel should include a request for a special setting in the pretrial order and seek relief at the pretrial conference.

11. **DOCUMENTS REQUIRED BEFORE TRIAL.**

   A.  No later than 4:00 p.m. four (4) business days prior to trial, each party shall (i) serve on opposing counsel and (ii) furnish to the judge's chambers (but not file) the following documents:

   (1)  A set of pre–marked exhibits intended to be offered as evidence at trial. Plaintiff(s)'s exhibits shall be marked numerically, and defendant(s)' exhibits shall be marked alphabetically. Exhibits shall be bound in a notebook or folder with tabs marking each exhibit, and shall be accompanied by an Exhibit Register conforming to Local Form 49. Sufficient copies must be provided so that a set is available for each party, the witnesses, and the judge, as required by Local Rule 9070–1.

   (2)  A copy of any summary which that party will offer in evidence at the trial, together with a notice of the location of the books, records, and the like of which the summary has been made and the reasonable times when they may be inspected and copied by adverse parties.

   B.  Each party shall file and serve the following documents no later than 4:00 p.m. two business days prior to trial:

   (1)  Any written opening statement the party wishes the court to read before the trial begins. Oral opening statements normally will not be permitted at trials.

   (2)  Unless otherwise ordered, any objection to the use of a disclosed transcript, to the admissibility of a proposed exhibit, or to all or part of a summary. The objection must (i) identify the transcript or exhibit subject to the objection, (ii) identify the grounds for the objection, and (iii) provide full citations to all case decisions and other authority in support of the objection. <u>Failure to timely object to a transcript, exhibit, or all or any part of a summary will be deemed a waiver of any objection and consent to admissibility at trial.</u> All motions in limine and other evidentiary objections will be argued prior to the start of the scheduled trial, other than those that arise during the course of trial.

12. **COMPLIANCE WITH FEDERAL JUDICIARY PRIVACY POLICY.** All papers, including exhibits, submitted to the court must comply with the federal judiciary privacy policy as referenced under LR 5005–1(A)(2). Specifically, filers are responsible for redacting Social Security numbers, dates of birth, financial account numbers, and names of minor children from any documents submitted to the court.

13. **FINAL ARGUMENT.** At the conclusion of the trial the court, in lieu of final argument, may request that each party electronically submit a Proposed Memorandum Opinion with findings of fact and conclusions of law and a separate proposed Final Judgment, in word processing format, to an electronic mailbox designated by the court. If electronically submitted, the e–filer must include in the "subject" line the case name and number and the date of the hearing from which the document emanated.

14. **SWORN DECLARATIONS.** Unless otherwise ordered, the direct testimony of all witnesses, except adverse, hostile, or rebuttal witnesses, shall be presented by sworn declarations consisting of a succinct written statement of the direct testimony which that witness would be prepared to give if questions were propounded in the usual fashion at trial.

   A. Each statement of fact shall be separate, sequentially numbered, and shall contain only facts that are relevant and material to the contested issue before the court, avoiding redundancies, hearsay, and other obviously objectionable statements.

   B. The statement shall be signed under penalty of perjury by the declarant and shall substantially conform to Local Form 63B. Such statements may be referenced as the witness's "sworn declaration of fact."

   C. The original sworn declarations shall be marked as exhibits and filed and served at least two business days prior to trial.

   D. Objections to any portions of the statements may be raised at the time the sworn declaration of each respective witness is offered to the court. The witness shall then be sworn and asked if the statement correctly reflects the testimony that would be given if the witness was asked the appropriate questions. Assuming an affirmative answer, opposing counsel may then cross–examine the witness. At the conclusion of cross–examination, the party whose witness is on the stand may conduct oral redirect examination in the usual manner.

15. **DISPOSITIVE MOTIONS.** All motions to dismiss and motions for summary judgment shall be filed and served not later than ten days before the pretrial conference. Absent good cause and exceptional circumstances, failure to timely file and serve such a dispositive motion shall constitute waiver of the right to do so.

16. **SETTLEMENT.** If the proceeding is settled, counsel shall submit to the court a stipulation or proposed judgment approved by both parties prior to the time trial is to begin. If a judgment or stipulation is not submitted to the court, all counsel shall be prepared to go to trial. If the proceeding is removed from the trial calendar based upon the announcement of a settlement, the proceeding will not be reset for trial if the parties fail to consummate the settlement. In that event, the court will consider only a motion to enforce the settlement, unless the sole reason the settlement is not consummated is that the court did not approve the settlement, in which case the matter will be reset for trial at a later date.

17. **DEFAULT.** If any defendant fails to timely answer or otherwise respond to the complaint, the plaintiff shall promptly seek entry of a clerk's default pursuant to Bankruptcy Rule 7055(a), and Local Rule 7055–1, and shall move for default judgment prior to the pretrial conference. If no motion for default judgment has been filed prior to the pretrial conference, plaintiff's counsel shall appear at the pretrial conference.

18. **SANCTIONS.** Failure to appear at the pretrial conference or to comply with any provision of this order may result in appropriate sanctions, including the award of attorney's fees, striking of pleadings, dismissal of the action, or entry of default judgment.

19. **CONTINUANCES.** Continuances of the pretrial conference or trial or any deadlines set forth in this order must be requested by written motion filed no later than two business days before the pretrial conference. The motion must set forth the status of the litigation, including exchange of initial disclosures and status of discovery, and must include the reasons why the parties seek a continuance. Any motion to continue shall be heard at such time as the court determines, but no later than the pretrial conference.

20. **SERVICE.** Plaintiff(s)' counsel shall serve a copy of this order on the defendant(s) with the summons and complaint.

# # #

*Page 4 of 4*

## CERTIFICATE OF SERVICE

I, _Tina M. Talarchyk_, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was made on _____ by:

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: _4.15.09_     Signature: _Tina M. Talarchyk_

| | |
|---|---|
| Print Name: | TINA M. TALARCHYK |
| Address: | 1900 Phillips Point West 777 S. Flagler Drive |
| City: W. Palm Beach | State: FL    Zip: 33401 |

## SERVICE MATRIX

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

Form CGFl14  (9/19/08)

**United States Bankruptcy Court**
**Southern District of Florida**
**www.flsb.uscourts.gov**

**Adversary Number:** 09-01355-PGH

**Case Number:** 09-16751-PGH

In re:

**Name of Debtor(s):** Madoff Securities International Limited

----------------------------------------------- /

ALL DOCUMENTS REGARDING THIS MATTER
MUST BE IDENTIFIED BY <u>BOTH</u> ADVERSARY
AND BANKRUPTCY CASE NUMBERS

**Stephen John Akers, Mark Richard Byers and Andrew Laurence Hosking**

Plaintiff(s)

**VS.**

**Peter Madoff**

Defendant(s)

----------------------------------------------- /

## SUMMONS AND NOTICE OF PRETRIAL/TRIAL
## IN AN ADVERSARY PROCEEDING

**YOU ARE SUMMONED** and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court at the address indicated below within 25 days (as shortened by Local Rule 7012-1) after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

**Flagler Waterview Bldg**
**1515 N Flagler Dr #801**
**West Palm Beach FL 33401**

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney
Tina M. Talarchyk
777 S. Flagler Dr. #1900
West Palm Beach, FL 33401

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012. Pursuant to BR 7007.1, and Local Rule 7003-1(B)(2) corporate defendants must file a corporate ownership statement.

*Page 1 of 2*

**PRETRIAL CONFERENCE INFORMATION:**

Date: **July 14, 2009**

Time: **09:30 AM**

Location: **Flagler Waterview Building, 1515 N Flagler Dr Room 801 Courtroom A, West Palm Beach, FL 33401**

**TRIAL INFORMATION:**

**THE TRIAL WILL BE SCHEDULED AT THE PRETRIAL CONFERENCE**

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY
OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR
THE RELIEF DEMANDED IN THE COMPLAINT.



**Clerk of Court**

By: Lorraine Adam
Deputy Clerk

Dated: April 15, 2009

*Page 2 of 2*



ORDERED in the Southern District of Florida on April 14, 2009.

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### www.flsb.uscourts.gov

In re

**Madoff Securities International Limited**                     **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**                             **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and ANDREW**
**LAURENCE HOSKING,**                                          **Adv. Case No. 09-01355-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

      **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

      **Defendant.**

_____/

## ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ISSUING ORDER TO SHOW CAUSE AND RELATED RELIEF (D.E. #3)

THIS MATTER came before the Court on April 14, 2009, at 4:00 p.m., in West

Palm Beach , Florida on the Petitioners' (Stephen John Akers, Andrew Laurence

Hosking, and Mark Richard Byers appointed by the High Court of Justice, Chancery Division, Companies Court as the Joint Provisional Liquidators of Madoff Securities International Limited ("MSIL")) *Ex Parte* Application for Order to Show Cause With Temporary Restraining Order and Related Relief pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Petition") (D.E. # 2). This Court having considered the: (i) Application, (ii) Petition filed by the Petitioners under chapter 15 of title 11 of the United States Code, (iii)   Declaration of Stephen John Akers in support of the Proceeding, (iv) Complaint, and (v) all exhibits submitted therewith (collectively, the "Supporting Papers"), and the representations made by counsel on the record, the Court finds as follows:

1.    As the duly appointed Joint Provisional Liquidators of MSIL, and having been recognized by this Court's Order of today's date as the sole and exclusive representatives of MSIL in the United States, the Petitioners have standing and are authorized to make this Application.

2.    Petitioners have demonstrated a substantial likelihood of success on the merits of their contention that the vintage Aston Martin automobile, model number DB2/4 1964 (hereinafter, the "Vehicle"), is a US asset of MSIL and is subject to the English Proceeding, and that this Court should use its powers pursuant to 11 U.S.C. §§ 105 and 1519 to aid in the preservation and protection of the Vehicle for the benefit of MSIL's creditors;

3.    There is good cause to believe that immediate and irreparable harm will result in the absence of injunctive relief to protect the Vehicle currently believed to be in

the possession of Peter Madoff, as there is a substantial risk that the Vehicle may be converted or dissipated;

4.      The requested injunctive relief will not cause hardship to any other party which is not outweighed by the benefits of awarding this relief;

5.      The interest of the public will be served by preserving and protecting the Vehicle for the benefit of its creditors; and

6.      Pursuant to Bankruptcy Rule 7065, Petitioners are not required to post security prior to the issuance of a temporary restraining order, so that it is:

ORDERED as follows:

1.      That Peter Madoff and all persons and entities having notice of this Order are hereby enjoined and restrained from transferring, encumbering, selling, concealing, pledging, hypothecating, assigning, conveying, transfering, relinquishing, gifting, dissipating, removing from the jurisdiction, or otherwise disposing of the Vehicle or the proceeds, if any, of the Vehicle.

2.      That all persons and entities in possession or control of records or information relating to the Vehicle shall preserve and submit such information to Petitioners upon demand;

3.      That service of this Temporary Restraining Order and Order to Show Cause and Related Relief, together with a copy of the Supporting Papers on which it has been granted be made, if by overnight delivery, on or before **April 16, 2009** and if by hand delivery, on or before **April 16, 2009 upon Peter Madoff at 200 Algoma Road, Palm Beach, Florida 33480**, and such service shall be deemed good and sufficient service and adequate notice;

3

4.    That all papers submitted for the purpose of opposing  the relief sought by Petitioners (including objections and/or responses) shall be filed with the Court and delivered so as to be received by Squire Sanders & Dempsey LLP, attorneys for Petitioners, **on or before April 20, 2009 at 12:00 p.m.,** and Petitioners' response thereto shall be filed with the Court and delivered to opponent and/or its attorneys **on or before April 21, 2009 at 12:00 p.m.**

5.    That the Temporary Restraining Order and related relief granted herein shall expire on **April 21, 2009 at 5:00 p.m.**, unless within such time the Order, for good cause shown, is extended; and

6.    That any interested party objecting to the relief requested by Petitioners shall appear before the Court on **April, 21, 2009 at 1:00 p.m. at U.S. Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor - Courtroom A, West Palm Beach, FL 33401** to show cause, if there is any, why the relief granted herein should not be extended for the duration of the English Liquidation Proceeding.

7.    That this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).

4

# CERTIFICATE OF NOTICE

```
District/off: 113C-9        User: cradicc        Page 1 of 1              Date Rcvd: Apr 14, 2009
Case: 09-01355              Form ID: pdf004      Total Served: 1
```

```
The following entities were served by first class mail on Apr 16, 2009.
ust           +Office of the US Trustee,   51 S.W. 1st Ave.,   Suite 1204,   Miami, FL 33130-1614

The following entities were served by electronic transmission.
NONE.                                                                        TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                        TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Apr 16, 2009**                    **Signature:** _Joseph Speetjens_

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

Madoff Securities International Limited          Case No. 09-16751-BKC-PGH

Debtor in a Foreign Proceeding                   Chapter 15

_____/

STEPHEN JOHN AKERS,
MARK RICHARD BYERS, and
ANDREW LAURENCE HOSKING,           Adv. Case No.: 09-01355-BKC-PGH-
Joint Provisional Liquidators of Madoff
Securities International Limited,

          Plaintiffs,

vs.

PETER B. MADOFF

          Defendant.
_____/

<u>AGREED MOTION FOR CONTINUANCE OF TRO ORDER (D.E. #6)</u>

Pursuant to Section 105(a) and 1519 of title 11 of the United States Code and

Bankruptcy Rule 7065, Plaintiffs **Stephen John Akers, Mark Richard Byers, and**

**Andrew Laurence Hosking,** appointed by the High Court of Justice in England as the

Joint Provisional Liquidators (collectively, "Petitioners" or "Liquidators") of Madoff

Securities International Limited ("MSIL"), a company incorporated under the laws of the

United Kingdom, by their attorneys Baach Robinson & Lewis PLLC and Squire Sanders

& Dempsey LLP, respectfully submit this Agreed Motion For Continuance of TRO Order.

By this Agreed Motion, Petitioners, with the consent of the Defendant (collectively,

"Parties"), request an extension of a TRO issued by this Court on April 14, 2009

restraining the sale, disposition, or removal of a vintage Aston Martin automobile ("Vehicle") from this jurisdiction. The original TRO expires on April 21, 2009, and the extended TRO would be effective through May 4, 2009, *i.e.*, 20 days from the date of issuance of the initial TRO. The Parties request the additional 13 days in order to allow Defendant additional time to consult with local counsel and to afford the Parties an opportunity to explore resolution of Plaintiffs' request for a preliminary injunction, and in support state:

## BACKGROUND

1.     By Order issued on April 14, 2009, this Court recognized the Liquidators as the exclusive representatives of MSIL in the United States, gave efficacy in the United States to the Order of the High Court appointing the Liquidators, and conferred upon the Liquidators the rights and powers accorded to foreign representatives by Chapter 15 of the Bankruptcy Code. (Main Case D.E. # 13).

2.     On the same date the Liquidators filed this adversary action and sought and obtained the TRO. ("TRO Order") (D.E. #6).

3.     The TRO remains in effect until April 21, 2009, and a show cause hearing on the preliminary injunction is scheduled for that date. The TRO requires the Defendant to respond on or before April 20, 2009 and the Liquidators to submit any reply at or before 12:00 p.m. on April 21, 2009.

4.     The parties wish to adjourn the dates presently set for submissions and hearing under the TRO in order to allow Defendant additional time to consult with local counsel and to afford the Parties an opportunity to explore resolution of Plaintiffs'

request for a preliminary injunction, which may obviate the need for a hearing on Plaintiffs' request for a preliminary injunction.

     5.    No party will be prejudiced by the relief requested herein.

## RELIEF REQUESTED

The Parties wish to extend the TRO from April 21, 2009 until May 4, 2009; to adjourn the hearing presently scheduled for April 21, 2009 until May 4, 2009; and to adjust the response dates based on the adjournment to April 30, 2009 for the Defendant's response and May 1, 2009 for the Liquidators' reply (if any).

WHEREFORE, based upon the foregoing, the Liquidators respectfully request that the Court grant the Agreed Motion and enter an order, pursuant to 11 U.S.C. §§ 105 and 1521 and B.R. 7065 extending the efficacy of the TRO through May 4, 2009 and continuing the hearing date on the TRO in the proposed attached Agreed Order and for such other and further relief as this Court deems proper.

## CERTIFICATIONS

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true copy of this Application has been furnished by electronic notice and/or U.S. Mail to all interested persons provided for on the Master Service Matrix on this 20th day of April, 2009.

Respectfully submitted,

**Squire, Sanders & Dempsey LLP**

By:  /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Liquidators

Of Counsel:

Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:  (202) 466-5738

## SERVICE MATRIX

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Charles T. Spada, Esquire
cspada@lswlaw.com
John R. Wing, Esquire
rwing@lswlaw.com
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, New York  10110
Counsel to Peter B. Madoff

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

Madoff Securities International Limited,          Case No. 09-16751-BKC-PGH

Debtor in a Foreign Proceeding          Chapter 15
_____/
STEPHEN JOHN AKERS,
MARK RICHARD BYERS, and ANDREW
LAURENCE HOSKING,          Adv. Case No. 09-01355-PGH-

Joint Provisional Liquidators of Madoff
Securities International Limited,

        Plaintiffs,

vs.

PETER B. MADOFF

        Defendant.
_____/

**AGREED ORDER GRANTING AGREED MOTION (D. E. # )**
**FOR CONTINUANCE OF THE TRO (D.E. #6) ORDER**

THIS MATTER came before the Court, in Chambers, in West Palm Beach, Florida on the Agreed Motion for Continuance of the TRO Order (D.E. #6) filed by Stephen John Akers, Andrew Laurence Hosking, and Mark Richard Byers (collectively, the "Petitioners" or "Liquidators") pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Ex-parte Motion") (D.E. # ), and the Court having considered the Motion and understanding the agreement of the Parties to the TRO Order, it is

ORDERED as follows:

1.      The Agreed Motion is **GRANTED.**

2.      The Temporary Restraining Order and all relief granted therein (D.E. #6) shall continue in effect through May 4, 2009.

3.      The hearing on the Order to Show Cause presently scheduled for 2:00 p.m. on April 21, 2009 is adjourned until _____ on _____, 2009.

4.      The due date for the Defendant's Response is adjourned from April 20, 2009 until April 30, 2009, and the due date for the Liquidators' Reply (if any) from April 21, 2009 until May 1, 2009.

5.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).



**ORDERED in the Southern District of Florida on April 20, 2009.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re

Madoff Securities International Limited,          Case No. 09-16751-BKC-PGH

Debtor in a Foreign Proceeding                    Chapter 15
_____/

STEPHEN JOHN AKERS,
MARK RICHARD BYERS, and ANDREW
LAURENCE HOSKING,
                                                  Adv. Case No. 09-01355-PGH-
Joint Provisional Liquidators of Madoff
Securities International Limited,

     Plaintiffs,

vs.

PETER B. MADOFF

     Defendant.
_____/

**AGREED ORDER GRANTING AGREED MOTION (D.E # 13)**
**FOR CONTINUANCE OF THE TRO (D.E. #6) ORDER**

THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida on the Agreed Motion for Continuance of the TRO Order (D.E. #6) filed by

Stephen John Akers, Andrew Laurence Hosking, and Mark Richard Byers (collectively, the "Petitioners" or "Liquidators") pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Agreed Motion") (D.E. # 13 ), and the Court having considered the Agreed Motion and understanding the agreement of the Parties to the TRO Order, it is

ORDERED as follows:

1.     The Agreed Motion is **GRANTED.**

2.     The Temporary Restraining Order and all relief granted therein (D.E. #6) shall continue in effect through May 4, 2009.

3.     The hearing on the Order to Show Cause presently scheduled for 2:00 p.m. on April 21, 2009 is adjourned until *12:30 p.m.* on *May 4,* 2009. *at U.S. Bankruptcy Court, 1515 N. Flagler Drive, 8th floor, Courtroom A, West Palm Beach, FL, 33401.* *(P.K.)*

4.     The due date for the Defendant's Response is adjourned from April 20, 2009 until April 30, 2009, and the due date for the Liquidators' Reply (if any) from April 21, 2009 until May 1, 2009.

5.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

### ###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Case No.:09-16751-BKC-PGH |
| | |
| **MADOFF SECURITIES** | **Chapter 15 Proceeding** |
| **INTERNATIONAL LIMITED** | |

**Debtor in a Foreign Proceeding**
_____/
**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and ANDREW**
**LAURENCE HOSKING,**                        **Adv. Case No. 09-01355-PGH**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

         **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

         **Defendant.**
_____/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the *Agreed Order Granting Agreed Motion for Continuance of the TRO Order* (D. E. # 14 ) were furnished as of the 21st day of April, 2009 to all persons listed on the attached Service List via electronic notice or U.S. Mail.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

/s/ Tina M. Talarchyk, Esquire
Tina M. Talarchyk, Esquire
Florida Bar No.: 794872
ttalarchyk@ssd.com
Squire, Sanders & Dempsey L.L.P.
*Counsel for Joint Provisional Liquidators Stephen John Akers, Mark Richard Byers and Andrew Laurence Hosking*
777 South Flagler Drive
1900 Phillips Point West
West Palm Beach, Fla.  33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509

## SERVICE LIST

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Donald Walton, US Trustee
Office of the United States Trustee
75 Spring Street SW, Room 362
Atlanta, Georgia  30303

Heidi Fienman, Esq.
Office of the United States Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

Charles T. Spada, Esq.
John R. Wing, Esq.
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, NY 10110

2



ORDERED in the Southern District of Florida on April 20, 2009.

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**West Palm Beach Division**
www.flsb.uscourts.gov

In re

**Madoff Securities International Limited,**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and ANDREW**
**LAURENCE HOSKING,**

          **Adv. Case No. 09-01355-PGH-**

**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

          **Plaintiffs,**

vs.

**PETER B. MADOFF**

          **Defendant.**

_____/

**AGREED ORDER GRANTING AGREED MOTION (D.E # 13)**
**FOR CONTINUANCE OF THE TRO (D.E. #6) ORDER**

          THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida on the Agreed Motion for Continuance of the TRO Order (D.E. #6) filed by

Stephen John Akers, Andrew Laurence Hosking, and Mark Richard Byers (collectively, the "Petitioners" or "Liquidators") pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Agreed Motion") (D.E. # 13 ), and the Court having considered the Agreed Motion and understanding the agreement of the Parties to the TRO Order, it is

ORDERED as follows:

1.     The Agreed Motion is **GRANTED.**

2.     The Temporary Restraining Order and all relief granted therein (D.E. #6) shall continue in effect through May 4, 2009.

3.     The hearing on the Order to Show Cause presently scheduled for 2:00 p.m. on April 21, 2009 is adjourned until *12:30 p.m. (PH.)* on *May 4*, 2009. *at U.S. Bankruptcy Court, 1515 N. Flagler Drive, 8th floor, Courtroom A, West Palm Beach, FL, 33401. (P.H.)*

4.     The due date for the Defendant's Response is adjourned from April 20, 2009 until April 30, 2009, and the due date for the Liquidators' Reply (if any) from April 21, 2009 until May 1, 2009.

5.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).

2

# CERTIFICATE OF NOTICE

District/off: 113C-9       User: adaml          Page 1 of 1         Date Rcvd: Apr 21, 2009
Case: 09-01355            Form ID: pdf004       Total Served: 1

The following entities were served by first class mail on Apr 23, 2009.
ust          +Office of the US Trustee,   51 S.W. 1st Ave.,   Suite 1204,   Miami, FL 33130-1614

The following entities were served by electronic transmission.
NONE.                                                                          TOTAL: 0

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                          TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Apr 23, 2009**                    **Signature:**  *Joseph Speetjens*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**

_____/
**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and**
**ANDREW LAURENCE HOSKING,**          **Adv. Case No.: 09-01355-BKC-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

      **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

      **Defendant.**
_____/
***EX PARTE*** **AGREED MOTION AGREED EX PARTE MOTION FOR EXTENSION OF**
**TIME FOR DEFENDANT TO FILE RESPONSIVE PLEADING (D.E. #1)**

The Plaintiffs Stephen John Akers, Mark Richard Byers, and Andrew Laurence

Hosking, appointed by the High Court of Justice in England as the Joint Provisional

Liquidators (collectively, "Petitioners" or "Liquidators") of Madoff Securities International

Limited ("MSIL") and the Defendant, Peter B. Madoff ("Defendant") (collectively,

"Parties") file this Agreed Ex Parte Motion For Extension Of Time For Defendant To File

Responsive Pleading (D.E. #1) and in support state:

**BACKGROUND AND REQUESTED RELIEF**

1.     By Order issued on April 14, 2009, this Court recognized the Liquidators

as the exclusive representatives of MSIL in the United States, gave efficacy in the

United States to the Order of the High Court appointing the Liquidators, and conferred upon the Liquidators the rights and powers accorded to foreign representatives by Chapter 15 of the Bankruptcy Code.

2.      On the same date the Liquidators filed this adversary action ("Adversary").

3.      The date for the Defendant to file a responsive pleading ("Responsive Pleading") to the Adversary is on or before May 11, 2009.

4.      The Parties have conferred and agreed that the Defendant shall have thirty (30) days from May 11, 2009, on or before June 10, 2009, in order to file and serve a Responsive Pleading in this case.

WHEREFORE, Based upon the foregoing, the Parties respectfully request that the Court enter an Order indicating that Defendant has thirty (30) days from May 11, 2009, on or before June 10, 2009, in order to file and serve a Responsive Pleading in this Adversary.

## CERTIFICATIONS

I HEREBY CERTIFY that I am admitted to the Bar of the United States District

Court for the Southern District of Florida and that I am in compliance with the additional

qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true copy of this Application has been furnished by

electronic notice and/or U.S. Mail to all interested persons provided for on the Master

Service Matrix on this 29th day of April, 2009.

Respectfully submitted,

Squire, Sanders & Dempsey LLP

By:  /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Liquidators

Of Counsel:

Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:  (202) 466-5738

**<u>SERVICE MATRIX</u>**

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Charles T. Spada, Esquire
cspada@lswlaw.com
John R. Wing, Esquire
rwing@lswlaw.com
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, New York  10110
Counsel to Peter B. Madoff

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

**In re**

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**                     **Chapter 15**
_____/
**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and ANDREW**
**LAURENCE HOSKING,**                                        **Adv. Case No. 09-01355-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

      **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

      **Defendant.**
_____/

<u>**ORDER GRANTING AGREED *EX PARTE* MOTION FOR EXTENSION OF TIME FOR**</u>
<u>**DEFENDANT TO FILE RESPONSIVE PLEADING (D.E. # )**</u>

      THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida, on the Agreed Ex Parte Motion For Extension Of Time For Defendant To File

Responsive Pleading ("Agreed Motion") (D.E. # ), and the Court having reviewed the

Agreed Motion, the file and being made aware of the agreement of the parties, it is:

**ORDERED** as follows:

1.      That the Defendant shall have thirty (30) days from May 11, 2009, on or

before June 10, 2009, in order to file and serve a responsive pleading in this case.

2.      That this Court retains jurisdiction with respect to all matters arising from

or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a
certificate of service with the Court).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and**
**ANDREW LAURENCE HOSKING,**          **Adv. Case No.: 09-01355-BKC-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

          **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

          **Defendant.**

_____/

## _EX PARTE_ AGREED MOTION FOR PRELIMINARY INJUNCTION (D.E. #2)

Pursuant to Section 105(a) and 1519 of title 11 of the United States Code and Bankruptcy Rule 7065, Plaintiffs Stephen John Akers, Mark Richard Byers, and Andrew Laurence Hosking, appointed by the High Court of Justice in England as the Joint Provisional Liquidators (collectively, "Petitioners" or "Liquidators") of Madoff Securities International Limited ("MSIL"), a company incorporated under the laws of the United Kingdom, by their attorneys Baach Robinson & Lewis PLLC and Squire Sanders & Dempsey LLP, respectfully submit this _Ex Parte_ Agreed Motion For Preliminary Injunction. By this Motion, Petitioners, with the consent of the Defendant, request the entry of a Preliminary Injunction restraining the sale, disposition, or removal of a vintage

Aston Martin automobile (the "Vehicle") from this jurisdiction.  A TRO and an Order to Show Cause why a preliminary injunction should not be entered were granted on April 20, 2009 at the request of the Liquidators.  The original TRO expired on April 21, 2009, and was extended by consent through May 4, 2009.  The parties wish to enter the Preliminary Injunction by consent and without holding a hearing on the Order to Show Cause.

## BACKGROUND

1.      By Order issued on April 14, 2009, this Court recognized the Liquidators as the exclusive representatives of MSIL in the United States, gave efficacy in the United States to the Order of the High Court appointing the Liquidators, and conferred upon the Liquidators the rights and powers accorded to foreign representatives by Chapter 15 of the Bankruptcy Code.

2.      On the same date the Liquidators filed this adversary action and sought and obtained the TRO and the Order to Show Cause.

3.      The TRO was in effect until April 21, 2009 and was continued by consent to May 4, 2009 (hereinafter, the "Extended TRO").  A show cause hearing on the preliminary injunction is currently scheduled for 2:00 p.m. on May 4, 2009.  The extended TRO requires the Defendant to respond on or before April 30, 2009 and the Liquidators to submit any reply on or before May 1, 2009.

4.      Now having conferred, the Liquidators and Peter Madoff have agreed that Madoff will not oppose the request for a Preliminary Injunction and that the dates presently set for submissions and hearing pursuant to the Extended TRO should be adjourned.

2

5.     No party will be prejudiced by the relief requested herein.

## RELIEF REQUESTED

The parties respectfully request that a Preliminary Injunction restraining the sale, disposition, or removal of the Aston Martin automobile from this jurisdiction and to adjourn the hearing presently scheduled for May 4, 2009.

Based upon the foregoing, the Liquidators respectfully request an order of this Court pursuant to 11 U.S.C. §§ 105 and 1521 and B.R. 7065 entering a Preliminary Injunction and adjourning the related dates *sine die.*

## CERTIFICATIONS

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true copy of this Application has been furnished by electronic notice and/or U.S. Mail to all interested persons provided for on the Master Service Matrix on this 29th day of April, 2009.

Respectfully submitted,

**Squire, Sanders & Dempsey LLP**

By:  /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Liquidators

Of Counsel:

Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:   (202) 466-5738

## **SERVICE MATRIX**

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Charles T. Spada, Esquire
cspada@lswlaw.com
John R. Wing, Esquire
rwing@lswlaw.com
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, New York  10110
Counsel to Peter B. Madoff

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

Madoff Securities International Limited       Case No. 09-16751-BKC-PGH

Debtor in a Foreign Proceeding       Chapter 15
_____/
STEPHEN JOHN AKERS,
MARK RICHARD BYERS, and ANDREW
LAURENCE HOSKING,       Adv. Case No. 09-01355-PGH-A
Joint Provisional Liquidators of Madoff
Securities International Limited,

     Plaintiffs,

vs.

PETER B. MADOFF

     Defendant.
_____/

## ORDER GRANTING *EX PARTE* AGREED MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida on the *Ex Parte* Agreed Motion for Preliminary Injunction filed by Stephen John

Akers, Andrew Laurence Hosking, and Mark Richard Byers (collectively, the "Petitioners" or "Liquidators") pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Ex-parte Motion") (D.E. # ), and the Court having considered the *Ex Parte* Motion and understanding the agreement of the Parties, it is

       **ORDERED** as follows:

       1.      The Ex-Parte Motion is **GRANTED.**

       2.      A Preliminary Injunction restraining the sale, disposition, or removal of the Aston Martin automobile from this jurisdiction is hereby entered.

       3.      The hearing on the Order to Show Cause presently scheduled for 2:00 p.m. on May 4, 2009 is adjourned *sine die.*

       4.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).



ORDERED in the Southern District of Florida on May 01, 2009.

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**
_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and ANDREW**
**LAURENCE HOSKING,**          **Adv. Case No. 09-01355-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

          **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

          **Defendant.**
_____/

<u>**ORDER GRANTING AGREED *EX PARTE* MOTION FOR EXTENSION OF TIME FOR**</u>
<u>**DEFENDANT TO FILE RESPONSIVE PLEADING (D.E. # 17)**</u>

          THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida, on the Agreed Ex Parte Motion For Extension Of Time For Defendant To File

Responsive Pleading ("Agreed Motion") (D.E. #17), and the Court having reviewed the

Agreed Motion, the file and being made aware of the agreement of the parties, it is:

**ORDERED** as follows:

1.     That the Defendant shall have thirty (30) days from May 11, 2009, on or

before June 10, 2009, in order to file and serve a responsive pleading in this case.

2.     That this Court retains jurisdiction with respect to all matters arising from

or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a
certificate of service with the Court).
H



ORDERED in the Southern District of Florida on May 01, 2009.

**Paul G. Hyman, Chief Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov**

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**
_____/
**STEPHEN JOHN AKERS,
MARK RICHARD BYERS, and ANDREW
LAURENCE HOSKING,**          **Adv. Case No. 09-01355-PGH-A**
**Joint Provisional Liquidators of Madoff
Securities International Limited,**

     **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

     **Defendant.**
_____/

**ORDER GRANTING _EX PARTE_ AGREED MOTION FOR PRELIMINARY
INJUNCTION (D.E. #18)**

     THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida on the _Ex Parte_ Agreed Motion for Preliminary Injunction filed by Stephen John

Akers, Andrew Laurence Hosking, and Mark Richard Byers (collectively, the "Petitioners" or "Liquidators") pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Ex-parte Motion") (D.E. # 18), and the Court having considered the *Ex Parte* Motion and understanding the agreement of the Parties, it is

**ORDERED** as follows:

1.      The Ex-Parte Motion is **GRANTED.**

2.      A Preliminary Injunction restraining the sale, disposition, or removal of the Aston Martin automobile from this jurisdiction is hereby entered.

3.      The hearing on the Order to Show Cause presently scheduled for 2:00 p.m. on May 4, 2009 is adjourned *sine die.*

4.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).

2

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### www.flsb.uscourts.gov

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and**
**ANDREW LAURENCE HOSKING,**          **Adv.Case o.: 09-01355-BKC-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

     **Plaintiffs,**

**vs.**

**PETER B. MADOFF**

     **Defendant.**

_____/

## CERTIFICATE OF SERVICE (D. E. ## 19 and 20)

     **I HEREBY CERTIFY** that a true and correct copies of the following Orders were furnished on the 1ˢᵗ day of May, 2009 to all persons listed on the attached Service List via electronic notice or U.S. Mail.

1.    **Order Granting Agreed Ex Parte Motion for Extension of time for Defendant to File Responsive Pleading** (D. E. #19); and

2.    **Order Granting Ex-Parte Agreed Motion for Preliminary Injunction** (D. E. # 20)

     **I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Squire, Sanders & Dempsey LLP

By: /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Liquidators

Of Counsel:

Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:   (202) 466-5738

## SERVICE MATRIX

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Charles T. Spada, Esquire
cspada@lswlaw.com
John R. Wing, Esquire
rwing@lswlaw.com
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, New York  10110
Counsel to Peter B. Madoff

Donald Walton, US Trustee
Office of the United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801

2

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130



ORDERED in the Southern District of Florida on May 01, 2009.

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

Madoff Securities International Limited          Case No. 09-16751-BKC-PGH

Debtor in a Foreign Proceeding          Chapter 15
_____/
STEPHEN JOHN AKERS,
MARK RICHARD BYERS, and ANDREW
LAURENCE HOSKING,          Adv. Case No. 09-01355-PGH-A
Joint Provisional Liquidators of Madoff
Securities International Limited,

          Plaintiffs,

vs.

PETER B. MADOFF

          Defendant.
_____/

<u>**ORDER GRANTING AGREED *EX PARTE* MOTION FOR EXTENSION OF TIME FOR**</u>
<u>**DEFENDANT TO FILE RESPONSIVE PLEADING (D.E. # 17)**</u>

          THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida, on the Agreed Ex Parte Motion For Extension Of Time For Defendant To File

Responsive Pleading ("Agreed Motion") (D.E. #17), and the Court having reviewed the Agreed Motion, the file and being made aware of the agreement of the parties, it is:

**ORDERED** as follows:

1.      That the Defendant shall have thirty (30) days from May 11, 2009, on or before June 10, 2009, in order to file and serve a responsive pleading in this case.

2.      That this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

<u>Prepared and Submitted by:</u>
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).
H

2

# CERTIFICATE OF NOTICE

```
District/off: 113C-9        User: adaml              Page 1 of 1            Date Rcvd: May 01, 2009
Case: 09-01355              Form ID: pdf004          Total Served: 1
```

The following entities were served by first class mail on May 03, 2009.
ust          +Office of the US Trustee,   51 S.W. 1st Ave.,   Suite 1204,   Miami, FL 33130-1614

The following entities were served by electronic transmission.
NONE.                                                                                    TOTAL: 0

         ***** BYPASSED RECIPIENTS *****
NONE.                                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: May 03, 2009**                    **Signature:**    *Joseph Speetjens*



**ORDERED in the Southern District of Florida on May 01, 2009.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re

Madoff Securities International Limited          Case No. 09-16751-BKC-PGH

Debtor in a Foreign Proceeding          Chapter 15
_____/
STEPHEN JOHN AKERS,
MARK RICHARD BYERS, and ANDREW
LAURENCE HOSKING,          Adv. Case No. 09-01355-PGH-A
Joint Provisional Liquidators of Madoff
Securities International Limited,

          Plaintiffs,

vs.

PETER B. MADOFF

          Defendant.
_____/

**ORDER GRANTING _EX PARTE_ AGREED MOTION FOR PRELIMINARY**
**INJUNCTION (D.E. #18)**

THIS MATTER came before the Court, in Chambers, in West Palm Beach,

Florida on the _Ex Parte_ Agreed Motion for Preliminary Injunction filed by Stephen John

Akers, Andrew Laurence Hosking, and Mark Richard Byers (collectively, the "Petitioners" or "Liquidators") pursuant to 11 U.S.C. §§ 105 and 1519 and Bankruptcy Rule 7065 ("Ex-parte Motion") (D.E. # 18), and the Court having considered the *Ex Parte* Motion and understanding the agreement of the Parties, it is

**ORDERED** as follows:

1.     The Ex-Parte Motion is **GRANTED.**

2.     A Preliminary Injunction restraining the sale, disposition, or removal of the Aston Martin automobile from this jurisdiction is hereby entered.

3.     The hearing on the Order to Show Cause presently scheduled for 2:00 p.m. on May 4, 2009 is adjourned *sine die.*

4.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Prepared and Submitted by:
**Squire, Sanders & Dempsey, L.L.P.**
Tina M. Talarchyk, Esquire*
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(*Attorney Talarchyk shall serve a copy of this Order on all parties served with the Motion and file a certificate of service with the Court).

# CERTIFICATE OF NOTICE

```
District/off: 113C-9          User: adaml          Page 1 of 1                Date Rcvd: May 01, 2009
Case: 09-01355               Form ID: pdf004      Total Served: 1
```

```
The following entities were served by first class mail on May 03, 2009.
ust              +Office of the US Trustee,   51 S.W. 1st Ave.,   Suite 1204,   Miami, FL 33130-1614
```

```
The following entities were served by electronic transmission.
NONE.                                                                                    TOTAL: 0
```

```
         ***** BYPASSED RECIPIENTS *****
NONE.                                                                                    TOTAL: 0
```

```
Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: May 03, 2009**                    **Signature:**    *Joseph Speetjens*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### www.flsb.uscourts.gov

In re

**Madoff Securities International Limited**          **Case No. 09-16751-BKC-PGH**

**Debtor in a Foreign Proceeding**          **Chapter 15**

_____/

**STEPHEN JOHN AKERS,**
**MARK RICHARD BYERS, and**
**ANDREW LAURENCE HOSKING,**          **Adv. Case No.: 09-01355-BKC-PGH-A**
**Joint Provisional Liquidators of Madoff**
**Securities International Limited,**

     **Plaintiffs,**

vs.

**PETER B. MADOFF**

     **Defendant.**

_____/

### NOTICE OF FILING ORDER

     **PLEASE TAKE NOTICE** that the Plaintiffs, **Stephen John Akers, Mark Richard Byers, and Andrew Laurence Hosking,** appointed by the High Court of Justice in England as the Joint Provisional Liquidators (collectively, "Petitioners" or "Liquidators") of Madoff Securities International Limited ("MSIL"), a company incorporated under the laws of the United Kingdom, by their attorneys Baach Robinson & Lewis PLLC and Squire Sanders & Dempsey LLP, file this Notice of Filing **Order Transferring Case** ("Order") dated May 6, 2009 (entered by Judge Burton R. Lifland, Bankruptcy Judge, S.D. New York). A true copy of the Order is attached hereto as Exhibit A.

,

## CERTIFICATIONS

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District

Court for the Southern District of Florida and that I am in compliance with the additional

qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true copy of this Motion has been furnished by

electronic notice and/or U.S. Mail to all interested persons provided for on the attached

Service List on this 7th day of May, 2009.

Respectfully submitted,

**Squire, Sanders & Dempsey LLP**

By:  /s/ Tina M. Talarchyk
Tina M. Talarchyk, Esq.
FL Bar No. 794872
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: +1.561.650.7261
Facsimile: +1.561.655.1509
ttalarchyk@ssd.com

Counsel for Plaintiffs - Liquidators

Of Counsel:
Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C.  20004
Telephone:  (202) 833-8900
Facsimile:   (202) 466-5738

**<u>SERVICE LIST</u>**

Charles T. Spada, Esquire
cspada@lswlaw.com
John R. Wing, Esquire
rwing@lswlaw.com
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, New York  10110
Counsel to Peter B. Madoff

Peter B. Madoff
200 Algoma Road
Palm Beach, Florida 33480

Donald Walton, US Trustee
Office of the United States Trustee
75 Spring Street SW, Room 362
Atlanta, Georgia  30303

Heidi Fienman, Esq.
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

       Plaintiff,

   v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

     . Defendant.

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

## ORDER TRANSFERRING CASE

WHEREAS, the Court held a hearing on May 6, 2009 on the Motion for Rule 1014(b) Transfer of Related Proceedings filed by Movants Blumenthal & Associates Florida General Partnership, Martin Rappaport Charitable Remainder Unitrust, Martin Rappaport, Marc Cherno, and Steven Morganstern, and the Court having reviewed papers and heard argument from those parties expressing an interest in the outcome of the Motion; and no party in interest having objected to the requested transfer, and

WHEREAS, the Court having found that:

(1)    on December 11, 2008, the above-captioned action was commenced against Bernard L. Madoff Investment Securities, LLC ("BMIS"), pursuant to the Securities Investor Protection Act of 1970 ("SIPA");

(2)    on April 13, 2009, the Movants filed an involuntary petition against Bernard L. Madoff in this Court seeking relief under Chapter 7 of the Bankruptcy Code;

(3)     on April 14, 2009, Stephen John Akers, Mark Richard Byers, and Andrew Laurence Hosking, who are serving as Joint Provisional Liquidators in an English liquidation proceeding as to Madoff Securities International Limited ("MSIL"), filed a Chapter 15 Petition in the United States Bankruptcy Court for the Southern District of Florida;

(4)     MSIL is an affiliate of BMIS and Madoff; and

(5)     the MSIL bankruptcy case filed in Florida raises issues common to the prior pending BMIS and Madoff bankruptcies before this Court.

IT IS NOW, THEREFORE, ORDERED, that pursuant to Fed. R. Bankr. P. 1014(b), the Chapter 15 case captioned *In re Madoff Securities Int'l Ltd.*, No. 09-16751 (Bankr. S.D. Fla.), filed on April 14, 2009 in the United States Bankruptcy Court for the Southern District of Florida, together with any pending related adversary proceedings, shall be transferred to this District forthwith.

SO ORDERED this 6th day of May, 2009.

/s/Burton R. Lifland
Burton R. Lifland
United States Bankruptcy Judge

2

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No. 09-16751 -BKC- PGH
Madoff Securities International Limited          Chapter    15
                                                Adv. No.   09-01355-PGH


_____ Debtor _____ /


# NOTICE OF TRANSFER OF CASE RECORDS BY CLERK OF COURT

**NOTICE IS HEREBY GIVEN THAT:** In accordance with the order of transfer entered on

May 6, 2009 (NYSB) , the official court record, including claim files and register, copies of the order of

transfer and the docket for this case (and, if applicable, adversary proceedings and dockets for the

following case numbers: 09-16751-PGH and 09-01355-PGH                    ) are being forwarded

with this Notice to the transferee court: U.S. Bankruptcy Court, (District and Address)

Southern District of New York, One Bowling Green, New York, New York 10004

_____ . Subsequent filings

should be directed to the transferee court.


DATED: May 8, 2009                          CLERK OF COURT

                                            By: Cameron Cradic
                                                _____
                                                Deputy Clerk


☐      Room 1517, 51 S.W. First Avenue, Miami, Florida 33130, (305) 714-1800, ext._____
☐      Room 112, 299 E. Broward Blvd., Ft. Lauderdale, Florida 33301, (954) 769-5700, ext._____
☑      Room 801, 1515 North Flagler Drive, West Palm Beach, Florida 33401, (561) 514-4100, ext. 4107

The clerk of court will serve copies of this notice on:
Debtor
Attorney for Debtor
Trustee (if applicable)
U.S. trustee
Plaintiff (if applicable)
Defendant (if applicable)

**The attorney for the debtor, or clerk of court if the debtor is pro se,  must serve copies of
this notice on all parties of record pursuant to Local Rule 1014-1(B).**

====================================================================================

**Transferee Court:** Please acknowledge receipt of original court documents and certified copies
by completing the following information and returning a copy of this form to SDFL clerk indicated
above.

New Case Number: _____ New Adversary Case Number: _____

Date of Receipt:_____ Received By (Name of Deputy Clerk):_____

District Office (####): _____      Office Code (#): _____

(rev.  11/20/08)

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:
Madoff Securities International Limited

Case No. 09-16751 -BKC- PGH
Chapter 15
Adv. No. 09-01355-PGH

_____Debtor_____/

## NOTICE OF TRANSFER OF CASE RECORDS BY CLERK OF COURT

**NOTICE IS HEREBY GIVEN THAT:** In accordance with the order of transfer entered on
May 6, 2009 (NYSB), the official court record, including claim files and register, copies of the order of transfer and the docket for this case (and, if applicable, adversary proceedings and dockets for the following case numbers: 09-16751-PGH and 09-01355-PGH ) are being forwarded with this Notice to the transferee court: U.S. Bankruptcy Court, (District and Address)
Southern District of New York, One Bowling Green, New York, New York 10004
_____. Subsequent filings should be directed to the transferee court.

DATED: May 8, 2009                     CLERK OF COURT

By: Cameron Cradic
_____
Deputy Clerk

☐ Room 1517, 51 S.W. First Avenue, Miami, Florida 33130, (305) 714-1800, ext._____
☐ Room 112, 299 E. Broward Blvd., Ft. Lauderdale, Florida 33301, (954) 769-5700, ext._____
☑ Room 801, 1515 North Flagler Drive, West Palm Beach, Florida 33401, (561) 514-4100, ext. 4107

The clerk of court will serve copies of this notice on:
Debtor
Attorney for Debtor
Trustee (if applicable)
U.S. trustee
Plaintiff (if applicable)
Defendant (if applicable)

**The attorney for the debtor, or clerk of court if the debtor is pro se, must serve copies of this notice on all parties of record pursuant to Local Rule 1014-1(B).**

**Transferee Court:** Please acknowledge receipt of original court documents and certified copies by completing the following information and returning a copy of this form to SDFL clerk indicated above.

New Case Number: _____ New Adversary Case Number: _____

Date of Receipt:_____ Received By (Name of Deputy Clerk):_____

District Office (####): _____ Office Code (#): _____

(rev. 11/20/08)

# CERTIFICATE OF NOTICE

District/off: 113C-9            User: cradicc             Page 1 of 1               Date Rcvd: May 08, 2009
Case: 09-01355                 Form ID: pdf005           Total Served: 4

The following entities were served by first class mail on May 10, 2009.
ust          +Office of the US Trustee,   51 S.W. 1st Ave.,   Suite 1204,   Miami, FL 33130-1614
pla          +Andrew Laurence Hosking,   c/o Tina M. Talarchyk, Esq.,   Squire, Sanders & Dempsey LLP,
              1900 Philips Point West,   777 South Flagler Drive,   West Palm Beach, FL 33401-6161
pla          +Mark Richard Byers,   c/o Tina M. Talarchyk, Esq.,   Squire, Sanders & Dempsey LLP,
              1900 Phillips Point West,   777 South Flagler Drive,   West Palm Beach, FL 33401-6161
pla          +Stephen John Akers,   c/o Tina M. Talarchyk, Esq.,   Squire, Sanders & Dempsey LLP,
              1900 Phillips Point West,   777 South Flagler Drive,   West Palm Beach, FL 33401-6161

The following entities were served by electronic transmission.
NONE.                                                                                          TOTAL: 0

          ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
dft           Peter Madoff
                                                                                     TOTALS: 1, * 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: May 10, 2009                          Signature:    *Joseph Speetjens*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:                                                    Case No.   09-16751 -BKC- PGH
Madoff Securities International Limited                   Chapter    15
                                                          Adv. No.   09-01355-PGH

_____Debtor_____/

# NOTICE OF TRANSFER OF CASE RECORDS BY CLERK OF COURT

**NOTICE IS HEREBY GIVEN THAT:**  In accordance with the order of transfer entered on
May 6, 2009 (NYSB) , the official court record, including claim files and register, copies of the order of
transfer and the docket for this case (and, if applicable, adversary proceedings and dockets for the
following case numbers: 09-16751-PGH and 09-01355-PGH ) are being forwarded
with this Notice to the transferee court:  U.S. Bankruptcy Court, (District and Address)
Southern District of New York, One Bowling Green, New York, New York 10004
_____. Subsequent filings
should be directed to the transferee court.

DATED: May 8, 2009                          CLERK OF COURT

                                            By: Cameron Cradic
                                                      Deputy Clerk

☐     Room 1517, 51 S.W. First Avenue, Miami, Florida 33130, (305) 714-1800, ext._____
☐     Room 112, 299 E. Broward Blvd., Ft. Lauderdale, Florida 33301, (954) 769-5700, ext._____
☑     Room 801, 1515 North Flagler Drive, West Palm Beach, Florida 33401, (561) 514-4100, ext. 4107

The clerk of court will serve copies of this notice on:
Debtor
Attorney for Debtor
Trustee (if applicable)
U.S. trustee
Plaintiff (if applicable)
Defendant (if applicable)

**The attorney for the debtor, or clerk of court if the debtor is pro se,  must serve copies of
this notice on all parties of record pursuant to Local Rule 1014-1(B).**

**Transferee Court:**  Please acknowledge receipt of original court documents and certified copies
by completing the following information and returning a copy of this form to SDFL clerk indicated
above.

New Case Number: _09-12998_____ New Adversary Case Number: ____09-1186_____

Date of Receipt: 5/8/2009_____ Received By (Name of Deputy Clerk): _Brent Leonardo Bush, Jr._

District Office (####): _0208_____        Office Code (#): _1_____

(rev. 11/20/08)